1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION


- - - - - - - - - - - - - -X
IOWA RIGHT TO LIFE COMMITTEE,:
INC.,                       :
                            :
     Plaintiff,             :
                            :
vs.                         :   Case No. 4:10-cv-00416
                            :
TOM MILLER, et al,          :    HEARING TRANSCRIPT
                            :
     Defendants.            :
- - - - - - - - - - - - - -X


                         Courtroom, Second Floor
                         U.S. Courthouse
                         East First and Walnut Streets
                         Des Moines, Iowa
                         Wednesday, September 15, 2010
                         9:00 a.m.


BEFORE:  THE HONORABLE ROBERT W. PRATT, Chief Judge.




                    -        -         -




          ANN T. MOYNA - CERTIFIED SHORTHAND REPORTER

APPEARANCES:

For the Plaintiff:          KAYLAN L. PHILLIPS, ESQ.
                            JARED HAYNIE, ESQ.
                            Bopp, Coleson & Bostrom
                            One South Sixth Street
                            Terre Haute, Indiana  47808

                            BRIAN P. RICKERT, ESQ.
                            ADAM C. GREGG, ESQ.
                            Brown, Winnick, Graves, Gross,
                             Baskerville & Schoenebaum
                            666 Grand Avenue, Suite 2000
                            Des Moines, Iowa  50309

For Defendant Miller:       JEFFREY S. THOMPSON, ESQ.
                            MATT GANNON, ESQ.
                            Assistant Attorneys General of Iowa
                            Hoover State Office Building
                            Second floor
                            Des Moines, Iowa  50319

For Defendant Sarcone:      MICHAEL BERNARD O'MEARA, ESQ.
                            Assistant Polk County Attorney
                            111 Court Avenue
                            340 Polk County Administration Bldg.
                            Des Moines, Iowa  50309-0515

I  N  D  E  X

E  X  H  I  B  I  T  S

| EXHIBITS | OFFERED | RECEIVED |
|---|---|---|
| 2 - Summary | 32 | 32 |
| 3 - Articles of Incorporation | 41 | 41 |
| 4 - April 8 Culver letter | 41 | 41 |

1             P R O C E E D I N G S

2             MR. MESSINA:  Your Honor, the case before the Court

3    this morning is 4:10-cv-416, Iowa Right to Life Committee, Inc.,

4    versus Miller, et al.

5             Counsel, please enter your appearances for the record.

6             MR. RICKERT:  Your Honor, Brian Rickert from the Brown

7    Winnick firm on behalf of Plaintiff.

8             MR. HAYNIE:  Jared Haynie.

9             MS. PHILLIPS:  Kaylan Phillips, Bopp, Coleson and

10   Bostrom, on behalf of Plaintiff.

11            MR. THOMPSON:  Your Honor, Jeff Thompson for the

12   State, Defendants.  And with me is Matt Gannon, who is not

13   admitted to this Court, but I have asked him to sit with me

14   today because he represents the Commission, with permission of

15   the Court.

16            THE COURT:  All right.

17            MR. O'MEARA:  Michael O'Meara on behalf of Defendant

18   John Sarcone, Polk County Attorney.

19            THE COURT:  Okay.  Thank you very much.

20            Before we start your lawsuit and, I don't know,

21   Mr. Rickert, are you the person I should recognize on behalf of

22   the plaintiff, or Mr. Haynie, or Ms. Phillips?

23            MR. RICKERT:  Ms. Phillips will be arguing today.

24            THE COURT:  Your lawsuit arrived the same day my new

25   law clerk did, for which she'll thank you later I'm sure.

1          In any event, Mr. Thompson knows this, but I haven't

2   discussed it with the defense counsel because I thought it would

3   be an ex parte communication.  Her spouse is a lawyer who

4   started the same day you filed your lawsuit at the Attorney

5   General's Office.  Their previous work involved much the same

6   situation; her spouse was a law clerk in the Northern District

7   of Illinois, she was a lawyer in a large law firm in the

8   district.

9          I have done some research under 28 USC 455.  I don't

10  think it's a conflict.

11         Mr. Thompson, I'm assuming you know this, and so I

12  thought we should put it on the record.  My understanding is

13  that my law clerk's spouse isn't involved in this lawsuit.  I

14  need to know on the record if that's the case.  You might

15  describe for counsel the way your division works.  You can't be

16  here as long as I have and not do a lot of work with your

17  office, so I know that you parse out your work based on

18  divisions or departments.  I don't know, but we should make some

19  record of this.

20         MR. THOMPSON:  I think we should.  For the record,

21  what's the name of your clerk's spouse, Your Honor?

22         THE COURT:  My clerk is Sara Burstein,

23  B-U-R-S-T-E-I-N.  I believe her spouse is Daniel Burstein, if I

24  recall correctly.

25         MR. THOMPSON:  We are talking about the same employee.

1          THE COURT:  Yes.

2          MR. THOMPSON:  Dan did join our office.  He is in a

3  totally separate division from the civil division over which I

4  manage.  This lawsuit, both because of its nature as a civil

5  matter, but also just because of its importance, is being

6  staffed, frankly, the people who worked on the lawsuit are

7  sitting here, in addition to our Solicitor General, Mark Shaw.

8  Absolutely he has not and will not work on this matter.

9          THE COURT:  Okay.  Ms. Phillips, do you want to make

10  any record?

11          MS. PHILLIPS:  As far as we can tell that's fine.  As

12  long as he is sufficiently walled off from this case we have no

13  objection.

14          THE COURT:  Okay.  I did want you to know that I

15  looked at the Code of Conduct Advisory Opinion No. 38.  This has

16  happened, obviously, before regarding spouses who have had

17  conflicts like that in the past.  The Committee on the Code of

18  Conduct issue, Advisory Opinion 38, as well as Advisory Opinion

19  51, and if either side wants to see that, my chambers can

20  provide it for you.

21          In any event, Ms. Phillips, I, like you, probably read

22  the defendants' submission last night, and so I suppose the

23  place we ought to start is if you have some response you want to

24  make or any comment on their filing, you may do so.

25          MS. PHILLIPS:  My response will be included within my

1  presentation, if that's sufficient.

2          THE COURT:  Okay.  That will be fine.

3          All right.  Ms. Phillips, you may proceed, since it's

4  your burden.

5          MS. PHILLIPS:  May it please the Court.

6          THE COURT:  Ms. Phillips.

7          MS. PHILLIPS:  My name is Kaylan Phillips, and I

8  represent Plaintiff, Iowa Right to Life.  Several members of the

9  board, as well as the executive director, are in attendance

10 today.

11         To begin I would like to explain what Citizens United

12 did.  Citizens United said that the corporate forum does not

13 pose a threat so that you may not regulate a corporation just

14 because it's a corporation.

15         At issue in Citizens were two types of regulations.

16 The first included what is known as PAC-style burdens.  These

17 require registration, ongoing reporting, termination, other

18 onerous requirements.  The Court subjected these requirements to

19 strict scrutiny and found they were unconstitutional.

20         The second type at issue in Citizens United were

21 disclosure requirements.  In Citizens those were event driven

22 reporting, disclaimer reporting.  As to those types of reports

23 the Court applied exacting scrutiny and found that those were

24 constitutional.  That's what was at issue in part four of

25 Citizens United.

1          Here we're talking about the first type, we're talking

2     about the types of burdens that are subject to strict scrutiny,

3     these PAC-style burdens.  We're not talking about disclosure in

4     general.  Disclosure is fine.  We do not have a problem with

5     disclosure.  We have a problem with this type of regulation that

6     is above and beyond what is federally allowed under the

7     disclosure scheme approved in Citizens.

8          Here Iowa imposes political committee status on groups

9     that do not have the major purpose of nominating or electing

10    candidates.  Determining political committee status is subject

11    to strict scrutiny under Citizens United 298 and also Day v.

12    Holahan 1363.

13         Under Buckley, MCFO, and other Supreme Court cases,

14    PAC status, political committee status, may only be imposed on

15    organizations that are either under the control of the

16    candidate, or the major purpose of which is the nomination or

17    election of a candidate.

18         This major purpose test is a bright line test.  This

19    has also been approved by circuit courts in examining state law.

20    Specifically in the Fourth Circuit, North Carolina v. Leake,

21    it's from 2008, and also most recently New Mexico Youth

22    Organized versus Herrera.  That was back in June.

23         Under this current scheme Iowa Right to Life is not

24    only an independent expenditure committee, it's also a committee

25    generally and a political committee.

1          The State in its AO has said that it will not be

2   subject to the same types of restrictions that a political

3   committee will be subject to, however, the statute shows

4   otherwise.  We don't have any authority to say that the AO will

5   trump the statute.  Under the statute it specifically says that

6   our organization, once it spends $750, shall organize a

7   political committee.

8          You cannot require, you cannot constitutionally

9   require an organization to employ a political committee in order

10   to speak.  That was an important distinction in Citizens.  They

11   said that PAC is a burdensome alternative.  It is not the same

12   thing as an organization speaking for itself.  So the fact that

13   Iowa Right to Life has a PAC is immaterial.  It's not the same.

14   It's not the same as saying Iowa Right to Life can speak just

15   because it has a PAC.  Just because it is complying with

16   restrictions by having a PAC, it's not the same thing.

17          Citizens United said that an organization must be able

18   to speak for itself, it must be able to use general treasury

19   funds, it must not be subject to these types of restrictions

20   unless it is under the control of a candidate or has a major

21   purpose of nominating or electing a candidate.

22          Holding this current PAC status unconstitutional will

23   remove confusion and leave Iowa Right to Life as an independent

24   expenditure committee under the statute.

25          That leads me--

1          THE COURT:  What is the difference between a PAC-style

2   committee, political committee, and an independent expenditure

3   committee under Iowa law?  And I am specifically referring to

4   the--you both referred to this, the Iowa advisory--the Iowa

5   Board Advisory Opinion.  I think it's--you labeled it 201005,

6   and I think it's 201003, at least that's what Defendants told

7   me.

8          MS. PHILLIPS:  You are right.  That was a clerical

9   error.

10         THE COURT:  What's the distinction, in Plaintiff's

11  view, between--I mean, why can't the Iowa law make that

12  distinction?

13         MS. PHILLIPS:  They can, but here they haven't done so

14  properly.  Here they are treating independent expenditure

15  committees as political committees.  The scheme is confusing.

16  But under 68A.402(9), a permanent organization temporarily

17  engaged in activity that would trigger PAC status, such as

18  making over $750 in independent expenditures, shall organize a

19  political committee.

20         Under the law--

21         THE COURT:  By the way, Plaintiffs' already has a

22  political action committee, at least the defendants' brief told

23  me that; is that correct?

24         MS. PHILLIPS:  That is correct.  However, it's not the

25  same.  Citizens said that just because you have a PAC doesn't

1   mean that that is speaking for your organization.  They have

2   complied with PAC registration requirements in the past.  They

3   do have a PAC.  However, it's not the same thing.  Having a PAC

4   is not the same thing as an organization speaking.  That's

5   really important to understand that it's not the same thing.

6   It's a burdensome alternative, and Citizens said it's

7   impermissible.

8            Iowa Right to Life does not have a major purpose of

9   supporting or nominating a candidate, therefore, it itself

10  cannot be a political committee.  Here it itself wants to speak

11  and it itself cannot be registered or required to follow these

12  burdens that a political committee has to follow.

13           That leads me to my second point.  Even if we throw

14  away the term political committee and focus on independent

15  expenditure committee, independent expenditure committees have

16  certain requirements that they have to follow.  This includes

17  registration within 48 hours.  They have to file an initial

18  report at the same time, within 48 hours.  They have ongoing

19  reporting requirements.  They have to terminate.  In order to

20  terminate they have to bring their balance to zero, file a

21  report with the Commission--with the Board.  The Board has to

22  approve their termination.  Until the Board approves it they

23  still have ongoing reporting requirements.

24           These are PAC-style requirements.  These are the types

25  of requirements that the Court was talking about in Citizens

 1  United, 898.  It lists off these onerous burdens, these burdens

 2  that are only permissible if they are applied to the types of

 3  organizations that do this on an ordinary basis.  They have the

 4  major purpose of doing this activity.

 5          Here, the Government does have an informational

 6  interest.  Again, disclosure is not bad.  However, their

 7  informational interest is met by less restrictive means.  Here

 8  an alternative would be event-driven reporting, you only report

 9  when you do something.  It would be information satisfied by

10  disclaimers.  They have disclaimers, that's fine.

11          Here there is ongoing reporting.  You have to report

12  even if you are not doing anything.  You have to register in

13  order to speak.  You have to terminate when you decide that you

14  no longer want to speak.  These are onerous burdens, these are

15  PAC-style burdens.

16          Again, the state references Citizens United and Doe to

17  support its certification that these are just disclosure

18  requirements.  However, in those cases the Court upheld the type

19  of disclosure that I talked about at the beginning, the event

20  driven, the on ad disclaimer requirements.  Not these PAC-style,

21  ongoing registration termination-type requirements.

22          Furthermore, if the requested relief is granted, Iowa

23  will retain a disclosure system.  They will have what has been

24  approved by the federal system, which is event-driven reporting.

25  You don't have to report if you haven't done anything, you only

1  report if you do do activity.

2       The other restrictions at issue here is the prior

3  board approval.  This is a content-based restriction on speech.

4  This is subject to strict scrutiny.  Furthermore, such content-

5  based restrictions are presumptively invalid.  It is rare that

6  requiring--that a regulation restricting speech because of its

7  content will ever be permissible.  That's U.S. v. Playboy, page

8  817, from 2000.  Board approval is not required for any other

9  expenditures, it's only required for political expenditures.

10 This is impermissible.

11      Furthermore, it singles out particular speakers.  The

12 term in the statute says entity, however entity is not defined

13 clearly.  If you look at the form, the actual piece of paper

14 that the organization will have to see, it says if this was made

15 by a corporation then declare that the board of directors

16 approved this measure.

17      The fact that--  Again, this is like the fact that

18 Iowa Right to Life has a PAC fund.  To find that these burdens

19 can be met, the fact that it's only a piece of paper or only one

20 approval at the beginning of a year, does not take away the fact

21 that this is unconstitutional.  Even modest encroachment on

22 freedom, if accepted in small increments, leads to a loss that

23 would be unthinkable if inflicted all at once.  Courts must be

24 vigilant against modest emulations of speech as they are against

25 its sweeping regulations.

1          Furthermore, the State claims that this prior board

2   approval protects shareholders.  However, shareholders are

3   already protected by the corporate law.  Furthermore, this

4   doesn't protect shareholders, it requires approval from the

5   board of directors, not from the shareholders, so that interest

6   has already been met and is not met through this type of

7   regulation.

8          Finally, Iowa's corporate contribution ban

9   unconstitutionally burdens speech.  This is subject to strict

10   scrutiny as it is an outright ban.  It is a severe burden on

11   speech.  That's from Citizens 897, 898.  The State says that

12   this issue was reserved by Citizens United or untouched.

13   However, it is not before the Court in Citizens United.

14          Citizens changed things.  It said that a corporation

15   cannot be required to employ a PAC to speak.  That's what

16   Beaumont was talking about.  Beaumont said that a corporation

17   can speak because it has this PAC.  So it can give contributions

18   through its political committee, and that's sufficient.

19   However, Citizens threw it out the window and said that PACs are

20   not an alternative.  PACs cannot speak for an organization.

21   PACs are separate.

22          Again, this is also content based.  It only prohibits

23   political contributions.  It's defined by content.  That's U.S.

24   v. Playboy, 812.  The First Amendment hostility to content-

25   based regulation extends not only to restrictions on a

1 particular viewpoint, but also to prohibition of public

2 discussion of an entire topic.  The fact that it doesn't prevent

3 contributions to a particular type of candidate is irrelevant.

4 It prohibits contributions wholesale.

5         An important thing in the State's brief, they

6 said--they quoted Austin to say that there were differences

7 between corporations and labor unions because of the

8 antidistortion interests, among other things.  This argument is

9 irrelevant because the antidistortion interest was thrown out by

10 Citizens.

11         Therefore, because Plaintiff has shown likelihood of

12 success on all of the merits, because there is irreparable harm,

13 because the balance of equity tips in the favor of Plaintiff,

14 because the public interest is in Plaintiff's hand, there

15 is--it's never in the public interest to violate the

16 Constitution, the fact that we are close to an election is

17 irrelevant, this preliminary injunction should issue.

18         THE COURT:  Okay.  Ms. Phillips, when I read your

19 papers you make no citation to Data Phase, nor to Rounds .  When

20 I have an injunctive request, when I started my job 13 years

21 ago, my predecessor, for whom I have a lot of regard, told me

22 you should only grant an injunction where there is a nuclear

23 explosion threatened because what you are doing is you are

24 speeding up the process that you lawyers work by.  There is no

25 discovery.  You're--even at the end of the case you're guessing

1   whether there's full discovery, et cetera, et cetera.  You have

2   got to give me some Data Phase analysis.

3           Additionally, it seems to me the Court of Appeals

4   changed the analysis substantially last year in Rounds when they

5   tell me when you've got a legislative act--and I noted in one of

6   your papers, either you or the defendant told me that the Senate

7   had passed 49 to 1, and in the House it passed 98 to 0.  Judge

8   Grunder, when he wrote Rounds and reversed the District Court,

9   used very strong language about interfering with the legitimate

10  role of the Legislature.  I can't recall exactly what it was,

11  but it was, I think, an admonition to district courts, and yet I

12  saw nothing in your papers about Rounds, the democratic nature

13  of the statute.

14          The other thing that I read from the cases is that,

15  I'm going to hear from Mr. Thompson on this, of course, is it

16  does seem to me there are a number of important facts that,

17  other than your say so, I have nothing to go on.

18          The major political committee question.  In fact, I

19  read Chief Judge Gonzalez, this is a case from the District of

20  California, Southern California, she says, quote, "Both the

21  Supreme Court and Ninth Circuit stressed the importance of

22  factual development in reviewing First Amendment challenges to

23  campaign finance laws," declining to rule on constitutionality.

24          You know, tell me, am I just supposed to accept your

25  facts, No. 1; No. 2, why is there no reference in your papers or

1  here today about the Data Phase analysis that I'm bound to

2  engage in?

3        MS. PHILLIPS:  As to the last question about the

4  facts, this was a verified complaint, so these facts have been

5  verified.  There's no discovery that will get more facts or get

6  different facts.  Really the only facts at issue are what Iowa

7  Right to Life wants to do, and that information is in Iowa Right

8  to Life's control.  Iowa Right to Life has verified those facts.

9        Everything else before you is a legal matter.

10        THE COURT:  Okay.  Wait a minute.  I think the

11  Massachusetts case said, and you cite this, you tell me that the

12  Court should look at the, quote, organic documents and how it

13  spends the majority of its disbursements.  I just take your word

14  for it?  The defendants aren't entitled to inquire as to any of

15  that?

16        MS. PHILLIPS:  The organic documents are cited in the

17  brief, they are available online, it's available through the

18  Secretary of State's website.  Its Articles of Incorporation

19  that says that their purpose is to promote value of life and

20  educate the public, and that's spelled out in their Articles of

21  Incorporation, in their 501(c)(4) organization.  They are bound

22  by the fact that they are an educational institute.  That's

23  their purpose.

24        As to the preliminary injunction factors, we should

25  have discussed the cases, the Eighth Circuit cases that you

1  brought up and that the defendant brought up, and we would have

2  in a reply, and that was an oversight.  However, we do focus on

3  the Supreme Court cases that have said that while preliminary

4  injunction may be an extraordinary remedy, it is not

5  extraordinary where free speech is at issue.  That's Ashcroft

6  versus ACLU.  That's a 2004 Supreme Court case.

7           We also rely upon the supremacy clause, the fact that

8  we want the Constitution to be upheld.  The Constitution is a

9  status quo.  The challenge law has been in effect since April.

10  The Constitution has been in effect since 1789.  That's

11  something that we rely on.

12          Regarding the balance of harms, this is a quote from

13  the Sixth Circuit case--no, I'm sorry--September 9, 2010,

14  Kentucky case, "The harms and difficulty of changing a

15  regulation cannot be said to outweigh the violation of the

16  constitutional rights it perpetrates.  It would be far worse

17  that an election continued under an unconstitutional regime than

18  for the registry, for the State to experience difficulty of

19  expense and altering that scheme."

20          "It is well known," Citizens said this, "It is well

21  known that in an election that the electorate pays attention to

22  elections in the weeks leading up to it."  Therefore, this is

23  the time for Iowa Right to Life to speak.  This is the time that

24  it realized that it can't speak.

25          THE COURT:  Ms. Phillips, the law was passed in

1    February and March, the regulations were promulgated in April.

2    You don't file your lawsuit until September 7th.  Now it's an

3    emergency.  What happened between the passage of time that you

4    didn't file your lawsuit?

5         MS. PHILLIPS:  Well, this is the time that Iowa Right

6    to Life wants to speak.  It didn't want to speak back in April.

7    That's not when the people are paying attention to the election.

8    Candidates hadn't been decided yet.

9         THE COURT:  Well, understanding that it takes the

10   District Court some time, the defendants are entitled to due

11   process.  If you intended to speak in September or October, why

12   didn't you file your lawsuit in March or April?

13        MS. PHILLIPS:  Because in March and April we didn't

14   even know who the candidates were.  It was not a concrete issue

15   yet.  When we say we want to speak about this attorney general

16   race, the primary hadn't even happened yet, so how do we know

17   that the issues would be this important?  How could we know that

18   our organization wanted to speak?

19        THE COURT:  Google tells me Ms. Finley announced in

20   January.  Google is never wrong.

21        MS. PHILLIPS:  That's true.  That's true.  That's

22   true.  However, to require an organization to think months and

23   months ahead before it wants to speak is not what our country is

24   all about.  To require the organization to register before it

25   wants to speak is not what our country is about.  This is about

1 free speech.  This is a core fundamental right.  This is the

2 time that our organization wants to speak.  This is the time

3 that they are not allowed to speak.  That's why we're bringing

4 this case now.

5      If we had known about the fact that we wanted to speak

6 back in April we would have brought it back in April.  But then

7 it might have been too far away from an election, it might not

8 have been concrete enough.  This is the time.  We're in the

9 weeks leading up to the election.  We know it's close.  We know

10 this is--

11      THE COURT:  Well, Ms. Phillips, let me ask you, I

12 think the regulations by the Iowa Board have been in effect, at

13 least the defendants brief told me that they were allowed to be

14 promulgated immediately.  They had emergency rules.  They've

15 been in effect since April.  We're now 50 days away from the

16 election, or something like that.

17      Why should I change the rules that every interest

18 group, political party candidate has operated on since April

19 with a statute that's entitled to, at least the Court of Appeals

20 tells me, legitimacy, and change the rules seven weeks before

21 the election?

22      MS. PHILLIPS:  Respectfully, Your Honor, it is your

23 job to uphold the Constitution.  I understand that this--this

24 law was passed unanimously, however, it's unconstitutional.  It

25 was unconstitutionally passed.  You are the champion of the

1  Constitution.  Ordinarily deference is shown to the Legislature,

2  but here they got it wrong.  They are infringing on First

3  Amendment core rights.  Therefore, it doesn't matter--the

4  reliance interest isn't there.  Our clients are relying on you,

5  we're relying on you to uphold the First Amendment and allow

6  Iowa Right to Life to speak.  That's what's at issue here.

7          There is no Wild West situation.  There still will be

8  disclosure, and I think that's really important.  There still

9  will be disclaimers, there still will be event-driven reporting.

10  This is the type of disclosure that was upheld in Citizens.  Now

11  we remain, the scheme is there.

12          If the relief we ask for is granted, the only things

13  that will be taken away are these onerous burdens, the

14  registration, the ongoing reporting if you're not doing

15  anything, and the termination requirements.  Therefore, the

16  core--the disclosure will still be there, the Government's

17  informational interest will be met by what will be remaining if

18  their request for relief is granted.

19          THE COURT:  Anything else, Counsel?

20          MS. PHILLIPS:  No.

21          THE COURT:  All right.  Mr. Thompson.

22          MR. THOMPSON:  Thank you, Your Honor.

23          THE COURT:  Mr. Thompson, I don't know if you intend

24  to respond to either of the--in addition to the request for

25  preliminary injunction.  I have her motion to, Plaintiff's

1   motion to expedite and consolidate, and you didn't respond to

2   those.  I'm assuming that you are going to orally tell me today,

3   or perhaps ask for some time with respect to the other two

4   motions that, at least the way I read the pleadings, are

5   unresponded to.

6         MR. THOMPSON:  Your Honor, it may be a

7   misunderstanding.  On the scheduling conference we had with your

8   staff on Friday we talked through the issue, and it was our

9   understanding that the only things set for today was the

10  expedited request for hearing on this.

11        To answer your question, I am happy to respond to both

12  of them verbally.  I think that--

13        THE COURT:  You needn't do that.  I tell you what I

14  get, I always have Plaintiff contact Defendants because I try to

15  treat these with the seriousness they are entitled to.  If you

16  agreed with my law clerk or my judicial assistant that we're

17  going to limit this to the preliminary injunction, that's fine.

18  I frequently learn things from both.  I didn't know about it.

19        MR. THOMPSON:  Just to be clear, Your Honor, that's

20  why we didn't file a written response.  They are very succinct

21  motions.  I am absolutely prepared to discuss both of those with

22  you.  In fact, anticipated doing so.

23        THE COURT:  Okay.

24        MR. THOMPSON:  I can do that now or we can take it up

25  after.

1          THE COURT:  No, I would rather hear you on the Data

2    Phase analysis and on her claim of irreparable harm because I

3    think that's the priority that the law gives those factors.

4          MR. THOMPSON:  Thank you, Your Honor.  At the risk of

5    short circuiting all of the things I planned to talk about, let

6    me focus on that if I could.

7          As you pointed out, as you've observed, preliminary

8    injunction is an awesome power.  I think in discussing the

9    Rhodes case or the Planned Parenthood case you point out that

10   even after Data Phase the Eighth Circuit has made clear that

11   it's particularly awesome in the context of challenges to

12   statute that were enacted in accordance with our democratic

13   processes.

14         In Rhodes the Court emphasized not only that the

15   standard for likelihood of success was higher in those types of

16   cases, but that in doing the analysis to look at the merits the

17   Court should apply a deferential analysis and that there should

18   be a presumption of validity to the act of the Legislature in

19   this case, or the interpretation of the statute by the agency in

20   this case, and that such a statute should not be enjoined

21   lightly.

22         We believe that that framework, together with the

23   timing of this filing, is, as the Court has pointed out,

24   frankly, would permit this Court to dispose of this motion

25   without going into the detailed analysis on the merits that form

1    the basis of most of Plaintiff's argument.  I will get to that

2    in a moment.

3         The other thing that this Court has pointed out is

4    that, and it's well settled law, that the purpose of a

5    preliminary injunction is to maintain the status quo.  As the

6    Court correctly pointed out that if on April 9th, after Governor

7    Culver signed this bill into law and it became the law of Iowa,

8    somebody who was focused on their--on protecting their rights

9    filed a lawsuit to enjoin the application or the implementation

10   of this law so that it doesn't have the effect of chilling their

11   speech, as alleged in this case, then I think you and I would be

12   having an entirely different discussion this morning.

13        The facts that are undisputed and in the record are

14   not that.  Citizens United, as you point out, was decided in

15   January of 2010.  We'll get to the merits, but Citizens United

16   addressed a number of things.  It didn't address direct

17   contributions.  It specifically upheld disclosure.

18        In response to Citizens United the Iowa Legislature

19   acted promptly to conform Iowa law to the change in the law.

20   Overwhelmingly passed amendments in March, signed into law in

21   April, enacted emergency rules by mid-May.  Over the five months

22   that have passed since then, as you point out, in an election

23   year, candidates, voters, the public, the State, has conducted a

24   statewide, hotly contested general election in the context of

25   this new law.

1          During this time some folks have--the commission--

2   Again, let me detour for a second.  You've also pointed out the

3   need to develop a record here.  I think we will get to that.  I

4   think there is a real problem with the factual record here.

5   They don't get to just ask for a preliminary injunction on

6   allegations, they have the burden, they have to establish the

7   element under Data Phase.

8          We have submitted to the Court a detailed affidavit of

9   Charlie Smithson that sets out the factual issues that I'm about

10  to discuss with you, so it's not just Jeff Thompson, it's in the

11  record, and it's in the record from the official in Iowa who is

12  charged with the administration and interpretation of this

13  statute.

14         Over this five-month period parties seeking--have

15  sought advice.  There is a mechanism in place to seek advice.

16  Some sought advice.  Some sought informal advice, some sought

17  formal advice.  The mechanism provides that the formal advice,

18  the written opinion is a defense to prosecution.

19         We also know from the record that the plaintiff in

20  their own verified petition alleged that they called

21  Mr. Smithson to ask about this and that he didn't give them a

22  clear answer.  It's undisputed that they didn't ask for a formal

23  opinion.  This is back in February.

24         It's also undisputed in the record, documents are

25  attached to Mr. Smithson's affidavit, that although this

1   Plaintiff did not seek a formal opinion, counsel of record for

2   Plaintiff sought formal advice, which is the opinion that you

3   are referring to, Your Honor, the '03 opinion, on behalf of

4   another client that expressly states the contrary to this

5   confusion argument that this Court is hearing.  If you want to

6   make an independent expenditure, you don't have to be a PAC,

7   here are the only things you have to do.

8        The record in this case is a little bit different than

9   the factual allegations being made, and also certainly are not

10  the type of facts that support a timely action to protect First

11  Amendment rights.

12       Last week they filed a lawsuit against the expedited

13  disposition on the merits seeking to consolidate, seeking to get

14  this Court to decide by October 8th, which is, as you point out,

15  a deadline provided by Plaintiff.  There's absolutely nothing in

16  the record that indicates that there's anything significant

17  about October 8th for any reason.  The closest thing we have to

18  evidence that's meaningful in any way is Plaintiff's counsel's

19  allusion to the Citizens United case, the case that discusses

20  the importance of contributions in the October window.

21       THE COURT:  Mr. Thompson, the way I get--let me

22  interrupt--the way I get Ms. Phillips' response to all of that

23  is these are core constitutional values and that despite the

24  lack of what you claim is a sufficient thing, factual record,

25  and the other factors you have referred to, the regulatory

1   advice, et cetera, et cetera, is that it doesn't matter.  The

2   priority given the First Amendment is significant enough that I

3   should err on the side of giving them relief because these are

4   burdensome requirements.

5          MR. THOMPSON:  Well, let me answer two steps to that.

6          THE COURT:  Right.

7          MR. THOMPSON:  No. 1 is the very issue of

8   burdensomeness isn't necessarily simply a legal conclusion.  In

9   other words, there's some factual development necessary about

10  whether, in fact, these are burdensome.  Whether they are or

11  not, that relates to this chilling argument.  That's where,

12  frankly, we argue the fact that this very entity has set up a

13  PAC themselves already and the documents will reflect that.

14         I have got an additional exhibit to add that it is the

15  same treasurer for both entities and that the address of the PAC

16  is the address of the chief officer of the corporation.  The

17  idea that these are arms length issues here, I think, is not

18  supported by the record.

19         In an as-applied analysis, Your Honor, the idea that

20  this particular Plaintiff is somehow prevented or chilled from

21  making a contribution that they absolutely positively want to

22  make by October 8th, is factually just not demonstrable, and, in

23  fact, it's belied by the facts.  In fact, their most recent

24  filing, the Iowa Right to Life PAC filing in July of this year

25  reflects that they, in fact, have $950,000--$950--they wish they

1  had $950,000.

2        THE COURT:  There is a difference.

3        MR. THOMPSON:  --in their bank account and they've

4  already complied.  They've already registered.  They've already

5  done all of the reporting, and they have the money there.  If

6  they really wanted to engage in speech through their PAC, they

7  could.

8        The other thing is it's clear from the advisory

9  opinions and the statute, just a plain reading of the statute,

10  that if they want to engage in the very same conduct outside of

11  their PAC, all they have to do, and these are the two things

12  that they put into the record, in addition to the verified

13  complaint, are the forms, and we've talked about the forms in

14  our response, is to fill out the forms on the Internet, and it

15  includes seven pieces of information, and send off the check or

16  buy the materials.

17        Yes, it kicks in ongoing reporting obligations.  We

18  agree with that.  But as we get--  We can look at the legal

19  precedent.  The standard for disclosure and registration and

20  implementation of those things is, No. 1, it's not narrowly

21  tailored.  This other standard which they've now agreed to,

22  which is the exacting scrutiny standard, and the courts have, in

23  the Doe case that we cited, have made it clear that the states

24  are to be given wide latitude in--actually, the language in Doe

25  is significant flexibility in how to implement these voting

1 systems and these requirements, and that they are going to be

2 given substantial latitude in how to enforce the registration,

3 and reporting is not onerous.

4       THE COURT:  Mr. Thompson, I was fascinated--  I didn't

5 know this.  I read your brief.  Did you tell me in your brief

6 that Justice Thomas, he wants to throw out--when you were

7 telling me about how the Court upheld the disclosure

8 requirements, the law, and that these were disclosure

9 requirements, does Justice Thomas' opinion say that--Justice

10 Thomas' opinion was the law, there would be no disclosure

11 requirements?  Is that what you told me in your brief?

12       MR. THOMPSON:  Well, he dissented from part four of

13 Citizens United.  He was the sole dissent to that part.  He

14 disagrees.  He's dissented in previous opinions on this issue,

15 that the disclosure requirements should be subjected to a

16 different level of scrutiny, No. 1, and, No. 2, therefore,

17 applying the argument that Plaintiff argues, you would apply

18 strict scrutiny narrowly tailored and you may, depending on the

19 facts, reach a different result.

20       In Citizens United it's clear that he, on those facts,

21 would have said that the disclosure requirements were too

22 onerous.  But keep in mind that those are the very restrictions

23 that eight of the justices said were not too onerous.  That's

24 the law.  I think, yeah, there's his dissent in that case.  He

25 also dissented in the Beaumont case, which is part of the

1   argument here really buried in it.  They are asking you, when we

2   get to the contribution part, to accept that argument that the

3   Citizens United case impliedly overrule Beaumont and the

4   national right to work cases.  There is a series of cases that

5   deal with direct contributions that were expressly discussed in

6   Citizens United.

7          THE COURT:  Okay.  My question took you away from what

8   you were telling me about Doe.  You say that Doe permits the

9   states significant flexibility in meting out disclosure

10  requirements.  If I recall the facts in Doe, it was from

11  Washington and it was the--didn't a court give Plaintiff an

12  order of nondisclosure saying he didn't have to disclose the

13  signers of a referendum?

14         MR. THOMPSON:  Referendum petition, correct.

15         THE COURT:  In any event, why don't you tell me about

16  significant flexibility.  This is from 2010, isn't it, Doe?

17         MR. THOMPSON:  That's correct.  First of all, it's

18  very important that in 2010 Doe makes it clear that Citizens

19  United did not change Buckley or the line of cases in terms of

20  this exacting scrutiny, No. 1.  No. 2, you know, the standard is

21  a substantial relationship to a significantly important

22  government interest.

23         Then the case goes on to say that the Government

24  interest here involves the ability to run your own election

25  system and that that, by definition, implicates flexibility and

1  latitude in deciding how to implement.  In other words, we are

2  not going to micromanage the form or whether you call it a

3  disclosure, or registration, or whether you put it together.

4       The interest that's being protected is the interest in

5  the information and the ability to gather information, disclose

6  it, make it available to the voting public.  I think that

7  clearly under Doe, you know, this disclosure and the

8  corresponding registration step, which sounds onerous, but it's

9  nothing other than you have got to put your name in the system

10  in order to make the disclosure, are clearly not the type of

11  restrictions that Citizens United was talking about.

12       You can look at Citizens United.  You can also go back

13  to the Massachusetts Citizens for Life case where there were

14  distinctions drawn about the types of things that were required

15  of PACs, and things that were required of people wanting to just

16  make independent expenditures.  Those cases look an awful lot

17  like the distinction that the Iowa law makes.

18       One of the things, Your Honor, that we prepared with

19  the Court's permission, if I could approach, I would like to

20  mark as Exhibit 2 to this proceeding, is really a summary.  It's

21  a summary of the statutory provisions that apply to independent

22  expenditures and then PACs under Iowa law.  That kind of

23  simplifies this discussion a little bit to compare.

24       Rather than standing and reading through the statute,

25  Your Honor, I would offer this just as a summary of the

1   voluminous information, but it's all cited to the statute.

2          THE COURT:  Ms. Phillips, does Plaintiff object?

3          MS. PHILLIPS:  No, Your Honor.

4          THE COURT:  It will be received.

5                  (Defendants' Exhibit No. 2 was

6                  offered and received in evidence.)

7          MR. THOMPSON:  This gives kind of a contrast.  As you

8   follow through this idea of PAC-like or PAC status, what this

9   illustrates is the difference under Iowa law.  I also believe

10  that it's clear upon just a facial reading of the statute that

11  it's not confusing.  That if you just want to make an

12  independent expenditure all you have to do is fill out the form

13  and spend the money.  If you want to make it and do nothing, you

14  just have to spend $749--actually, $750, because it's $751 where

15  the issue kicks in.  There is a quantum that kicks in on the

16  disclosure requirements.  Below that there is absolutely no

17  limitation, and the law makes that clear.

18          Going back just for a moment to the Data Phase

19  discussion, because I think that one of the things that I think

20  is important, and I want to make sure we're very clear about, is

21  one of the things that Rhodes did in addition to kind of

22  heightening the standard as to challenges to statutes, which is

23  good for me, it also made it clear that in the context of a

24  constitutional challenge that the Court needs to look at the

25  merits, and that the determination on the merits could well be

1   all you need to do.  If the movant doesn't satisfy this higher

2   burden of likelihood of success on the merits, then you don't

3   need to get to the other balancing factors.

4          THE COURT:  So if the first factor is not a, quote,

5   close case, a guess, then the other three factors needn't be

6   analyzed?

7          MR. THOMPSON:  That's what Planned Parenthood or

8   Rhodes says.  You don't have to get to the other factors if the

9   plaintiff has failed to sustain their burden on the likelihood

10  of success.

11         THE COURT:  And the--did the Court of Appeals

12  quantify, in your view, the difference between likelihood of

13  success on the merits and winning the case?  I mean--

14         MR. THOMPSON:  When you read it--the answer is I think

15  they tried, but they also tried not to do it in a way that is

16  going to be treated as black letter law.  They did two things;

17  they talked about fair chance of success, which is the Data

18  Phase standard, and made it clear that the courts had

19  interpreted that as kind of less than 50 percent.  It didn't

20  have to be more likely than not.

21         THE COURT:  Then they go on to use the phrase rigorous

22  standard.

23         MR. THOMPSON:  Right.  There were two lines of cases

24  under the Eighth Circuit; there was the rigorous standard, there

25  was the fair chance juris prudence.  In the case of at least the

1   statute, they brought it together and they said, no, we're going

2   to be clear, it's got to be likely, they are likely to succeed

3   on the merits.  Then in a footnote they refer to some cases,

4   without expressly adopting them, that says likelihood has been

5   evaluated as being more than 50 percent.

6           My argument, Your Honor, would be it's no different

7   than actual success on the merits in a civil case, which is by a

8   preponderance of the evidence.  They've got to persuade you that

9   they win.

10          Now, I don't think they can do that for a number of

11  reasons.  Before we go to that, let me go to the follow on

12  question to this Rhodes discussion, which is even if they would

13  persuade you that there was likelihood of success on the merits,

14  does that mean, does that mean it's game over?  I think Rhodes

15  makes it clear that that's not the case.

16          Even where the Court decides there is a likelihood,

17  then the Court must consider the other Data Phase factors, which

18  is the balancing test, the public policy, the irreparable

19  injury.

20          One of the things that I will concede to make this

21  simple is that the juris prudence is pretty clear that if you

22  decide there is likelihood of success on the merits on a

23  constitutional injury, that the law is pretty clear they don't

24  have to put some evidence in the record of damages, that that is

25  an injury that's irreparable.

1          THE COURT:  That's the Phelps-Roper case that counsel

2    cited.

3          MR. THOMPSON:  Yes, Your Honor.  I think that's well

4    established.  But the other factors still argue in favor of

5    refusing to exercise your extraordinary power here.  Those

6    factors are the balancing of the equities.  And when you look at

7    that factor, as we pointed out, that is an equitable proceeding.

8    They are asking you to exercise your equitable power.  The law

9    says that the point of the equitable power is to preserve the

10   status quo.

11         In this case they are absolutely asking you to upend

12   the statute.  They're asking you--this is the discussion we had

13   about the April lawsuit versus September lawsuit.  They had

14   their chance in September, you know.  They're asking you to

15   change the status quo, which in equity is not what a preliminary

16   injunction should do, and for that reason alone you could say

17   no.

18         Then when you look at the public interest, this, as

19   you point out, is in the context of an election year with a

20   general election, hotly contested state general election, and

21   the idea that because they want to make a $750 independent

22   expenditure now you should upend the rules for everybody else

23   certainly cuts against the public interest particularly.

24         Again, in an as-applied thinking process as to this

25   Plaintiff, they already have a PAC, they've already got money in

1  the bank.  They could have done this a long time ago and still

2  filed this lawsuit challenging the non-PAC pathway.

3          THE COURT:  Mr. Thompson, Plaintiff's counsel do these

4  cases across the country, and I know the attorney general from

5  having the Attorney General's Office defend litigants here

6  before me, you have association with other attorneys general.

7  Is it a safe surmise on my part to say that many, if not all of

8  the 50 states reacted to Citizens in some way?

9          MR. THOMPSON:  Yeah.  Yes.

10         THE COURT:  Okay.  And do you know, because I'm sure

11 Ms. Phillips or Mr. Haynie can probably tell me as well, but do

12 you know, have any of the reactions, if we can call it that,

13 that legislatures have had to Citizens resulted in district

14 courts or courts of appeal striking down the reactions?

15         MR. THOMPSON:  As far as I know, and we are obviously

16 trying to gather information in a very short time window here--

17         THE COURT:  Right.

18         MR. THOMPSON:  --it's my belief that there is a

19 Minnesota case that was filed that there was some preliminary

20 relief granted.  It was filed as to a law that existed prior to

21 Citizens United and challenged provisions that had not been

22 conformed, if you will, to the law.

23         As far as I know there is no current decision where an

24 attempt to conform has been successfully challenged.  I could be

25 wrong.  We're not aware of one.  We're aware that other lawsuits

1   have been filed, in fact, by the same plaintiff, but I don't

2   have the benefit of all of those details.

3         THE COURT:  I know there is no legislative history

4   here, at least in the papers that you and Plaintiff have

5   submitted.  The change to Chapter 68A, was it in reaction to

6   Citizens?

7         MR. THOMPSON:  Absolutely.  Although, unfortunately

8   for you and for me, the Iowa Legislature doesn't really make a

9   legislative history like you are used to in a federal statutory

10  case.  The only thing we have is something called the bill

11  explanation, which in this case doesn't deal with it.

12        In Charlie Smithson's affidavit, which is in the

13  record in this case, he described the process and makes it clear

14  that this was done on an expedited basis in an attempt to

15  conform Iowa law to the changes in the law brought about by

16  Citizens United.

17        In the Data Phase analysis, other than the merits, I

18  still--  I know the Court is going to take seriously its duty to

19  look through these things and analyze this.  I think, as a

20  matter of law, even without analyzing the merits, you could and

21  should deny this request for preliminary relief.

22        As to the merits, again, we briefed it.  Let me make

23  just a couple of points that I think are the most important and

24  then we'll--I will see if you have any questions.  The

25  plaintiff's entire arguments, whether they are--are built on two

1  different premises.  Both of the premises are just wrong.  The

2  first premise is based on the statement that Plaintiff's counsel

3  made about what Citizens United did.  They declared, made a

4  declaration about corporate forum that then would, would and

5  should effect decisions, you know, not before the Court.  They

6  issued some kind of advisory opinion that binds you and

7  everybody else to change the law that touches any of these

8  issues.  No. 1, they didn't do that.

9         No. 2, they can't do that.  That's not what the

10  Supreme Court does.  They are always very cautious to only take

11  on the issue that is before them, and have made it absolutely

12  clear that that is the limitation on their precedent.

13         Citizens United, the change in the law, dealt with the

14  treatment of independent expenditures and said that they are

15  corporate speech.  They couldn't force PACs to--I'm

16  sorry--corporations to do it in a way that infringed upon under

17  the strict scrutiny analysis, which we agree applies to

18  independent expenditures, prohibition or limitation.

19         What they didn't do is address direct contributions,

20  they expressly didn't do that.  They expressly affirmed the line

21  of cases, the Buckley case, and others, that dealt with the

22  distinction between direct contribution and independent

23  expenditures as a matter of substantive law that they are

24  different by nature.  The Doe case confirms that--I'm sorry, not

25  Doe case, there are other cases that confirm that.

1        The other thing that it did absolutely is that it

2   upheld disclosure and registration requirements as to the same

3   independent expenditures applying the exacting scrutiny test.

4   What Plaintiff is trying to do, and what I think is a creative

5   argument, but is a wrong argument, is trying to boot strap one

6   part of that decision into the other and argue that somehow this

7   exacting scrutiny now applies to every step of this process, and

8   they do this by evoking this concept that everything Iowa does

9   turns Iowa Right to Life into a PAC.

10        That is wrong both as a matter of law and as a matter

11  of fact.  Upon its face the statute doesn't do that.  You can

12  read it.  It's very clear.  Exhibit 2 breaks down the

13  differences between the two.  They claim confusion, chilling

14  effect due to this confusion.  Yet on the facts of this case, in

15  an as-applied analysis, this very Plaintiff knows the

16  difference.  They fill out paperwork, they fill out a form.

17  They've done the disclosures.  They have got money in the bank.

18        They have told you, Your Honor, they are here because

19  they have chosen not to make this speech, this independent

20  expenditure, they want to make it outside the scope of their

21  PAC.  Any argument to this Court that they are confused about

22  what's PAC and what isn't is, frankly, disingenuous and

23  certainly not supported by the record.

24        Then they boot strap all of that into a strict

25  scrutiny analysis, which doesn't apply.  It's the wrong analysis

1    applied to facts that are just not consistent with the record.

2          The contribution plan--or the contribution ban, I

3    think they are, again, arguing, I think they told you that

4    although they conceded that this was not before the Court, that

5    somehow Citizens United changed the law.  That's just not true.

6    And when we look at subsequent cases it's clear that if there is

7    district court cases that followed, there's--  Perhaps the most

8    important thing that I think, buried in all of this, is the

9    Beaumont case.  I guess they are arguing that Citizens United

10   impliedly overruled Beaumont.  I can understand why because they

11   were the plaintiffs in the Beaumont case, too.  The Court didn't

12   do that, and they are here making out the exact same arguments

13   that they made to the U.S. Supreme Court in the Beaumont case

14   that were rejected, and to which Justice Thomas dissented, as

15   you and I talked about.

16         On the merits, if you work through the merits on this,

17   as we invite you to do, the brief deals with these issues very

18   specifically, again, basing that analysis on the record, basing

19   it on the statute and the plain reading of the statute, we

20   believe you will reach the conclusion that Plaintiffs' can't

21   satisfy their burden to show likelihood of success on the

22   merits.

23         Just to make sure the record is complete, I've got one

24   other thing--actually, two other things I would like to offer,

25   if I could.  One is the Court asked about the papers, the

1  Articles of Incorporation for Iowa Right to Life, Inc.  I have

2  marked the current version and the current disclosure statement

3  as Exhibit 3 to this hearing.

4         If I could, Your Honor, may I approach?

5         THE COURT:  Just hand it to my law clerk.

6         MR. THOMPSON:  Do you want a copy, sir?

7         THE COURT:  That will be fine.

8         MR. THOMPSON:  These are the facts that make it clear,

9  as I pointed out earlier, that this entity shares a treasurer

10 with PAC and that the address is the same as--the PAC address is

11 the same as the--1500 Illinois Street, address of incorporation

12 is the same as the chairman, I think, of PAC.

13        Finally, Exhibit 4 is the actual--of course, I

14 wouldn't have--just so the record is clear on the date of the

15 signing of the bill, Exhibit 4 is the transmittal letter from

16 the Governor with the amendments to the statute that were made

17 on April 8th to conform Iowa law to Citizens United.

18        THE COURT:  All right.  We'll mark those serially.

19        Ms. Phillips, do you have an objection?

20        MS. PHILLIPS:  Hesitantly, no.

21        THE COURT:  Okay.  They will be received.

22                  (Defendants' Exhibits 3 and 4 were

23                   offered and received in evidence.)

24        MR. THOMPSON:  Your Honor, frankly, unless you have

25 any specific questions I think I've--the brief fills in the

1  gaps.

2          THE COURT:  Mr. Thompson, I have a copy of the

3  definitions part of the statute.  Can you tell me 68A.102, I

4  think Plaintiff made reference to this.  Does the--why doesn't

5  that definition apply, the independent expenditures provision

6  constitute an exception?

7          MR. THOMPSON:  I'm sorry?

8          THE COURT:  68A.102, the definition section.

9          MR. THOMPSON:  Right.  I think they apply.

10          THE COURT:  Okay.  Well, do I need to use the

11  Administrative Rules to make that determination or do you think

12  on the face that's clear?

13          MR. THOMPSON:  The reference to context perhaps makes

14  it a little bit confusing, but I think on its face it says it

15  applies unless context otherwise requires.

16          The other thing that I think is important, and I am

17  not exactly sure what the specific issue is, but there is a

18  related question that I think is referred to in at least one of

19  the advisory opinions about this issue of committee.  In one of

20  the opinions issued there was a discussion about if you just

21  want to make a contribution--I mean, a direct expenditure, does

22  this reference to committee mean you have to form a PAC, and the

23  expressed advice, the written advice is no, you don't.  That's

24  not what it means.

25          I think that's the whole point of this.  If there is

1  an ambiguity here there is a way to sort that out.  Plaintiff

2  chose not to, frankly.  The Court ultimately may have to decide,

3  as a matter of statutory interpretation, sorting out some of

4  these issues.  Again, that is something that doesn't need to be

5  taken up on a preliminary injunction hearing and certainly on an

6  expedited basis before we've even had an opportunity to answer

7  or plead.

8          THE COURT:  Lastly, Mr. Thompson, do you agree with

9  counsel that there are no factual disputes between you and the

10 plaintiff?

11         MR. THOMPSON:  Absolutely not.

12         THE COURT:  Okay.

13         MR. THOMPSON:  No. 1, as I pointed out, the verified

14 complaint such as it is doesn't include, even if it were

15 undisputed, doesn't include the type of record that they would

16 need in order to sustain the motion that they've moved.

17         As to the verified complaint, let me see if I can grab

18 it real quick.  I have got it marked.  There are several things

19 that they allege that I think create fact issues.  In fact, one

20 of the things that we have argued is irrelevant from a legal

21 standpoint, but they've argued that it is, is this question of

22 major purpose.  They have made an allegation that, you know,

23 speech is not a major purpose of their organization.  The courts

24 have made clear that that is a factual analysis.

25         I would argue that, No. 1, it's not undisputed because

1   we have to see what, in fact, their expenditures have been over

2   the course of the organization and quantify it.  In fact, in the

3   Massachusetts, I believe Massachusetts Citizens for Life case

4   the Court pointed out that in an as-applied analysis to an

5   advocacy nonprofit, small nonprofit, that this PAC-like status

6   was inappropriate for independent expenditures, but specifically

7   said that that status could change based on how they, in fact,

8   chose to spend their money, and that it could become a major

9   purpose.  Which is the source of the answer that they point out

10   from Mr. Smithson that says I can't tell you until you tell me

11   how much money you spend in terms of this PAC question.  It's

12   undisputed that if you just want to make independent

13   expenditures there are no restrictions other than disclosures

14   and registration.

15          There are--they have created a fact issue that's

16   important to resolving this issue by making this major purpose

17   allegation.  And then they have also made allegations about, you

18   know, burdens and uncertainty that have caused them to be

19   chilled.  Certainly, you know, based on, again, the facts in

20   this case, they are represented by lawyers who have sued--filed

21   lawsuits about this very issue for probably 10 years.  That

22   they, in fact, contacted Mr. Smithson that their counsel, in

23   fact, got written opinions for other clients, you know, I think

24   there is a real fact question about whether, in fact, they are

25   really chilled here.

1          It's clear to me that they could have made this

2     contribution, they could have made this independent expenditure

3     through their PAC had they wanted to do it.  They have chosen

4     this path, they have made it clear, and they have chosen this

5     path because they wanted to do it outside their path, and,

6     frankly, Your Honor, it's clear that they have chosen this path

7     because they don't want to make the contribution, they want this

8     lawsuit.

9               THE COURT:  Okay.

10              MR. THOMPSON:  That's all I have, Your Honor.

11              THE COURT:  All right.  Thank you.

12              Ms. Phillips, do you have any rebuttal?

13              MS. PHILLIPS:  Yes.

14              THE COURT:  Ms. Phillips, I know that your law firm is

15    quite involved in these kinds of cases.  I assume, and perhaps

16    my assumption is incorrect, you've done cases in other districts

17    of 94 district courts.  Same question I had to Mr. Thompson,

18    have most states reacted legislatively to the Supreme Court

19    decision in Citizens United?  When I say most, don't give me a

20    count, but is there a lot of change in the state laws?

21              MS. PHILLIPS:  Yes, many have or are beginning to act.

22    Only a few have actually passed.

23              THE COURT:  Have actually passed?

24              MS. PHILLIPS:  Yes, only a few.

25              THE COURT:  Are you involved in a number of those that

46

1   have?

2          MS. PHILLIPS:  Yes.

3          THE COURT:  And I will take any help I can get from

4   the lawyers--

5          MS. PHILLIPS:  Sure.

6          THE COURT:  --or other district courts.  Have there

7   been any merits or--I know with computer software we can

8   generally find, there is no such thing as an unpublished case.

9   Have you received decisions in your work in other jurisdictions?

10          MS. PHILLIPS:  No.

11          THE COURT:  Do you have some submitted cases--

12          MS. PHILLIPS:  Yes.

13          THE COURT:  --that are similar without binding you

14   that would be helpful to me?  Do you have cases that are

15   submitted to my colleagues on the District Court?

16          MS. PHILLIPS:  Yes.

17          THE COURT:  What about the learned people on the Court

18   of Appeals, are they considering any of these?

19          MS. PHILLIPS:  No.  Every case is in a district court.

20   Just out of candor, there is a case in the District Court of

21   Minnesota.  My firm did have a preliminary injunction hearing

22   and it was consolidated with the merits.   No decision has been

23   issued.

24          THE COURT:  Is it the same or similar to this?

25          MS. PHILLIPS:  Similar in that it is a reaction to

1  Citizens United.  Of course, the statutes are different and the

2  arguments are different, but it is probably going to be the

3  first post-Citizens United decision that will come.

4         THE COURT:  Better someone else than me.

5         MS. PHILLIPS:  Just as a point of clarification,

6  throughout the State's argument today they confused my firm with

7  the plaintiff.  Just to be clear, the plaintiff doesn't have

8  other cases.  This case is not about me, this case is not about

9  Bopp, Coleson and Bostrom.  This case is about Iowa Right to

10  Life.  It doesn't matter what opinions my firm might have sought

11  on behalf of other plaintiffs.  It's immaterial.  It doesn't

12  matter.  We're here representing a specific client.  This client

13  wants to act.  That's what this case is about.  It's not about

14  advisory opinions issued on behalf of other circumstances.

15         THE COURT:  Right.

16         MS. PHILLIPS:  Just at the onset.

17         THE COURT:  I was looking for some help, I wasn't

18  suggesting that you were a litigant in any way.

19         MS. PHILLIPS:  Sure.  Just to be clear, this has

20  nothing to do with us.  This is very specific to Iowa, specific

21  to Iowa Right to Life.

22         THE COURT:  Okay.

23         MS. PHILLIPS:  Also, just a couple of--a few points

24  just to share in what's going on here.  I want to clarify

25  Citizens United, clarify the standards.  Out of candor, I worked

1   on that case.  This--I understand this case.  At issue there

2   were different types of regulations.  That's a fair assessment,

3   that the PAC-style burdens were subject to strict scrutiny.  The

4   mere disclosure, which included in that circumstance

5   event-driven reporting and disclaimers, were subject to exacting

6   scrutiny.  Here we're in the strict scrutiny category.  This is

7   more than the informational interest merits.

8           THE COURT:  What is an exacting scrutiny?  Does that

9   let the District Court or the courts consider more compelling

10  interests of the State?  I think that's what I've gotten from

11  the briefs, that this strict scrutiny and the exacting scrutiny

12  lets the fact finder take into account more of what the

13  defenders of the statute would say is a compelling state

14  interest, whether it's anticorporation, quid pro quo, disclosure

15  in general.

16          I think one of the factors they mentioned was the idea

17  that contributors know where their money goes.  Are those all

18  exacting scrutiny rationalities?

19          MS. PHILLIPS:  Those are all factors to consider.

20  However, when we're talking about exacting scrutiny we need

21  sufficiently important interest--it comes down to what the

22  interest is.  Just bare bones, it's what the Government's

23  interest is.  Here they've conceded their interest is

24  information, that's their interest.

25          Regardless of what scrutiny is applied, we think it's

1   strict, but regardless we're talking about informational

2   interest.  The federal model shows us that that informational

3   interest is met by lesser restrictive means.  It's met by

4   event-driven disclosure.  It's met by disclaimers.

5         Iowa has chosen not to use that federal model that it

6   clearly knows about and goes above and beyond and requires more.

7   It requires you to register before you speak.  That's onerous.

8   It requires you to continue reporting even when you don't speak.

9   It requires you to terminate and essentially say you are not

10  going to speak anymore.  And then you would have to file another

11  registration if you change your mind.

12        These are onerous burdens.  These are not narrowly

13  tailored to that informational interest.  And the fact that the

14  informational interest can be achieved by less restrictive means

15  is very compelling.  The fact that there are other ways to do

16  this--  We are not asking you to take away disclosure, we think

17  disclosure is good.  We think disclaimers are important.  We

18  think that does serve the informational interest, and we think

19  that is important to the public to know who is speaking.

20  However, requiring an organization to register before it speaks,

21  requiring it to submit these forms when it's not even doing

22  anything, is requiring too much.

23        Just to clarify, the fact that Iowa Right to Life, the

24  fact that Iowa Right to Life PAC exists is not material.  Iowa

25  Right to Life wants to speak.  Citizens United said that the

1    corporation can speak, and that a PAC is not speaking.  If it's

2    using a PAC, it's not speaking.  It needs to be able to use its

3    general funds to speak.  Therefore, all this discussion about

4    the same mailing address, it's just a distraction.  It doesn't

5    matter.  Citizens United was very clear.  It doesn't matter that

6    they comply with PAC requirements.  By forming a PAC the

7    organization itself wants to speak, and that's what's at issue

8    here.

9          Also, I hesitate to bring up status quo, but since

10   opposing counsel did, just to be clear, the purpose of a

11   preliminary injunction is to prevent irreparable injury so as to

12   preserve the Court's ability to render a meaningful decision on

13   the merits.  Therefore, the--if the current status quo is the

14   cause of the irreparable injury, which is true here, the Court

15   should alter the status quo to prevent the injury.  There is no

16   bar to a court granting a PI--a preliminary injunction just

17   because it might disrupt the status quo.  That's clear from

18   Sixth Circuit precedent on that, and Ninth Circuit, and in a

19   recent, last week, District Court case in Kentucky that said

20   that the status quo shouldn't be a factor.

21         Here, and opposing counsel agreed, the issue here is

22   whether Iowa Right to Life has a likelihood of success.  Whether

23   these restrictions do burden Iowa Right to Life's constitutional

24   rights, and because they do, the other factors fall in line.

25         Just to be clear, again, with these new exhibits,

1   they--they are just distracting the issue.  The fact that

2   independent expenditure committees aren't subject to as many

3   burdens as PAC doesn't make them any less burdensome.  The fact

4   that they can register the same form as filing their first

5   report doesn't mean that it's not onerous.  The Supreme Court

6   said it is onerous.  The fact now that it's one page, it's just

7   a distraction.

8          As my colleague said, wearing a patch on your sleeve

9   may not seem like a huge burden, but it is.  The fact that it's

10  one page or two pages or 40 pages doesn't make a difference.

11  The fact that this is infringing on Iowa Right to Life's

12  constitutional rights, that's what matters.

13         THE COURT:  Ms. Phillips, let me ask you, Mr. Thompson

14  made much of Doe versus Reave.  I think that's post-Citizens,

15  isn't it?

16         MS. PHILLIPS:  Yes, sir.

17         THE COURT:  When he talked about that the phrase that

18  he used about significant flexibility, it states they have to

19  run their own elections.  I assume your reaction to that is,

20  well, it's still a burden of discussion, or do you have any

21  response to his idea that Doe gives rationale to the statute?

22         MS. PHILLIPS:  I would certainly say that Doe doesn't

23  say that the State has a right to infringe on First Amendment

24  rights by enacting its law.  It is true that in Doe disclosure

25  was upheld under exacting scrutiny.  That type of disclosure,

1  again, is different.  That's part four of Citizens.  That's the

2  eight to one portion of Citizens.

3         We're talking about event-driven, which is reporting

4  that comes about when you do something, or disclaimer.  That's

5  different.  And Doe is still ongoing.  It's back in the District

6  Court to consider more specific situations.

7         I certainly--there is no way that Doe stands for

8  allowing a state to violate the Constitution.  The Constitution

9  is the supreme law of the land.  A state can't go above and

10 beyond that and infringe on the rights of Iowa Right to Life

11 here.

12        Again, major--with regard to the major purpose test,

13 and that applies to Counts 1 and 2, where PAC status can be

14 imposed on organizations that have a major purpose in nominating

15 or electing candidates, or when, just to clarify, that has to do

16 with major purpose nominating or electing candidates, not major

17 purpose of speaking, the major purpose nominating or electing

18 candidates.  The Court has said that that can be found by

19 looking at the organic documents, it can also be found by

20 looking at expenditures.

21        If you look at the organic documents, which the State

22 has now entered into the record, it's clear their purpose is to

23 promote life and to spread information about pro-life issues.

24 It is not their purpose to nominate or elect candidates.  The

25 State incorrectly said that the purpose may be to speak clear,

53

1   and that's not the standard.   The standard is whether they have

2   the major purpose of nominating or electing candidates.

3            THE COURT:   Okay.   Thank you very much.

4            We'll consider the matter submitted.   We'll be in

5   recess.

6            (Hearing concluded at 10:20 a.m.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

54

1                    C E R T I F I C A T E

2            I, the undersigned, a Certified Shorthand Reporter of

3  the State of Iowa, do hereby certify that I acted as the

4  official court reporter at the hearing in the above-entitled

5  matter at the time and place indicated.

6            That I took in shorthand all of the proceedings had at

7  the said time and place and that said shorthand notes were

8  reduced to typewriting under my direction and supervision, and

9  that the foregoing typewritten pages are a full and complete

10 transcript of the shorthand notes so taken.

11           Dated at Des Moines, Iowa, this 4th day of October,

12 2010.

13

14

15                    /s/ Ann T. Moyna
                      CERTIFIED SHORTHAND REPORTER
16

17

18

19

20

21

22

23

24

25