IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| IOWA RIGHT TO LIFE COMMITTEE, INC. * | |
| * | 4:10-cv-416 RP-TJS |
| Plaintiff, * | |
| * | |
| v. * | |
| * | |
| MEGAN TOOKER,[1] in her official capacity * | |
| as Iowa Ethics and Campaign Disclosure * | |
| Board Executive Director; JAMES ALBERT, * | |
| JOHN WALSH, PATRICIA HARPER, * | |
| GERALD SULLIVAN, SAIMA ZAFAR, * | |
| and CAROLE TILLOTSON, in their official * | |
| capacities as Iowa Ethics and Campaign * | |
| Disclosure Board Members, * | MEMORANDUM OPINION |
| * | AND ORDER |
| Defendants. * | |
| * | |

Currently before the Court are two motions for summary judgment. The first motion was filed by Iowa Right to Life Committee, Inc. ("IRTL") on January 14, 2011. Clerk's No. 44. The above-captioned government officials (collectively, "Defendants") filed a response on February 4, 2011. Clerk's No. 47. IRTL filed a reply on February 11, 2011. Clerk's No. 50. IRTL also filed two "Notices of Additional Authority" in support of its motion on June 9, 2011. Clerk's Nos. 51, 52. The second motion was filed by Defendants on January 14, 2011. Clerk's No. 45. IRTL filed a response on February 4, 2011. Clerk's No. 48. Defendants filed a reply on February 11, 2011. Clerk's No. 49. The matters are fully submitted.[2]

---

[1]     Megan Tooker has been substituted as a party in this case for W. Charles Smithson, pursuant to Federal Rule of Civil Procedure 25(d). *See* Clerk's No. 47-1 ¶ 2.

[2]     IRTL has requested oral argument; however, the Court does not believe oral argument will substantially aid it in resolving the motions. Therefore, IRTL's request is denied.

## I.  FACTUAL & PROCEDURAL BACKGROUND

The following facts are undisputed, unless otherwise noted.  IRTL is an Iowa nonprofit corporation that is exempt from federal income taxes pursuant to 26 U.S.C. § 501(c)(4).  Pl.'s Statement of Undisputed Facts (hereinafter "Pl.'s Facts") ¶¶ 1, 7 (Clerk's No. 44-2); *see also* Defs.' Resp. to Pl.'s Statement of Undisputed Facts (hereinafter "Defs.' Resp. re Facts") ¶ 1, 7 (Clerk's No. 47-1).  IRTL is affiliated with the National Right to Life Committee, Inc. and is funded solely by donations.  *See* Pl.'s Facts ¶ 6.  According to IRTL's mission statement, its "primary purpose is 'to present factual information upon which individuals may make an informed decision about the various topics of fetal development, abortion, and alternatives to abortion, euthanasia, infanticide and prevention of cruelty to children.'"  *Id.*  IRTL asserts that "its major purpose is not and will never be the nomination or election of candidates."[3]  *Id*. ¶ 7 (citing Compl. ¶ 15).

Defendants are the officers and members of the Iowa Ethics and Campaign Disclosure Board (hereinafter the "Board").  Pl.'s Facts ¶¶ 2–3.  Therefore, Defendants "have the power to investigate violations of, and to enforce the provisions of, Iowa Code chapter 68A, chapter 68B, and the rules adopted by the Board."  *Id.*

In January 2010, the United States Supreme Court issued its opinion in *Citizens United v. Federal Election Commission*.  *See* 130 S. Ct. 876, 886 (2010).  In April 2010, Iowa revised its election laws and enacted new administrative rules.[4]

---

[3]      Defendants deny IRTL's assertion regarding its "major purpose."  Defs.' Resp. re Facts ¶ 7.

[4]      The Court described the relevant history relating to the challenged statutes and rules in its October 20, 2010 order on IRTL's motion for a preliminary injunction.  Clerk's No.

IRTL "wants to make independent expenditures to support candidates who it believes will fight to protect issues that are important to its organization, such as protecting life," but, according to IRTL, it "is chilled from doing so due to the burdens imposed by the restrictions challenged here—particularly the uncertainty of when PAC status might be imposed—and the potential civil and criminal penalties for violating the challenged provisions."[5]  Pl.'s Facts ¶ 5 (citing Compl. ¶ 13).  IRTL also wishes to make campaign contributions to candidates for political office.  *See id.* ¶¶ 11–12 (citing Compl. ¶¶ 19–20).

IRTL filed this case on September 7, 2010.  *See* Compl. ¶ 3(a)–(d).  Along with its complaint, IRTL also filed a motion for a preliminary injunction.  Clerk's No. 2.  The Court denied that motion on October 20, 2010.  Clerk's No. 37 (hereinafter the "PI Order").[6]

## II.  STANDARD FOR SUMMARY JUDGMENT

The term "summary judgment" is something of a misnomer.  *See* D. Brock Hornby, *Summary Judgment Without Illusions*, 13 Green Bag 2d 273 (Spring 2010).  It "suggests a judicial process that is simple, abbreviated, and inexpensive," while in reality, the process is complicated, time-consuming, and expensive.[7]  *Id.* at 273, 281.  The complexity of the process, however, reflects the "complexity of law and life."  *Id.* at 281.  "Since the constitutional right to

37 at 5–9.  Therefore, the Court will assume the reader's familiarity with that history.

[5]    Defendants dispute that IRTL has, in fact, been chilled.  *See* Defs.' Resp. re Facts ¶ 5 (citing Defs.' App. at 40–42 (Bowen Dep. Tr. 28, 32–33, 36–37)).

[6]    The PI Order has been published as *Iowa Right to Life Committee, Inc. v. Smithson*, 750 F. Supp. 2d 1020 (S.D. Iowa 2010).

[7]    Judge Hornby, a District Court judge for the District of Maine, convincingly suggests that the name "summary judgment" should be changed to "motion for judgment without trial."  13 Green Bag 2d at 284.

jury trial is at stake," judges must engage in a "paper-intensive and often tedious" process to "assiduously avoid deciding disputed facts or inferences" in a quest to determine whether a record contains genuine factual disputes that necessitate a trial.  *Id*. at 281–82.  Despite the seeming inaptness of the name, and the desire for some in the plaintiffs' bar to be rid of it, the summary judgment process is well-accepted and appears "here to stay."[8]  *Id*. at 281.  Indeed, "judges are duty-bound to resolve legal disputes, no matter how close the call."  *Id*. at 287.

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  However, "summary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances."  *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 n.5 (8th Cir. 1975)).  The purpose of summary judgment is not "to cut litigants off from their right of trial by jury if they really have issues to try."  *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467 (1962) (quoting *Sartor v. Ark. Natural Gas Corp.*, 321 U.S. 620, 627 (1944)).  Rather, it is designed to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried."  *Anderson v. Viking Pump Div., Houdaille Indus.*,

---

[8]     Judge Hornby notes that over seventy years of Supreme Court jurisprudence gives no hint that the summary judgment process is unconstitutional under the Seventh Amendment. *Id*. at 281 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336 (1979) and *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627 (1944)). While he recognizes that not much can be done to reduce the complexity of the summary judgment process, he nonetheless makes a strong case for improvements in it, including, amongst other things, improved terminology and expectations and increased pre-summary judgment court involvement.  *See id*. at 283–88.

*Inc.*, 545 F.2d 1127, 1129 (8th Cir. 1976) (citing *Lyons v. Bd. of Educ.*, 523 F.2d 340, 347 (8th Cir. 1975)).

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment upon motion after there has been adequate time for discovery. Summary judgment can be entered against a party if that party fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is appropriately granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and that the moving party is therefore entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994). The Court does not weigh the evidence, nor does it make credibility determinations. The Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Wilson v. Myers*, 823 F.2d 253, 256 (8th Cir. 1987) ("Summary judgment is not designed to weed out dubious claims, but to eliminate those claims with no basis in material fact.") (citing *Weightwatchers of Quebec, Ltd. v. Weightwatchers Int'l, Inc.*, 398 F. Supp. 1047, 1055 (E.D.N.Y. 1975)).

In a summary judgment motion, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *See Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 248. Specifically,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). If the moving party has carried its burden, the nonmoving party must then go beyond its original pleadings and designate specific facts showing that there remains a genuine issue of material fact that needs to be resolved by a trial. *See id.*; *see also Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 257.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48. An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248. "As to materiality, the substantive law will identify which facts are material . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Courts do not treat summary judgment as if it were a paper trial. Therefore, a "district court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In a motion for summary judgment, the Court's job is only to decide, based on the evidentiary record that accompanies the moving and resistance filings of the parties, whether there really is any material dispute of fact that still requires a trial. *See id.* (citing *Anderson*, 477 U.S. at 249 and 10 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2712 (3d ed. 1998)).

Where, as here, there are cross motions for summary judgment, the parties share the

burden of identifying the evidence that will facilitate this assessment.  *Waldridge*, 24 F.3d at 921.

"[T]he filing of cross motions for summary judgment does not necessarily indicate that there is

no dispute as to a material fact, or have the effect of submitting the cause to a plenary

determination on the merits."  *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir.

1983) (citations omitted).  "Cross motions simply require [the Court] to determine whether either

of the parties deserves judgment as a matter of law on facts that are not disputed."  *Barnes v.

Fleet Nat. Bank*, 370 F.3d 164, 170 (1st Cir. 2004) (quoting *Wightman v. Springfield Terminal

Ry.,* 100 F.3d 228, 230 (1st Cir. 1996)).  Therefore, the Court will evaluate each of the motions

"independently to determine whether there exists a genuine dispute of material fact and whether

the movant is entitled to judgment as a matter of law."  *See St. Luke's Methodist Hosp. v.

Thompson*, 182 F. Supp. 2d 765, 769 (N.D. Iowa 2001).  The Court notes, however, that

"[s]ummary judgments in favor of parties who have the burden of proof are rare, and rightly so."

*Turner v. Ferguson*, 149 F.3d 821, 824 (8th Cir. 1998).

## III. LAW AND ANALYSIS

### A.  *Count One*

In Count One,  IRTL challenges Iowa Code §§ 68A.102(18) and 68A.402(9).  Compl. ¶

23.  IRTL argues that these provisions "unconstitutionally impose[] political-committee ('PAC')

status on groups whose major purpose is not the nomination or election of candidates."[9]  Pl.'s

Br. in Supp. of Mot. for Summ. J. (hereinafter "Pl.'s Br.") at 3 (Clerk's No. 44-1).  The first

challenged provision defines "political committee" as follows:

---

[9]      IRTL does not allege that this provision is facially invalid; rather, it alleges that it
is unconstitutional as applied to IRTL and other similar groups.  *See* Compl. ¶ 28.

a.     A committee, but not a candidate's committee, that accepts contributions in excess of seven hundred fifty dollars in the aggregate, makes expenditures in excess of seven hundred fifty dollars in the aggregate, or incurs indebtedness in excess of seven hundred fifty dollars in the aggregate in any one calendar year to expressly advocate the nomination, election, or defeat of a candidate for public office, or to expressly advocate the passage or defeat of a ballot issue.

b.     An association, lodge, society, cooperative, union, fraternity, sorority, educational institution, civic organization, labor organization, religious organization, or professional organization that accepts contributions in excess of seven hundred fifty dollars in the aggregate, makes expenditures in excess of seven hundred fifty dollars in the aggregate, or incurs indebtedness in excess of seven hundred fifty dollars in the aggregate in any one calendar year to expressly advocate the nomination, election, or defeat of a candidate for public office, or to expressly advocate the passage or defeat of a ballot issue.

c.     A person, other than an individual, that accepts contributions in excess of seven hundred fifty dollars in the aggregate, makes expenditures in excess of seven hundred fifty dollars in the aggregate, or incurs indebtedness in excess of seven hundred fifty dollars in the aggregate in any one calendar year to expressly advocate that an individual should or should not seek election to a public office prior to the individual becoming a candidate as defined in subsection 4.

Iowa Code § 68A.102(18).   The term "'[c]ommittee" includes a political committee and a candidate's committee." *Id*. § 68A.102(8).   These definitions apply to Iowa's campaign finance laws "unless the context otherwise requires." *Id*. § 68A.102.

The second challenged provision provides:

A permanent organization temporarily engaging in activity described in section 68A.102, subsection 18, shall organize a political committee and shall keep the funds relating to that political activity segregated from its operating funds.   The political committee shall file reports on the appropriate due dates as required by this section. The reports filed under this subsection shall identify the source of the original funds used for a contribution made to a candidate or a committee organized under this chapter.   When the permanent organization ceases to be involved in the political activity, the permanent organization shall dissolve the political committee.   As used in this subsection, "permanent organization" means an organization that is continuing, stable, and enduring, and was originally organized for purposes other than engaging in election activities.

*Id*. § 68A.402(9).

IRTL's arguments regarding Count One are all premised upon IRTL's assertion that if it makes its intended independent expenditures,[10] it "will be defined by statute as a political committee under Iowa law."[11]  Compl. ¶ 18 (citing Iowa Code § 68A.102(18)); *see also* Pl.'s Br. at 8 ("[I]f IRTL makes independent expenditures aggregating over $750 in a calendar year, it becomes not only an independent expenditure committee but also a committee and a political committee, and is subject to PAC burdens.").  Defendants argue—as they did at the preliminary injunction stage—that this assertion is incorrect.  *See* Defs.' Br. in Supp. of Mot. for Summ. J. (hereinafter "Defs.' Br.") at 7 (Clerk's No. 45-1) (arguing that the challenged provisions "do not impose PAC status on IRTL for making an independent expenditure"); Defs.' Resp. to Pl.'s Mot. for Prelim. Inj. (hereinafter "Defs.' PI Br.") at 5–6 (Clerk's No. 20); Hr'g Tr.[12] 26:5–6 ("If you want to make an independent expenditure, you don't have to be a PAC . . . ."); *id.* at 28:8–16 (arguing that it is "clear from . . . a plain reading of the statute" that IRTL will be an independent expenditure committee, not a political committee").  Therefore, according to Defendants, IRTL

---

[10]    The Iowa Code defines the term "independent expenditure" as:

> One or more expenditures in excess of seven hundred fifty dollars in the aggregate for a communication that expressly advocates the nomination, election, or defeat of a clearly identified candidate or the passage or defeat of a ballot issue that is made without the prior approval or coordination with a candidate, candidate's committee, or a ballot issue committee.

Iowa Code § 68A.404(1).

[11]    As the Court previously noted, "IRTL cannot be a permanent organization unless its activities fall under the definition in § 68A.102(18)."  PI Order at 13 n.7 (citing Iowa Code § 68A.402(9)).

[12]    All citations to "Hr'g Tr." refer to the realtime transcript of the November 15, 2010 preliminary injunction hearing that was provided to the Court by the court reporter.

does not have standing to challenge these provisions. Defs.' Br. at 6.

Defendants base their argument largely on the following statutory provision:

3.       A person, *other than a committee registered under this chapter*, that makes one or more independent expenditures shall file an independent expenditure statement. All statements and reports required by this section shall be filed in an electronic format as prescribed by rule.

a.       Subject to paragraph "b", the person filing the independent expenditure statement shall file reports under sections 68A.402 and 68A.402A. An initial report shall be filed at the same time as the independent expenditure statement. Subsequent reports shall be filed according to the same schedule as the office or election to which the independent expenditure was directed.

(1)       A supplemental report shall be filed on the same dates as in section 68A.402, subsection 2, paragraph "b", if the person making the independent expenditure either raises or expends more than one thousand dollars.

(2)       A report filed as a result of this paragraph "a" shall not require the identification of individual members who pay dues to a labor union, organization, or association, or individual stockholders of a business corporation. A report filed as a result of this paragraph "a" shall not require the disclosure of any donor or other source of funding to the person making the independent expenditure except when the donation or source of funding, or a portion of the donation or source of funding, was provided for the purpose of furthering the independent expenditure.

b.       This section *does not apply to a candidate, candidate's committee, state statutory political committee, county statutory political committee, or a political committee*. This section does not apply to a federal committee or an out-of-state committee that makes an independent expenditure.

Iowa Code § 68A.404(3) (emphasis added). The Board refers to organizations that are required

to file independent expenditure statements under this section as "independent expenditure

committees."[13] *See* Iowa Admin. Code r. 351—4.1(1)(d). For ease of reference, the Court

---

[13]       Notably, "[a]lthough the Board decided to call this new category of entities [i.e. 'persons' regulated under Iowa Code § 68A.404(3)] 'independent expenditure committees,' it did not make them a subset of [the separately-defined category of] 'committees.'" PI Order at 8 (citing Iowa Admin. Code r. 351—4.1(1)).

adopts the Board's definition of "independent expenditure committee" for the purposes of this Order.

As the Court previously observed, "[i]f an organization has not yet 'registered as a committee,' but makes an independent expenditure . . . , it would fall under the plain text of both sections [68A.404(3) and 68A.102(18)]." PI Order at 7. Based on the plain text of § 68A.404, an organization cannot simultaneously be both a political committee and "a person, other than a committee"—i.e., an independent expenditure committee. *See id.* (citing Iowa Code §§ 68A.404(3), (3)(b)). Unfortunately, however, the statute "does not clarify how these two sections should be applied when an organization arguably falls under both definitions." PI Order at 7.

Defendants assert that if an organization falls under the plain text of § 68A.404(3), it will be regulated as an independent expenditure committee, not a political committee—in other words, that the "context . . . requires" that the definition in § 68A.102(8) not apply in the situation described above. *See* Hr'g Tr. 39:1–14 (referring to Iowa Code § 68A.102); *see also* Defs.' Br. at 6–7. This is a plausible reading of the statute and, based on the evidence in the record, it is consistent with how Iowa has, so far, actually interpreted the statute.[14] *See* Iowa Admin. Code r. 351—4.1(1) (providing different rules for independent expenditure committees, permanent organizations, and political committees); *see also* Advisory Op. 2010-03 (Clerk's No. 20-1 at 13) ("[A]n independent expenditure committee will not be subject to the same registration and reporting requirements as a PAC.").

---

[14] Indeed, at the preliminary injunction hearing, IRTL's counsel conceded that "[t]he State in its [advisory opinion] has said that [IRTL] will not be subject to the same types of restrictions that a political committee will be subject to . . . ." Hr'g Tr. 9:1–3.

Nonetheless, IRTL insists that it is being chilled by the mere existence of the challenged statutory definitions. *See* Defs.' Br. at 6–7. The Court is still not convinced that IRTL's dual-coverage interpretation of the statute is reasonable in light of the plain text of Iowa Code §§ 68A.404(3)(b) or that Iowa will interpret its statute in the way IRTL fears; however, this Court is generally without authority to construe or narrow state statutes. *See Boos v. Barry*, 485 U.S. 312, 330 (1988).

This Court does, however, have the authority to certify questions of state law to the Iowa Supreme Court when doing so would effectively save time, energy, and resources, and help to build "a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 390–91 (1974); *see also* L.R. 83 ("When a question of state law may be determinative of a cause pending in this court and it appears there may be no controlling precedent in the decisions of the appellate courts of the state . . . [t]he court may, . . . on its own motion, certify the question to the appropriate state court."). In this case, the question of whether the challenged provisions do, in fact, cover IRTL's intended activities—i.e., whether IRTL would, in fact, be regulated as both a "political committee" and an "independent expenditure committee" if it makes an independent expenditure—is determinative to the issue of whether IRTL has standing to challenge those provisions. *See* L.R. 83. The Court is not aware of any Iowa cases addressing this issue, let alone any "controlling precedent in the decisions of the appellate courts." *See id*. Moreover, the Court believes that certifying this issue of statutory interpretation is the most efficient way to resolve this matter.

Accordingly, the Court certifies the following questions to the Iowa Supreme Court:

1)      If a corporation that has not previously registered as a political committee makes independent expenditures aggregating over $750 in a calendar year, does that

corporation become, by virtue of such expenditures: (1) an "independent expenditure committee," as that term is defined in Iowa Admin. Code r. 351—4.1(1)(d); (2) a "political committee," as that term is defined by Iowa Code § 68A.102(18); or (3) both?

2)     If a corporation that has not previously registered as a political committee and that "was originally organized for purposes other than engaging in election activities" makes independent expenditures aggregating over $750 in a calendar year, does that corporation become, by virtue of such expenditures, a "permanent organization" pursuant to Iowa Code § 68A.402(9)?

B.  *Count Two*

In Count Two, IRTL challenges Iowa Code §§ 68A.402B(3), 68A.404(3), 68A.404(4), Iowa Administrative Code Rule 351—4.9(15), Form Ind-Exp-O, and Board Form DR-3.[15] Compl. ¶ 30.  IRTL argues that these provisions impose "burdensome, PAC-style requirements [that] cannot be constitutionally imposed on groups simply for making independent expenditures."[16]  Pl.'s Br. at 11 (citing *Citizens United*, 130 S. Ct. at 897–99).

1.     *Standard of review.*

_____

[15]     There is some inconsistency in the record as to the precise title of this form.  The form itself, as submitted by IRTL, is titled "DR3 - Dissolution."  *See* Clerk's No. 1-2 at 2. However, the Iowa Administrative Code Rules refer to the "statement of dissolution" as "Form DR-3."  Iowa Admin. Code r. § 351—4.55(1); *see also* Compl. ¶ 3(b) (referring to the challenged form as "Form DR-3").   The Court will refer to this form as "Form DR-3."

[16]     IRTL alleges that these provisions are unconstitutional both "facially and as applied to IRTL and its intended activities."  Compl. ¶ 38.  However, IRTL does not distinguish between its facial and as-applied arguments in its brief.  *See* Pl.'s Br. at 10–15.  IRTL "does not, for example, explain how the [Iowa disclosure scheme] impinges upon its associational freedoms."  *See Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1021–22 (9th Cir. 2010) (citing *Citizens United*, 130 S. Ct. at 914).  Nor does IRTL argue that "by its nature, [IRTL] is unable to comply with the [Iowa disclosure scheme's] requirements."  *See id.* at 1022 (citing *Fed. Election Comm'n v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 255 (1986).  Therefore, it is not clear how IRTL's as-applied challenge differs—if at all—from its facial challenge.

According to IRTL, the challenged provisions are "PAC-style requirements"[17] and "[l]aws that impose the *kind* of burdens imposed on PACs, e.g. registration and termination requirements, are . . . subject to strict scrutiny." Pl.'s Br. at 11 (citing *Citizens United*, 130 S. Ct. at 897–98; *Fed. Election Comm'n v. Mass. Citizens for Life, Inc.* ("*MCFL*"), 479 U.S. 238, 262–63 (1986). However, neither of the cases cited by IRTL squarely support this legal proposition.

In both *Citizens United* and *MCFL*, the Supreme Court considered the constitutionality of federal statutes that prohibited corporations and unions from using their general treasury funds to make certain independent expenditures. *See Citizens United*, 130 S. Ct. at 886; *MCFL*, 479 U.S. at 241. In this case, however, the challenged provisions do not ban any independent expenditures. *See* Iowa Code §§ 68.402B(3), 68A.404(3), 68A.404(4); Iowa Admin. Code r. 351—4.9(15); Form Ind-Exp-O; Form DR-3. They "impose no ceiling on campaign-related activities and do not prevent anyone from speaking." *See Citizens United*, 130 S. Ct. at 914 (quoting *Buckley v. Valeo*, 424 U.S. 1, 64 (1976) and *McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 201 (2003)) (internal quotation marks omitted). They do not substantially burden speech by "impos[ing] an unprecedented penalty on [those] who robustly exercise[] [their] First

_____

[17]       IRTL's conclusion that certain requirements are "PAC-style requirements" appears to be based on highly generalized comparisons between the challenged provisions and the federal PAC requirements at issue in *Citizens United*. *See* Pl.'s Br. at 12. For example, IRTL reasons that the federal PACs discussed in *Citizens United* were required to "register" and, therefore, any "registration" requirement is an unconstitutional, "onerous" burden. *See id.* at 12–13. Even if the Court were persuaded by this highly questionable logic, the Eighth Circuit has already rejected the type of categorical approach IRTL advances here. *See Minn. Citizens Concerned for Life, Inc. v. Swanson*, 640 F.3d 304, 313 (8th Cir. 2011) (noting that the Supreme Court "based its holding [in *Citizens United*] on the cumulative effects of the federal regulations and not the existence of any specific regulation" (citing 130 S. Ct. at 897)).

Amendment rights." *See Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, Nos. 10-238, 10-239, 2011 WL 2518813, at *10–11 (June 27, 2011) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 739 (2008)) (applying strict scrutiny to a state matching-funds requirement that substantially burdened certain candidate-related speech).  Therefore, although they "may burden the ability to speak," they are only subject to exacting scrutiny—not strict scrutiny.  *See  Citizens United*, 130 S. Ct. at 914; *see also Minn. Citizens Concerned for Life, Inc. v. Swanson*, 640 F.3d 304, 315 (8th Cir. 2011) ("Unlike outright bans on corporate independent expenditures, which are . . . subjected to strict scrutiny, courts generally view corporate disclosure laws as beneficial and subject such regulations to the less-rigorous exacting-scrutiny standard."); *Doe v. Reed*, 130 S. Ct. 2811, 2818 (2010) (applying exacting scrutiny where the challenged provision was "not a prohibition on speech . . . ").

2.      *Analysis of the challenged provisions.*

"[U]nder exacting scrutiny, the government must only show a substantial relation between the disclosure requirement and the government's important interest in providing information to the electorate."  *Swanson*, 640 F.3d at 315 (quoting *Citizens United*, 130 S. Ct. at 914 (internal quotation marks omitted)).  The challenged provisions require certain persons[18] who

---

[18]      Specifically, these requirements apply to "person[s] other than a committee registered under this chapter that make[] one or more independent expenditures."  Iowa Code § 68A.404(3).  These requirements expressly do "not apply to a candidate, candidate's committee, state statutory political committee, county statutory political committee, or a political committee."  *Id*. § 68A.404(3)(b); *see also id*. § 68A.102 (defining terms).  They also do "not apply to a federal committee or an out-of-state committee that makes an independent expenditure."  *Id*. § 68A.404(3)(b).

make independent expenditures to:  (1) file Form Ind-Exp-O[19] "within forty-eight hours of the

making of an independent expenditure in excess of seven hundred fifty dollars in the aggregate,

or within forty-eight hours of disseminating the communication to its intended audience,

whichever is earlier" (Iowa Code § 68A.404(4)(a)); (2) file subsequent reports up to four times a

year[20] (*id.* § 68A.404(3)(a); *see also id.* §§ 68A.402(2), 68A.402A); (3) file a supplemental report

if, during an election year, "the person making the independent expenditure either raises or

expends more than one thousand dollars" (*id.* § 68A.404(3)(a)(1); *see also id.*§ 68A.402(2)(b));

and (4) file a termination report with the Board within thirty days of determining that it will "no

longer make an independent expenditure" (*id.* § 68A.402B).

Defendants argue that the challenged provisions are substantially related to the

government's "compelling interest in ensuring that shareholders and citizens are provided with

the information needed to hold corporate and elected officials accountable for their positions and

supporters" and that such disclosures are made in a timely manner.[21]  Defs.' Br. at 9 (internal

quotation marks omitted); *see also id.* at 11–12.  Therefore, according to Defendants, the

---

[19]    Although the statute requires both an "independent expenditure statement" and an
"initial report," *see* Iowa Code § 68A.404(3)(a), the Board allows independent expenditure
committees to file a single form, Form Ind-Exp-O, to satisfy both requirements.  *See* Smithson
Aff. ¶ 8 (Clerk's No. 20-1) (citing Iowa Admin. Code r. 351—4.27(2)).

[20]    Specifically, they must be "filed according to the same schedule as the office or
election to which the independent expenditure was directed."  Iowa Code § 68A.404(3)(a).
Candidates are required to file reports four times a year during election years and once in non-
election years.  *See id.* § 68A.402(2).

[21]    Defendants also assert that Iowa "has a compelling interest in corporate
governance, and ensuring that corporate entities that are created under state law operate in a
manner that honors the privileges given to the corporate form."  Defs.' Br. at 9 (internal
quotation marks omitted).

challenged provisions survive exacting scrutiny.  *See id.* at 13.  In response, IRTL does not argue

that the Iowa disclosure scheme fails exacting scrutiny.[22]  *See* Pl.'s Resp. to Defs.' Mot. for

Summ. J. (hereinafter "Pl.'s Resp. Br.") at 6–9 (Clerk's No. 48); *see also* Pl.'s Br. at 10–15.

Rather, IRTL insists that the challenged provisions are subject to strict scrutiny and argues that

they are unconstitutional because they are not "narrowly tailored to a compelling [government]

interest."[23]  *See* Pl.'s Resp. Br. at 9.

In its recent opinion in *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, the

Eighth Circuit considered a constitutional challenge to Minnesota's independent-expenditure

disclosure scheme.  640 F.3d at 307.   The disclosure scheme at issue in *Swanson* "created two

means by which corporations could make" independent expenditures.  *Id.* at 308.  Under the

Minnesota scheme, a corporation "wishing to make such expenditures [could] either form and

register an independent expenditure political fund if the expenditure is in excess of $100 or

---

[22]    IRTL does suggest in a footnote that one of the requirements in the challenged provisions, the 48-hour deadline for filing Form Ind-Exp-O, would fail exacting scrutiny.  *See* Pl.'s Br. at 14 n.21.  The Court does not agree, however, for the reasons discussed below.

[23]    The essence of IRTL's argument is that Iowa could have chosen a less-burdensome disclosure scheme and that, therefore, the one it chose is unconstitutional.  *See* Pl.'s Resp. Br. at 8–9; *see also* Pl.'s Br. at 11 ("In analyzing the constitutionality of Iowa's scheme, it is important to compare it to the less-restrictive, independent-expenditure federal scheme . . . ." (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006)); *id.* at 14 (arguing that the challenged provisions are unconstitutional because "there is no governmental interest that cannot be satisfied under the less-restrictive federal [disclosure] scheme").  However, as the Court previously explained, the least-restrictive-means test has no applicability in this case because the challenged provisions are subject to exacting—not strict—scrutiny.  *See* PI Order at 24–25; *see also* Pl.'s Br. at 11 n.16 (conceding that the least restrictive means test only applies if strict scrutiny applies).  "Therefore, even if less-burdensome alternatives do exist, that fact does not, contrary to IRTL's contentions, render these provisions unconstitutional."  PI Order at 24.  The case cited by IRTL does not compel a different conclusion because in *Gonzales*, unlike here, the statute at issue expressly incorporated a "least restrictive means" test.  *See* 546 U.S. at 423.

-17-

contribute to an existing independent expenditure political committee or political fund." *Id.* at

308–09 (quoting Minn. Stat. § 10A.12, subdiv. 1a and citing Minn. Stat. § 211B.15, subdiv. 3

(internal quotation marks omitted)).  A corporation that chose to create a fund was "subject to a

series of statutory requirements" which included appointing a treasurer, segregating its funds

from other corporate funds, filing "periodic, detailed reports" up to five times a year, and filing a

termination report when the "political fund wants to dissolve." *See id.* at 309.

The Eighth Circuit concluded that this scheme was "adequately tailored" under exacting

scrutiny because "Minnesota's provisions collectively impose no materially greater burden on

corporations than the disclosure laws at issue in *Citizens United*."[24]  *Id.* at 316.  The Eighth

Circuit found that "[e]ven Minnesota's specific requirements for a treasurer, periodic reporting,

and a separate fund are sufficiently tailored because, within the context of the entire Minnesota

regulatory scheme, each requirement greatly enhances the transparency of corporate expenditures

while imposing only reasonable burdens." *Id.*

In this case, IRTL argues that "Iowa law is like the burdensome, PAC-style disclosure

*Citizens* [*United*] found 'burdensome' and 'onerous,'" and suggests that the challenged

provisions are substantially more burdensome than the disclosure laws that were upheld in

*Citizens United*.[25]  *See* Pl.'s Resp. Br. at 7.  Specifically, IRTL objects to Iowa's requirements

---

[24]     The Court notes that, although the Eighth Circuit's opinion in *Swanson* indicates
that the fact that the challenged scheme "imposed no materially greater burden" was *sufficient* to
show that the scheme was sufficiently tailored, the Eighth Circuit never stated that all disclosure
schemes must pass a "no materially greater burden" test in order to be "substantially related to
[the state's] important interest in providing information."  *See Swanson*, 640 F.3d at 316.

[25]     IRTL also argues that the only "constitutionally justifiable" disclosure scheme for
organizations that make independent expenditures is the precise scheme that was upheld in
*Citizens United*, which, according to IRTL, consists of "on-ad attribution and one-time reports."

that groups making independent expenditures:  (1) file Form Ind-Exp-O "within forty-eight

hours"; (2) remain registered as "independent expenditure committees" until they file a

termination report;[26] and (3) file periodic reports.  *See id*. at 8–9.   Although IRTL attacks the

various requirements of the challenged provisions separately, the Court "must evaluate [Iowa's]

provisions on independent expenditures as a whole."  *See Swanson*, 640 F.3d at 314.

Considered as a whole, the challenged provisions "collectively impose no materially

greater burden on corporations than the disclosure laws at issue in *Citizens United*."[27]  *See id*.

The information required by Form Ind-Exp-O "about the corporation's contributions and

expenditures is similar to the disclosure requirements upheld in *Citizens United*."  *See id*.;

*compare id*. at 313–14 (explaining those requirements and citing 2 U.S.C. § 434(f)) *with* Pl.'s

App. at 27 (showing Form Ind-Exp-O).  Even the specific requirement challenged by IRTL—i.e.,

_____

*See* Pl.'s Resp. Br. at 7.  The Court does not agree and notes that IRTL's counsel made the same
argument to the Eighth Circuit in *Swanson*.  *Compare id. with* Reply Br. of Pls.-Appellants at 3,
*Minn. Citizens Concerned for Life, Inc. v. Swanson*, 640 F.3d 304 (8th Cir. 2011) (No. 10-3126),
2010 WL 5558208.  Nonetheless, the Eighth Circuit upheld the Minnesota disclosure scheme,
which required more than on-ad attribution and one-time reports.  *See Swanson*, 640 F.3d at 316.
Therefore, the Court cannot agree that the universe of justifiable disclosure requirements consists
only of "on-ad attribution and one-time reports."

[26]     According to IRTL, Iowa Code § 68A.402B(3) "effectively requires [an
independent expenditure committee] to cease to exist" when it files its termination report.  Pl.'s
Resp. Br. at 9.  IRTL also asserts that "the state Board must approve the dissolution before the
independent expenditure committee is relieved of its ongoing status and obligations."  *Id*.
However, as the Court has previously explained, neither of these factual assertions is
correct—i.e., neither of these requirements apply to independent expenditure committees.  *See* PI
Order at 31–34 (addressing the substantially identical arguments made by IRTL at the
preliminary injunction stage).

[27]     Indeed, the challenged provisions impose no materially greater burden than the
disclosure requirements the Eighth Circuit recently upheld in *Swanson*.  *See* 640 F.3d. at 314
(upholding a disclosure scheme that required, *inter alia*, periodic reporting, registration, and
termination reports)

the 48-hour deadline for filing Form Ind-Exp-O and the periodic reporting requirement—are

sufficiently tailored because, when viewed in the context of the entire Iowa regulatory scheme,

these requirements "greatly enhance[] the transparency of corporate expenditures while imposing

only [a] reasonable burden."[28]  *See Swanson*, 640 F.3d at 316; *see also* PI Order at 27–31

(discussing in detail the substantially identical arguments IRTL made at the preliminary

injunction stage).  Therefore, the Court concludes that the challenged provisions are adequately

tailored to survive exacting scrutiny.[29]  Accordingly, Defendants are entitled to judgment as a

---

[28]      IRTL's arguments to the contrary do not compel a different conclusion.  IRTL
argues that Iowa does not need such a short deadline—essentially, though not expressly, asserting
that the 48-hour reporting deadline is not the least restrictive means for advancing Iowa's
informational interests.  *See* Pl.'s Br. at 13 n.18, 14 n.21.  However, because this provision does
not ban speech, such narrow tailoring is not required.  *See Swanson*, 640 F.3d at 315; *N.C. Right
to Life Comm. Fund for Indep. Political Expenditures v. Leake*, 524 F.3d 427, 439 (4th Cir.
2008).  IRTL's arguments also ignore the fact that other courts, both before and after *Citizens
United*, have upheld similar—and even shorter—reporting deadlines for independent
expenditures.  *SpeechNow.org v. Fed. Election Comm'n*, 599 F.3d 686, 697 (D.C. Cir. 2010)
(upholding a federal requirement that "those who make independent expenditures but are not
organized as political committees" report "within 24 hours expenditures of $1000 or more made
in the twenty days before an election, and report[] within 48 hours any expenditures or contracts
for expenditures of $10,000 or more made at any other time" (internal citations omitted); *Leake*,
524 F.3d at 434–34, 439 (upholding a state requirement that entities making certain independent
expenditures file a report "within twenty four hours of making total expenditures in excess of
$5,000" and noting that "in *McConnell* the Supreme Court upheld a nearly identical provision
that required a report to be filed within twenty-four hours of the date on which expenditures
exceeded a trigger amount" (citing 540 U.S. at 195–96)).

[29]      IRTL's argument regarding its interpretation of *Buckley*'s "major purpose test" do
not compel a different conclusion.  IRTL argues that "[t]he challenged provisions . . . violate
*Buckley*'s mandate that burdensome PAC-style regulations may be imposed only on
'organizations that are under the control of a candidate or the major purpose of which is the
nomination or election of a candidate.'"  Pl.'s Br. at 15 (quoting *Buckley*, 424 U.S. at 79); *see
also* Pl.'s Resp. Br. at 6–7.  Therefore, according to IRTL, Iowa law must differentiate between
groups "making over $750 in independent expenditures *whose major purpose is making
independent expenditures* expressly advocating the nomination or election of candidates (e.g.,
independent expenditures constitute more than 50% of annual disbursements) [and those] whose
major purpose is something else (e.g., independent expenditures constitute less than 50% of

matter of law on Count Two of IRTL's complaint.

## C. *Count Three*

In Count Three, IRTL challenges Iowa Code § 68A.503, which bans direct corporate campaign contributions.[30]  Compl. ¶ 40.  IRTL argues that this ban is unconstitutional in light of

---

annual disbursements)."  Pl.'s Resp. Br. at 6–7; *see also* Pl.'s Br. at 15 (making the same argument about whether an organization may be deemed to be a "political committee"); *see also id*. at 9 n.10 (arguing that a group's major purpose must be determined "by reviewing its organic documents . . . or by looking at how it spends a majority of its disbursements." (citing *MCFL*, 479 U.S. at 252 n.6, 262)).  The Court does not agree.  Nothing in *Buckley* or any of the other Supreme Court cases cited by IRTL "mandates" the conclusion IRTL urges here—namely, that a state may not impose "PAC-style burdens" on an organization unless that organization has the major purpose of making independent expenditures.  *See* PI Order at 25–26 (rejecting IRTL's argument that this test is mandated by *Buckley*).  As the Ninth Circuit recently explained:

> The *Buckley* Court's statement that a narrow definition of political committee "can be assumed to fall within the core area sought to be addressed by Congress" is most reasonably read to mean exactly what it says—that it was clear and uncontroversial that the burdens imposed by the disclosure requirements in that case were "by definition" substantially related to the government's interests when applied to organizations whose single major purpose was political advocacy.  Nothing in *Buckley* suggests, however, that disclosure requirements are constitutional only when so applied.

*Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1009 (9th Cir. 2010).  The Court also rejects IRTL's argument that *MCFL* "reaffirmed the major-purpose requirement."  Pl.'s Br. at 3 (citing 479 U.S. at 262).  "*MCFL* did no such thing."  *Brumsickle*, 624 F.3d at 1010 (rejecting the same argument and observing that "in *MCFL*, political advocacy was not 'a' major purpose—much less 'the' major purpose—of MCFL, which the Court noted only 'occasionally engages in activities on behalf of political candidates,' and whose 'central organizational purpose is issue advocacy.'" (quoting 497 U.S. at 253 n.6)).

Moreover, even if IRTL were correct that the challenged provisions must be limited to organizations with a certain "major purpose," the Court would not adopt the precise test urged by IRTL.  *Massachusetts Citizens* "did not hold, or even suggest" that disbursements and organic documents are the only ways to determine an organization's "major purpose."  *See Real Truth About Obama, Inc. v. Fed. Election Comm'n*, No. 3:08-cv-483, 2011 WL 2457730, at * 14 (E.D. Va. June 16, 2011).

[30]     This statute provides, in relevant parts, that:

1. Except as provided in subsections 3, 4, 5, and 6, an insurance company, savings

*Citizens United*.[31]  *See* Pl.'s Br. at 15–16.  Specifically, IRTL argues that Iowa's direct-

contribution ban violates its rights under the First and Fourteenth Amendments.  *Id*. at 16–17, 26.

As an initial matter, IRTL argues that § 68A.503 is subject to strict scrutiny.[32]  Pl.'s Br. at

---

and loan association, bank, credit union, or corporation shall not make a monetary or in-kind contribution to a candidate or committee except for a ballot issue committee.

2. Except as provided in subsection 3, a candidate or committee, except for a ballot issue committee, shall not receive a monetary or in-kind contribution from an insurance company, savings and loan association, bank, credit union, or corporation.

3. An insurance company, savings and loan association, bank, credit union, or corporation may use money, property, labor, or any other thing of value of the entity for the purposes of soliciting its stockholders, administrative officers, professional employees, and members for contributions to a political committee sponsored by that entity and for financing the administration of a political committee sponsored by that entity.  The entity's employees to whom the foregoing authority does not extend may voluntarily contribute to such a political committee but shall not be solicited for contributions.  A candidate or committee may solicit, request, and receive money, property, labor, and any other thing of value from a political committee sponsored by an insurance company, savings and loan association, bank, credit union, or corporation as permitted by this subsection.

[ . . . ]

7. For purposes of this section "corporation" means a for-profit or nonprofit corporation organized pursuant to the laws of this state, the United States, or any other state, territory, or foreign country.

Iowa Code § 68A.503.

[31]      IRTL alleges that this provision is unconstitutional on its face and "as applied to IRTL and its intended activities."  Compl. ¶ 33.

[32]      In support of this assertion, IRTL makes the same three general arguments that the Court rejected at the preliminary injunction stage.  *Compare* Pl.'s Br. at 18–24 *with* PI Order at 35.  Specifically,

IRTL concedes that "since *Buckley*, courts have subjected contribution limits to less demanding review."  However, IRTL argues strict scrutiny should apply in this case

18. The Court does not agree. The Eighth Circuit has recently confirmed that, even in the wake of *Citizens United*, bans on corporate contributions are still subject to only "closely drawn"—not strict—scrutiny.[33] *See Swanson*, 640 F.3d at 318; *see also generally Bennett*, 2011 WL 2518813, at *9 (describing a law that imposed contribution limits as a "stricture[] on campaign-related speech" that was "less onerous" than laws that regulate independent expenditures and, therefore, subject to a "lower level of scrutiny"). Therefore, "a restriction on direct contributions will pass constitutional muster if the limit is 'closely drawn to match a sufficiently important interest.'"[34] 640 F.3d at 318 (quoting *Fed. Election Comm'n v. Beaumont*, 539 U.S. 146, 162 (2003)).

Applying this standard in *Swanson*, the Eighth Circuit concluded that Minnesota's ban on corporate contributions was not constitutionally deficient. *Id.* at 319. In doing so, the Eighth Circuit indicated that both "avoiding *quid pro quo* corruption and the circumvention of its other

---

        because: (1) Iowa bans contributions, instead of limiting them; (2) the ban "impermissibly singles out certain speakers, e.g. corporations and banks"; and (3) the ban is "a content-based regulation."

PI Order at 35 (internal citation omitted)). The Court finds IRTL's arguments to be no more persuasive now than they were at the preliminary injunction stage. *See id*. at 35–37.

    [33]     The Court also notes that, like the ban at issue in *Swanson*, Iowa's "ban on direct corporate contributions serves a purpose unrelated to the expressive content of the contributions, namely the prevention of corruption." *See* 640 F.3d at 319 n.8; *see also* Defs.' Br. at 14. And § 68A.503 does not, by its terms "distinguish favored speech from disfavored speech on the basis of the ideas or views expressed." *See Bartnicki v. Vopper*, 532 U.S. 514, 526 (2001). Therefore, it is a content-neutral regulation. *See id.*; *see also Swanson*, 640 F.3d at 319 n.8 (rejecting the argument that Minnesota's direct contribution ban was a content-based restriction on speech).

    [34]     Notably, the arguments advanced by IRTL regarding Iowa's corporate contribution ban appear to be substantially identical to those advanced by IRTL's counsel in *Swanson*. *Compare* Pl.'s Br. at 15–27 *with* Opening Br. of Pls.-Appellants at 40–56, *Minn. Citizens Concerned for Life, Inc. v. Swanson*, 640 F.3d 304 (8th Cir. 2011) (No. 10-3126), 2010 WL 4852521.

limits on direct contributions" were sufficiently important governmental interests.  *Id*.  The

Eighth Circuit also stated that "Minnesota appears to have properly tailored its restriction

because, pursuant to *Beaumont*, Minnesota can generally ban all direct corporate contributions."

*Id*.

     In this case, Iowa also has a sufficiently important interest in the prevention of

corruption.[35]  *See id*.; *see also Beaumont*, 539 U.S. at 154 (noting that the ban upheld in that case

"was and is intended to prevent corruption or the appearance of corruption" (internal quotation

marks omitted)).   And, because "pursuant to *Beaumont*, [Iowa] can generally ban all direct

corporate contributions," § 68A.503 is sufficiently "closely drawn" to match this anti-corruption

interest.[36]  *See Swanson*, 640 F.3d at 319.

     Therefore, the Court concludes that § 68A.503 "pass[es] constitutional muster."[37]  *See id*.

---

[35]    IRTL argues that "Iowa does not have contributions limits," and, "[t]herefore, the necessary premise for any anti-circumvention interest has not been asserted."  Pl.'s Br. at 25 n.30.  Even if this is true, IRTL does not seriously contest that Iowa has a "sufficiently important interest" in preventing corruption or the appearance of corruption.  *See id*. at 24–26 (discussing only the inapposite "compelling interest" test and whether § 68A.503 is "narrowly tailored" to address such an interest).  And nothing in either *Beaumont* or *Swanson* suggests that the government's interest in preventing corruption is not sufficient to support a ban on direct corporate contributions.  *See Beaumont*, 539 U.S. at 154–59; *Swanson*, 640 F.3d at 318–19.

[36]    To the extent that any of IRTL's other arguments survive *Swanson*, the Court rejects them for the same reasons it rejected them at the preliminary injunction stage.  *See* PI Order at 34–42.

[37]    IRTL's recently-filed "Notice of Additional Authority" does not compel a different conclusion.  *See* Clerk's No. 52 (citing and attaching *United States v. Danielczyk*, No. 1:11-cr-85, 2011 WL 2161794 (E.D. Va. May 26, 2011) ("*Danielczyk I*"); and *United States v. Danielczyk*, No. 1:11-cr-85, 2011 WL 2268063 (E.D. Va. June 7, 2011) ("*Danielczyk II*").  In *Danielczyk*, the court concluded that the federal ban on direct corporate campaign contributions was unconstitutional as an "inescapable" logical consequence of *Citizens United*.  *Danielczyk I*, 2011 WL 2161794, at *19.  However, as quickly noted by numerous commentators, the court failed to discuss *Beaumont* in reaching this conclusion and, a few days dater, the court requested

Accordingly, Defendants are entitled to judgment as a matter of law on Count Three of IRTL's

complaint.

### D.  *Count Four*

In Count Four, IRTL challenges Iowa Code §§ 68A.404(2)(a)–(b), 68A.404(5)(g), and

Form Ind-Exp-O.  Compl. ¶ 45.  According to IRTL, these provisions "unconstitutionally

forbid[] corporations, but not other groups or associations, from making independent

expenditures unless the board of directors expressly authorizes the independent expenditures, in

---

additional briefing on the issue of whether it should reconsider its ruling in light of *Beaumont*.
*See Danielczyk II*, 2011 WL 2268063, at *1.  On reconsideration, the court held that the ban was
"unconstitutional as applied to the circumstances *of this case*."  *Id*. (emphasis in original).  The
court reasoned that because *Beaumont*'s express holding referred to "nonprofit advocacy
corporations," *Beaumont* was not controlling authority in cases, such as *Danielczyk*, that involve
other types of corporations.  *Id*. at *5.  This conclusion is, as the *Danielczyk* court noted, contrary
to the conclusion reached by the Eighth Circuit in *Swanson*.  *See id*. at *2.

Even if the Court were free to follow *Danielczyk* instead of *Swanson*—which, of course,
it is not—the Court would still not find *Danielczyk* to be persuasive authority.  This Court has
already rejected the argument that *Beaumont* was implicitly overruled by *Citizens United*, see PI
Order at 39 n.20, and nothing in *Danielczyk* persuades the Court that it was incorrect in so doing.
Additionally, the conclusion that *Danielczyk* found to be logically "inescapable," *see* 2011 WL
2268063, at *2, ignores the longstanding distinction that the Supreme Court has drawn between
contributions and expenditures.  *See Citizens United*, 130 S. Ct. at 921 (recognizing "the careful
line that *Buckley* drew to distinguish limits on contributions to candidates from limits on
independent expenditures"); *see also Thalheimer v. City of San Diego*, Nos. 10-55322, 10-55324,
10-55434, 2011 WL 2400779, at *1 (9th Cir. June 9, 2011) (noting that "*Buckley*'s
expenditure-contribution distinction continues to frame the constitutional analysis of campaign
finance regulations").  The Court also agrees with a leading election law expert's characterization
of the argument accepted by the *Danielczyk* court—namely, that *Beaumont* applies only to
nonprofit advocacy corporations—as "very weak."  *See* Rick Hasen, *Breaking News: Judge in
Va. Contributions Case Reaffirms Opinion Striking Down Federal Campaign Contribution
Limits Law (Danielczyk)*, ELECTION LAW BLOG (June 7, 2011), www.electionlawblog.org ("In
*Beaumont*, the Court held that *even* such ideological . . . corporations could constitutionally be
barred from making direct contributions to candidates. . . .  If such non-profit corporations could
constitutionally be barred from making contributions to candidates, *a fortiori* for-profit
corporations should be barred as well.").  Moreover, *Danielczyk* expressly limited its holding to
cases *not* involving nonprofit advocacy corporations.  *See Danielczyk II*, 2011 WL 2268063, at
*1, 6–7.  Therefore, by its own terms, *Danielczyk* has no applicability to the instant case.

advance and within the same calendar year that the independent expenditures are to be made."[38]

Pl.'s Br. at 28.  Specifically, IRTL argues that these provisions violate its rights under the First

and Fourteenth Amendments.  *Id*. at 28, 34.  The Court will consider each of these arguments in

turn.

      1.    *First Amendment.*

      Defendants argue, *inter alia*, that IRTL does not have standing to challenge these

provisions under the First Amendment.  Defs.' Br. at 17.  "Article III of the Constitution limits

federal jurisdiction to cases and controversies, and the 'core component of standing is an

essential and unchanging part of the case-or-controversy requirement.'" *Advantage Media, L.L.C.*

*v. City of Eden Prairie*, 456 F.3d 793, 799 (8th Cir. 2006) (quoting *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560 (1992)).

> In order to prove standing, a plaintiff must demonstrate: (1) an actual injury that is
> concrete and particularized and not conjectural or hypothetical; (2) a causal
> connection between the injury and the defendant's conduct; and (3) a likelihood, and
> not a mere speculative possibility, that the plaintiff's injury will be redressed by a
> favorable decision.

*Nat'l Right to Life Political Action Comm. v. Connor*, 323 F.3d 684, 689 (8th Cir. 2003) (citing

*Lujan*, 504 U.S. at 560–61).  "[S]tanding cannot be inferred argumentatively from averments in

the pleadings, but rather must affirmatively appear in the record." *FW/PBS, Inc. v. City of*

*Dallas*, 493 U.S. 215, 231 (1990) (internal citation marks and quotation omitted), *overruled on*

*other grounds by City of Littleton v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004).  "In response to

a summary judgment motion, however, the plaintiff can no longer rest on such 'mere

---

[38]    IRTL alleges that these provisions are unconstitutional both "facially and as applied to IRTL and its intended activities."  Compl. ¶ 53.

allegations,' but must 'set forth' by affidavit or other evidence 'specific facts' . . . ." *Lujan*, 504

U.S. at 561.

IRTL argues that it has standing because it "is chilled by the prior-board-approval

requirement."[39]  Pl.'s Br. at 28.  It is true that, in the First Amendment context, a "chilling effect

alone may constitute injury." *Zanders v. Swanson*, 573 F.3d 591, 593 (quoting *St. Paul Area*

*Chamber of Commerce v. Gaertner*, 439 F.3d 481, 487 (8th Cir. 2006)).  "Yet, the 'chilling'

effect of exercising a First Amendment right must be objectively reasonable." *Id*. at 594 (citing

*Republican Party of Minn. v. Klobuchar*, 381 F.3d 785, 792 (8th Cir. 2004)).  Therefore, in order

to establish that it has suffered an Article III injury, IRTL must demonstrate that "it must either

make significant changes to its operations to obey the regulation, or risk a criminal enforcement

action by disobeying the regulation." *Minn. Citizens Concerned for Life v. Fed. Election*

*Comm'n*, 113 F.3d 129, 131 (8th Cir. 1997); *see also Zanders*, 573 F.3d at 594.

In this case, IRTL has not alleged or asserted that it will have to make any changes at

all—let alone *significant* changes—in order to obey the challenged provisions.  *See* Compl.

¶¶ 44–53.  Indeed, IRTL has not even asserted that it has (or will be) "forced to modify their

---

[39]     IRTL also argues that it has standing to challenge these provisions because they "burden[] IRTL's ability to select the most effective means of advancing its cause, and dictate[], without constitutional justification, the inner workings and decision-making process of a citizen group engaged in core political speech." Pl.'s Br. at 29.  However, IRTL does not explain precisely how the challenged regulations will "burden[] IRTL's ability to select the most effective means of advancing its cause." *See id*.  It is true that "[t]he First Amendment protects [a speaker's] right 'not only to advocate [their] cause but also *to select* what they believe to be the most effective means for so doing.'" *Id*. at 30 (quoting *Meyer v. Grant*, 486 U.S. 414, 424 (1988) (emphasis added).  However, IRTL does not argue, let alone demonstrate, that the challenged provisions bar IRTL from selecting—or using—any particular "avenue[] of communication." *See Meyer*, 486 U.S. at 424 ; *see also Nixon v. Shrink Mo. Gov't PAC*, 538 U.S. 377, 398 n.* (2000) (Stevens, J., concurring) (characterizing *Meyer* as a case where "the prohibition entirely foreclose[d] a channel of communication").

speech and behavior to comply with" the challenged provisions.[40]  *See Gaertner*, 439 F.3d at 487

(concluding that plaintiffs had standing to bring a pre-enforcement constitutional challenge

where, *inter alia*, "they assert[ed] that they have been forced to modify their speech and behavior

to comply with" the challenged statutes).  Instead, IRTL merely avers that it "is chilled by the

prior-board-approval requirement."  Pl.'s Br. at 28.  This mere "allegation[] of a subjective chill"

is not sufficient to meet IRTL's burden.  *See Eckles v. City of Corydon*, 31 F.3d 762, 767 (8th

Cir. 2003) (stating that, in order to establish standing, a plaintiff  "must present more than

allegations of a subjective chill" (quoting *Bigelow v. Virginia*, 421 U.S. 809, 816–17 (1975)

(internal quotation marks omitted)).  Therefore, the Court concludes that IRTL has not met its

burden to show that it has standing to bring a First Amendment challenge against these

provisions.

     2.    *Fourteenth Amendment.*

    IRTL argues that the challenged provisions violate the Fourteenth Amendment because

---

[40]    IRTL has not even alleged that it, in fact, wishes to make independent
expenditures without the approval of a majority of its board members. *Cf. Ark. Right to Life
State Political Action Comm. v. Butler*, 146 F.3d 558, 560 (8th Cir. 1998) (concluding that the
plaintiffs had standing where they alleged that they "would like to" engage in the activity
proscribed in the challenged statute).  There is also evidence in the record indicating that IRTL
did not make the expenditure described in the Complaint because of "the day-to-day stuff, being
in a very small office and not seeing things through"—not because of a chill. *Id*. at 40 (Bowen
Dep. Tr. 28:3–5).  There is also unrebutted evidence in the record indicating that IRTL's board
did, in fact, approve the independent expenditure described in the Complaint. *See* Defs.' App. at
39 (Bowen Dep. Tr. 23:10–17).  Of course, as IRTL points out, the mere fact that IRTL was not
chilled in 2010 does not mean it could not be chilled in future elections.  However, while IRTL
complains that the challenged provision burdens its "inner workings and decision-making
process," *see* Pl.'s Br. at 29, IRTL has not submitted any *evidence* about its "inner workings" or
"decision-making process"—let alone evidence that indicates that IRTL would have to make any
changes at all in order to comply with the challenged provisions.

they target corporations for negative treatment.[41]  *See* Pl.'s Br. at 34.  The main provision

challenged by IRTL states:

> a.     An entity, other than an individual or individuals, shall not make an
> independent expenditure or disburse funds from its treasury to pay for, in whole or
> in part, an independent expenditure made by another person without the authorization
> of a majority of the entity's board of directors, executive council, or similar
> organizational leadership body of the use of treasury funds for an independent
> expenditure involving a candidate or ballot issue committee.  Such authorization
> must occur in the same calendar year in which the independent expenditure is
> incurred.
>
> b.     Such authorization shall expressly provide whether the board of directors,
> executive council, or similar organizational leadership body authorizes one or more
> independent expenditures that expressly advocate the nomination or election of a
> candidate or passage of a ballot issue or authorizes one or more independent
> expenditures that expressly advocate the defeat of a candidate or ballot issue.

Iowa Code § 68.404(2).  Contrary to IRTL's assertion, this provision does not discriminate

between corporations and "other groups or associations."  *Compare id*. *with* Pl.'s Br. at 28.

Nonetheless, IRTL insists that this provision actually targets corporations because, among

other things, two of the other challenged provisions—namely, Iowa Code § 68A.404(5)(g) and

Form Ind-Exp-O—refer only to "corporations."  *See* Pl.'s Br. at 31–32.  Section § 68A.404(5)(g)

requires:

> A certification by an officer of the corporation that the board of directors, executive
> council, or similar organizational leadership body expressly authorized the
> independent expenditure or use of treasury funds for the independent expenditure by
> resolution or other affirmative action within the calendar year when the independent
> expenditure was incurred.

Form Ind-Exp-O includes a "Statement of Certification" which requires the person submitting

---

[41]     Defendants do not argue that IRTL lacks standing to bring this claim.  *See* Defs.'
Br. at 17.  However, to the extent that IRTL's Fourteenth Amendment claim duplicates its First
Amendment claim, the Court finds that IRTL does not have standing to assert it.  *See* PI Order at
22.

the form to affirm that "[i]f [the] expenditure was made by a corporation[, ] the board of directors, executive council, or similar organizational leadership body expressly authorized the expenditure by resolution or other affirmative action this year."  *See* Pl.'s App. at 27.

Even if this requirement only applies to corporations, IRTL must still show that it is "similarly situated to those who allegedly receive favorable treatment."  *Arnold v. City of Columbia*, 197 F.3d 1217, 1220 (8th Cir. 1999).  In its brief, IRTL asserts that "corporations and other organized associations are similarly situated."  Pl.'s Br. at 27.  However, IRTL does not cite a single piece of evidence in support of this statement, nor does it identify any relevant similarities between corporations and these other associations.[42]  *See id.*  Indeed, IRTL's "Statement of Undisputed Material Facts" does not discuss this issue at all.  *See* Clerk's No. 44-2.  IRTL's bare, conclusory statement is not sufficient to carry its burden on this key element of

---

[42]       "It is *not* the duty of the courts to scour a record at the summary judgment stage." *Sam's Riverside, Inc. v. Intercon Solutions, Inc.*, No. 4:09-cv-20, 2011 WL 2333394, at *13 n.41 (S.D. Iowa June 10, 2011) (quoting *Barth v. Village of Mokena*, No. 03 C 6677, 2006 WL 862673, at *19 (N.D. Ill. Mar. 31, 2006) (internal quotation marks omitted)).  The Court notes, however, that in the Complaint, IRTL avers that corporations are similarly situated to "labor unions and other entities, such as LLCs and general partnerships."  Compl. ¶ 52.  A "verified complaint is the equivalent of an affidavit for the purposes of summary judgment."  *Roberson v. Hayto Police Dep't*, 241 F.3d 992, 994 (8th Cir. 2001).  However, an affidavit used to oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and *show* that the affiant . . . is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4) (emphasis added); *see also* Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  In this case, there is no indication that IRTL's Executive Director, who verified the complaint, is competent to testify as to any factual similarities between corporations and unions or other "organized associations."  Therefore, the Court may not consider the Complaint as evidence on this issue.  *See Aucutt v. Six Flags Over Mid-Am., Inc.*, 85 F.3d 1311, 1317 (8th Cir. 1996).

its equal protection claim.[43]  *See Nolan v. Thompson*, 521 F.3d 983, 990 (8th Cir. 2008)

(affirming dismissal of an equal-protection claim where the record lacked sufficient evidence "to

enable a meaningful comparison between [the plaintiff] and those he claims are similarly

situated").  Because IRTL has failed to point to a single piece of evidence that supports an

essential element of its Fourteenth Amendment claim, Defendants are entitled to judgment as a

matter of law on Count Four of IRTL's complaint.

## IV. CONCLUSION

For the foregoing reasons, "Plaintiff's Motion for Summary Judgment" (Clerk's No. 44)

is DENIED IN PART and "Defendants' Motion for Summary Judgment" (Clerk's No. 45) is

GRANTED IN PART.  Specifically, Defendant's motion is granted and IRTL's motion is denied

as to Counts Two, Three and Four of IRTL's complaint.  The Court reserves ruling on the

parties' cross-motions for summary judgment on Count One of IRTL's complaint until the Iowa

Supreme Court rules on—or declines to answer—the statutory-interpretation questions certified

in Section III(A), *supra*.

---

[43]      IRTL's citation to *Dallman v. Ritter* does not compel a different conclusion.  *See*
Pl.'s Br. at 27 (citing 225 P.3d 610, 634–35 (Colo. 2010)).  *Dallman* is neither binding nor
persuasive authority.  *See Dallman*, 225 P.3d at 634–35 (stating, in a conclusory fashion, that
unions and corporations are "similarly situated" in the context of "preventing corruption in
contracting").  IRTL's citation to *Dallman* is particularly unpersuasive because it conflicts with
the Supreme Court's statement that "crucial differences" between corporations and unions can
justify differing regulations. *See Austin v. Mich. Chamber of Commerce*, 494 U.S. 652, 666
(1990), *overruled in part on other grounds by Citizens United*, 130 S. Ct. at 876; *see also
Swanson*, 640 F.3d at 317 (rejecting the argument "that Minnesota's ban on direct corporate
contributions violates the Equal Protection Clause of the Fourteenth Amendment because no
legitimate governmental interest exists to justify imposing more stringent regulations on
corporations than unions and other similar associations" and noting that "the Supreme Court in
*Citizens United* did not consider this issue, and thus, did not overrule this portion of *Austin*").

-31-

IT IS SO ORDERED.

Dated this ___29th___ day of June, 2011.

ROBERT W. PRATT, Chief Judge
U.S. DISTRICT COURT