# United States Court of Appeals
## For the Eighth Circuit

---

No. 12-1605

---

Iowa Right To Life Committee, Inc.

*Plaintiff - Appellant*

v.

Megan Tooker,* in her official capacity as Iowa Ethics and Campaign Disclosure Board Executive Director; James Albert; John Walsh; Mary Rueter**; Jonathan Roos**; Saima Zafar; Carole Tillotson, in their official capacities as Iowa Ethics and Campaign Disclosure Board Members

*Defendants - Appellees*

---

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

---

Submitted: February 13, 2013
Filed: June 13, 2013

---

Before SMITH, MELLOY, and BENTON, Circuit Judges.

---

*Substituted as a party for W. Charles Smithson, under Federal Rule of Civil Procedure 25(d).

**Substituted as parties for Patricia Harper and Gerald Sullivan, under Federal Rule of Civil Procedure 25(d).

BENTON, Circuit Judge.

Iowa Right To Life Committee, Inc., challenges the constitutionality of several Iowa campaign-finance laws, an administrative rule, and two forms. The district court found IRTL lacked standing to challenge several provisions, but found others constitutional. IRTL appeals, raising facial and as-applied challenges under the First and Fourteenth Amendments. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part, reverses in part, and remands.

I.

IRTL is a non-profit corporation that promotes right-to-life positions. It is not under the control of a candidate. It claims to spend less than half its annual disbursements on "election-related speech" but wants to make independent expenditures and contributions supporting certain candidates.

After *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), Iowa amended its campaign-finance laws. *See* **Campaign Disclosure—Income Tax Checkoff Act**, **Iowa Code § 68A.101 *et seq.*** For the 2010 election, IRTL wanted to, but did not, make an independent expenditure over $750 to support the election of a candidate for Attorney General. IRTL also wanted to, but did not, make a $100 contribution to the same candidate. Before the election, IRTL sought to enjoin various provisions of Iowa's new laws.

IRTL's complaint has four counts:

> Count 1. The definitions of "political committee" and "permanent organization" may apply to IRTL, violating the First Amendment by imposing political committee ("PAC") status and burdens without regard to whether IRTL's "major purpose" is expressly advocating the

nomination or election of candidates. *See* **Iowa Code §§ 68A.102(18)**, **68A.402(9)**.

Count 2. Iowa's campaign-finance laws impose "PAC-style" burdens on IRTL, in violation of the First Amendment. *See* ***id.*** **§§ 68A.402B(3)**, **68A.404(3)**, **(4)(a)**; **Iowa Admin. Code r. 351-4.9(15)**; **Independent Expenditure Statement** (Form Ind-Exp- O), https://webapp.iecdb.iowa.gov/IndExpend/Org_Independent_Expend.aspx; **Statement of Dissolution** (Form DR-3), http://www.iowa.gov/ethics/forms_brochures/forms/forms_download/sch_dr3.pdf.

Count 3. Iowa's ban on direct corporate contributions to candidates and committees violates the First and Fourteenth Amendments. *See* **Iowa Code § 68A.503**.

Count 4. Iowa's requirements that a corporation's board of directors authorize independent expenditures in advance, and that an officer of the corporation certify the authorization, violate the First and Fourteenth Amendments. *See* ***id.*** **§ 68A.404(2)(a)-(b)**, **(5)(g)**; **Form Ind-Exp-O**.

The district court denied IRTL's request for preliminary injunction. ***Iowa Right To Life Committee, Inc. v. Smithson***, 750 F. Supp. 2d 1020, 1049 (S.D. Iowa). IRTL did not appeal that ruling.

Both parties moved for summary judgment. On Counts 2 and 3, the district court found constitutional the challenged provisions, administrative rule, and forms. On Count 4, the court found IRTL lacked standing to bring its First Amendment challenge and part of its Fourteenth Amendment challenge, and found the provisions

otherwise constitutional under the Fourteenth Amendment. The court granted summary judgment to Iowa on Counts 2 through 4.

On Count 1, the court certified two questions to the Iowa Supreme Court:

> 1) If a corporation that has not previously registered as a political committee makes independent expenditures aggregating over $750 in a calendar year, does that corporation become, by virtue of such expenditures: (1) an "independent expenditure committee," as that term is defined in Iowa Admin. Code r. 351—4.1(1)(d); (2) a "political committee," as that term is defined by Iowa Code § 68A.102(18); or (3) both?
>
> 2) If a corporation that has not previously registered as a political committee and that "was originally organized for purposes other than engaging in election activities" makes independent expenditures aggregating over $750 in a calendar year, does that corporation become, by virtue of such expenditures, a "permanent organization" pursuant to Iowa Code § 68A.402(9)?

The Iowa Supreme Court answered:

> 1. An independent expenditure committee.
>
> 2. No.

***Iowa Right To Life Comm., Inc. v. Tooker***, 808 N.W.2d 417, 418 (Iowa 2011). Based on those answers, the district court found IRTL lacked standing to challenge the provisions, and granted summary judgment to Iowa.

II.

This court reviews de novo a grant of summary judgment. ***Minnesota Citizens Concerned for Life, Inc. v. Kelley***, 427 F.3d 1106, 1109 (8th Cir. 2005). "This court

affirms where there are no genuine issues of material fact, and judgment is appropriate as a matter of law." ***Id.***

A.

In Count 1, IRTL challenges the terms "political committee" and "permanent organization" as applied to it and other groups whose "major purpose" is not "the nomination or election of a candidate." *See* ***Buckley v. Valeo***, 424 U.S. 1, 79 (1976).

> "Political committee" means . . . [a] person, other than an individual, that accepts contributions in excess of seven hundred fifty dollars in the aggregate, makes expenditures in excess of seven hundred fifty dollars in the aggregate, or incurs indebtedness in excess of seven hundred fifty dollars in the aggregate in any one calendar year to expressly advocate the nomination, election, or defeat of a candidate for public office, or to expressly advocate the passage or defeat of a ballot issue.

**Iowa Code § 68A.102(18)**. A PAC has several requirements: filing a "statement of organization," ***id.*** **§ 68A.201(1)**, filing disclosure reports, ***id.*** **§§ 68A.401**, **68A.402**, **68A.402A**, appointing a chair and treasurer, ***id.*** **§ 68A.203(1)(a)-(b)**, properly receiving, depositing, and remitting funds, ***id.*** **§ 68A.203(1)-(3)**, segregating PAC funds, ***id.*** **§ 68A.203(2)(d)**, maintaining records, ***id.*** **§ 68A.203(3)-(4)**, and dissolving after "it will no longer receive contributions or make disbursements," ***id.*** **§ 68A.402B**.

"'[P]ermanent organization' means an organization that is continuing, stable, and enduring, and was originally organized for purposes other than engaging in election activities." ***Id.*** **§ 68A.402(9)**. "A permanent organization temporarily engaging in activity described in section 68A.102, subsection 18, shall organize a political committee." ***Id.*** Then, it is subject to PAC requirements. ***Id.***

Alternatively, an entity that makes an "independent expenditure" may become an "independent expenditure committee."

> "[I]ndependent expenditure" means one or more expenditures in excess of seven hundred fifty dollars in the aggregate for a communication that expressly advocates the nomination, election, or defeat of a clearly identified candidate or the passage or defeat of a ballot issue that is made without the prior approval or coordination with a candidate, candidate's committee, or a ballot issue committee.

***Id.* § 68A.404(1)**. "A person, other than a committee registered under this chapter, that makes one or more independent expenditures shall file an independent expenditure statement," ***id.* § 68A.404(3)**, an "initial report," and "[s]ubsequent reports," ***id.* § 68A.404(3)(a)**. A person required to file such reports "due to the filing of an independent expenditure statement" is an "independent expenditure committee." **Iowa Admin. Code r. 351-4.1(1)(*d*)**.

According to IRTL, if it makes independent expenditures over $750, Iowa could deem it a PAC or "permanent organization" – and impose PAC burdens – without applying *Buckley*'s major-purpose test (and thus violate its First Amendment rights). In *Buckley*, the Supreme Court construed the federal definition of a PAC only to "encompass organizations that are under the control of a candidate or the major purpose of which is the nomination or election of a candidate." ***Buckley***, 424 U.S. at 79. The Court has "suggested two methods to determine an organization's 'major purpose': (1) examination of the organization's central organizational purpose; or (2) comparison of the organization's independent spending with overall spending to determine whether the preponderance of expenditures are for express advocacy or contributions to candidates." ***Colorado Right to Life Comm., Inc. (CRLC) v. Coffman***, 498 F.3d 1137, 1152 (10th Cir. 2007), *citing* ***Fed. Election Comm'n v. Massachusetts Citizens for Life, Inc. (MCFL)***, 479 U.S. 238, 252 n.6 (1986) (plurality opinion), *and* ***id.*** at 262. This "so-called major-purpose test . . . limits the

reach of the statutory triggers . . . for [PAC] status." ***Minnesota Citizens Concerned for Life, Inc. (MCCL) v. Swanson***, 692 F.3d 864, 872 (8th Cir. 2012) (en banc) (alteration in original) (citations and internal quotation marks omitted).

Answering the district court's certified questions, the Iowa Supreme Court held that a corporation not previously registered as a PAC – such as IRTL – that makes independent expenditures over $750 in a calendar year, becomes an independent expenditure committee, not a PAC or permanent organization. ***IRTL***, 808 N.W.2d at 418. The state court concluded that "the effect of the legislation is to permit corporations like IRTL to engage in express advocacy for or against candidates without becoming political committees so long as they comply with section 68A.404." ***Id.*** at 429. After the Iowa Supreme Court's ruling, the district court found IRTL lacks standing to challenge the "political committee" and "permanent organization" definitions, because – based on the record – those terms do not apply to it.

To establish Article III standing, a party must suffer an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." ***Monsanto Co. v. Geertson Seed Farms***, 130 S. Ct. 2743, 2752 (2010). An "injury-in-fact" is "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." ***St. Paul Area Chamber of Commerce v. Gaertner***, 439 F.3d 481, 485 (8th Cir. 2006) (footnote omitted), *quoting* ***Babbitt v. United Farm Workers Nat'l Union***, 442 U.S. 289, 298 (1979). A party need not expose itself to arrest or prosecution under a criminal statute to challenge it in federal court. ***Arkansas Right to Life State Political Action Comm. v. Butler***, 146 F.3d 558, 560 (8th Cir. 1998). But a threat of prosecution must not be "wholly speculative." ***St. Paul Area Chamber of Commerce***, 439 F.3d at 485, 487 (citation omitted). A party "must face a credible threat of present or future prosecution under the statute for a claimed chilling effect to confer standing to challenge the constitutionality of a statute that both provides for criminal penalties

and abridges First Amendment rights." ***Zanders v. Swanson***, 573 F.3d 591, 593 (8th Cir. 2009). "If . . . the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." ***Warth v. Seldin***, 422 U.S. 490, 501-02 (1975); ***Nat'l Right to Life Political Action Comm. (NRLPAC) v. Connor***, 323 F.3d 684, 689 (8th Cir. 2003) ("It is the responsibility of the complainant clearly to allege facts demonstrating . . . [standing]." (citation and internal quotation marks omitted)).

IRTL contends the Iowa Supreme Court's qualification to its answer confers standing:

> This conclusion [that a corporation making independent expenditures aggregating over $750 in a calendar year is only an independent expenditure committee] applies to corporations whose primary or major purpose is *not* the type of activity described in section 68A.102(18)[, defining "political committee"]. As we have previously discussed, IRTL alleges it is such a corporation. We do not hold today that a corporation primarily engaged in campaign activities can avoid political committee status simply because it happens to be a corporation rather than an unincorporated association. We leave that decision for another day.

***IRTL***, 808 N.W.2d at 430 n.7 (emphasis in original). According to IRTL, a corporation must have *Buckley*'s major purpose before Iowa can deem it a PAC or permanent organization. IRTL asserts the Iowa Supreme Court does not define what it means by "primary or major purpose," leaving unclear whether *Buckley*'s major-purpose test applies.

IRTL wants Iowa neither to classify it as a PAC, nor to impose criminal penalties. *See* **Iowa Code § 68A.701** ("Any person who willfully violates any provisions of this chapter shall upon conviction, be guilty of a serious misdemeanor."); *see* ***id.*** **§ 903.1(1)(b)** (stating a serious misdemeanor may carry a fine up to $1,875 and imprisonment up to one year). To support its alleged injury, IRTL

points to Iowa disputing its major purpose at a hearing before the district court: "[IRTL's major purpose is] not undisputed because we have to see what, in fact, their expenditures have been over the course of the organization and quantify it." It also highlights an Iowa Ethics and Campaign Disclosure Board advisory opinion stating the Board "would need more specific information concerning what activity the entity was to engage in prior to being able to give specific advice on the level of registration and disclosure." **Iowa Ethics and Campaign Disclosure Board, Advisory Opinion 2010 - 03 (April 29, 2010),** http://www.iowa.gov/ethics/legal/adv_opn/2010/10fao03.htm. IRTL concludes it has standing because Iowa might deem it a PAC or permanent organization, chilling its First Amendment right to speak through independent expenditures, even though its major purpose is not expressly advocating the nomination or election of specific candidates.

The Iowa Supreme Court held that when a corporation whose major purpose is not express advocacy makes independent expenditures, it becomes an independent expenditures committee, not a PAC or permanent organization. *See **IRTL***, 808 N.W.2d at 418, 429, 430 & n.7. IRTL claims its "major purpose is not and will never be the nomination or election of candidates." It does not face a realistic danger that Iowa will deem it a PAC or permanent organization.

IRTL counters that Iowa has never admitted IRTL's major purpose is *not* express advocacy. Iowa did state that it would have to examine IRTL's expenditures before determining its major purpose. But that is a method the Supreme Court advised for determining an organization's major purpose. *See **MCFL***, 479 U.S. at 262. Iowa explains, "It's undisputed that if you just want to make independent expenditures there are no restrictions other than disclosures and registration [for an 'independent expenditure committee']." Iowa further agrees, "[I]f a corporation makes independent expenditures aggregating over [$750], it becomes an independent expenditure committee . . . ." ***IRTL***, 808 N.W.2d at 426. Iowa "denies, however, that

such an organization would qualify as a political committee under section 68A.102(18)." ***Id.*** at 426-27, 429-30; *see* **Iowa Ethics and Campaign Disclosure Board, Advisory Opinion 2010-03**. As the Iowa Supreme Court's opinion makes clear, this conclusion applies to IRTL. *Cf.* ***NRLPAC***, 323 F.3d at 694 (dismissing as unripe a group's challenge to a campaign-finance law that did not explicitly require *Buckley*'s major-purpose test to determine whether an entity was a PAC, in part because the group "was never threatened with enforcement of the PAC-like regulations"). Iowa has not threatened to classify IRTL as a PAC or permanent organization, let alone threatened to so classify it without applying the major-purpose test.

True, the Iowa Supreme Court does not expressly require *Buckley*'s major-purpose test. In its qualification to its answer, the court held that if a corporation's "major purpose is *not* the type of activity described in section 68A.102(18)," it can make independent expenditures without becoming a PAC or permanent organization. *See* ***IRTL***, 808 N.W.2d at 430 & n.7 (emphasis in original). Under subsection 68A.102(18), a PAC is a person who accepts contributions, makes expenditures, or incurs indebtedness over $750 "to expressly advocate the nomination, election, or defeat of a candidate for public office, *or* to expressly advocate the passage or defeat of a ballot issue." **Iowa Code § 68A.102(18)** (emphasis added). The "interests held to justify restricting corporate campaign speech or its functional equivalent do not justify restricting issue advocacy." ***Fed. Election Comm'n v. Wisconsin Right To Life, Inc.***, 551 U.S. 449, 457 (2007); ***MCFL***, 479 U.S. at 252 n.6 (plurality opinion); ***North Carolina Right to Life, Inc. v. Leake***, 525 F.3d 274, 303 (4th Cir. 2008) (agreeing that an organization cannot be classified as a PAC if its major purpose is issue advocacy); *see also* ***Kelley***, 427 F.3d at 1110 (noting that the Minnesota Supreme Court – to conform a Minnesota campaign-finance statute with *Buckley* – interpreted "political committee" not to mean a group that engages only in "pure issue advocacy," *citing* ***Minnesota Citizens Concerned for Life, Inc. v. Kelley***, 698 N.W.2d 424, 429-30 (Minn. 2005)). But IRTL has not alleged that its major purpose

is issue advocacy, that it wants to make expenditures over $750 "to expressly advocate the passage or defeat of a ballot issue," or that Iowa claims IRTL's major purpose is issue advocacy. Nor has IRTL made an "overbreadth challenge." *See* ***Davenport v. Washington Educ. Ass'n***, 551 U.S. 177, 190-91 (2007) (holding that the Court "need not answer [the] question [at issue] . . . because at no stage of th[e] litigation has respondent made an overbreadth challenge"). Moreover, neither IRTL nor Iowa addressed this "issue advocacy" clause in briefing or at oral argument. Based on the record before this court, the Iowa Supreme Court's qualification to its answer does not confer standing on IRTL.

The standing issue here is similar to that in *NRLPAC*. There, the district court found the campaign-finance statute at issue does not apply to committees that "spend more than $1,500 on Missouri elections in a calendar year." ***NRLPAC***, 323 F.3d at 690. The plaintiffs had "not alleged that they intended to spend less than $1,500 . . . for the . . . election." ***Id.*** Their evidence that the Missouri Ethics Commission enforced the statute against committees spending more than $1,500 was "unpersuasive." ***Id.*** The plaintiffs therefore lacked standing to challenge the relevant statutory section. ***Id.***

Similarly, in *Kelley*, this court certified a question to the Minnesota Supreme Court to determine whether, under Minnesota's law, the definitions of "political committee" and "political fund" apply to groups engaged only in "pure issue advocacy." ***Kelley***, 427 F.3d at 1110. The state court held they did not. ***Kelley***, 698 N.W.2d at 430. Because MCCL claimed to engage only in pure issue advocacy, it lacked standing to challenge the definitions. ***Kelley***, 427 F.3d at 1110.

Likewise, IRTL has alleged that its major purpose is not express advocacy. It claims the standing issue differs from that in *Kelley*, because there the state had not questioned MCCL's major purpose. But, as in *NRLPAC*, IRTL's evidence that Iowa will deem it a PAC or permanent organization "is unpersuasive and, at best, amounts

to evidence of a conjectural or hypothetical injury." ***NRLPAC***, 323 F.3d at 690; *see* ***Zanders***, 573 F.3d at 594 ("It is too speculative for standing purposes to allege that this statute *could* be manipulated." (emphasis in original)); *cf.* ***CRLC***, 498 F.3d at 1145 n.6 ("Because the Secretary has indicated unequivocally his intent to prosecute CRLC, CRLC has suffered the constitutionally sufficient injury of self-censorship through the chilling of protected First Amendment activity . . . ."). IRTL is free to make independent expenditures over $750 without "either . . . significant[ly] chang[ing] . . . its operations to obey the regulation, or risk[ing] a criminal enforcement action by disobeying the regulation." *See* ***St. Paul Area Chamber of Commerce***, 439 F.3d at 487 (eventually holding the plaintiffs suffered an injury under the First Amendment, because "they ha[d] been forced to modify their speech and behavior to comply with the [challenged] [s]tatutes"). IRTL cannot establish standing "simply by claiming that [it] experienced a 'chilling effect' that resulted from a governmental policy that does not regulate, constrain, or compel any action on [its] part." ***Clapper v. Amnesty Int'l USA***, 133 S. Ct. 1138, 1153 (2013). Because IRTL faces no credible threat of present or future prosecution, it lacks standing to challenge the definitions of "political committee" and "permanent organization."

B.

In Count 2, invoking the First Amendment, IRTL challenges several disclosure requirements as applied to it and other groups "whose major purpose is not nominating or electing candidates." In district court, IRTL challenged the disclosure requirements both facially and as applied. The court upheld the requirements. IRTL maintains only an as-applied challenge on appeal. Iowa claims the challenge is facial.

The "label is not what matters." ***Doe v. Reed***, 130 S. Ct. 2811, 2817 (2010); *see* ***Citizens United***, 558 U.S. at 331 ("[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional

challenge."). The "important" inquiry is whether the "claim and the relief that would follow . . . reach beyond the particular circumstances of the[] plaintiffs." ***Reed***, 130 S. Ct. at 2817.

IRTL's claim "has characteristics of both" challenges. ***Id.*** It seems "as applied" because IRTL complains it was chilled from making a specific expenditure. *Cf.* ***Human Life of Washington, Inc. v. Brumsickle***, 624 F.3d 990, 1021-22 (9th Cir. 2010) ("[The plaintiff] does not provide any evidence to support an as-applied challenge . . . ."). Also, it challenges the law only as applied to itself and "other groups whose major purpose is not nominating or electing candidates." *Cf.* ***Ctr. for Individual Freedom v. Madigan***, 697 F.3d 464, 475 (7th Cir. 2012) ("This is not a case where a group has actually engaged in a particular form of speech that is subject to regulation and seeks to challenge the applicability of the law to itself and other groups who have engaged in similar expressive activity."). But such groups constitute a broad range of entities, from those wanting to make a single expenditure of just over $750 in a single election, to those wanting to expend much greater sums in several elections. The claim therefore seems "'facial' in that it is not limited to plaintiff's particular case, but challenges application of the law more broadly." *See* ***Reed***, 130 S. Ct. at 2817.

IRTL contends that, if held unconstitutional as applied to it and similar groups, the law would "still apply to persons with the major purpose of nominating or electing candidates." But Iowa classifies those "persons" as PACs (though the Iowa Supreme Court left open the possibility that a corporation whose major purpose is express advocacy could avoid PAC status, *see* ***IRTL***, 808 N.W.2d at 430 n.7). *See* **Iowa Code § 68A.102(18)**; *see also* ***IRTL***, 808 N.W.2d at 430 n.7. A PAC cannot become an "independent expenditure committee": any "person" – including an individual – "*other than a committee registered under this chapter*, that makes one or more independent expenditures" is an "independent expenditure committee." **Iowa Code § 68A.404(3)**; **Iowa Admin. Code r. 351-4.1(1)(*d*)**; *see* **Iowa Code §**

**68A.102(17)** ("'Person' means, without limitation, any individual, corporation, government or governmental subdivision or agency, business trust, estate, trust, partnership or association, labor union, or any other legal entity."). Thus, the disclosure requirements for independent expenditure committees apply *only* to non-PACs. As such, IRTL's request to invalidate the disclosure requirements as applied to "groups whose major purpose is not nominating or electing candidates" reaches all entities – but not individuals – subject to the challenged disclosure requirements.

"Facial challenges are disfavored because they often rest on speculation . . . [and] raise the risk of premature interpretation of statutes on the basis of factually barebones records." ***Phelps-Roper v. City of Manchester, Mo.***, 697 F.3d 678, 685 (8th Cir. 2012) (alteration in original) (citation and internal quotation marks omitted); *see* ***Neely v. McDaniel***, 677 F.3d 346, 350 (8th Cir. 2012) ("[A]pplication of the [overbreadth] doctrine is strong medicine that should be employed sparingly and only as a last resort." (citation and internal quotation marks omitted)). Here, the "claim and the relief that would follow" – invalidating discrete disclosure requirements as applied to IRTL and other non-PAC groups – does not require this court to consider the facial validity of Iowa's disclosure laws. This court can consider each challenged disclosure requirement in isolation, and, if necessary, apply the "normal rule that partial, rather than facial, invalidation is the required course." *See* ***Brockett v. Spokane Arcades, Inc.***, 472 U.S. 491, 502-04 (1985) ("[A] federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it."); *cf.* ***Reed***, 561 130 S. Ct. at 2817 (holding that the plaintiffs had to satisfy the "standards for a facial challenge" because "the relief that would follow" was "an injunction barring the secretary of state from making [all] referendum petitions available to the public[,] . . . reach[ing] beyond the particular circumstances of these plaintiffs" (internal quotation marks omitted)).

Under Iowa's disclosure laws, an independent expenditure committee must file:

> (1) an "independent expenditure statement" and "initial report," **Iowa Code §§ 68A.404(3)**, **68A.404(4)(a)**; **Iowa Admin. Code rs. 351-4.9(15)**, **351-4.27(4)**; **Form Ind-Exp-O**;
>
> (2) ongoing reports, **Iowa Code § 68A.404(3)(a)**; **Iowa Admin. Code r. 351-4.9(15)**;
>
> (3) a supplemental report, under certain conditions, **Iowa Code § 68A.404(3)(a)(1)**; and
>
> (4) a termination report, ***id.*** **§ 68A.402B(3)**; **Form DR-3**.

According to IRTL, these requirements burden its free speech and association rights, chilling it from making its desired expenditures, because they impose "PAC-style" burdens on non-PAC entities, contrary to *Citizens United* and *MCCL*.

In *MCCL*, groups sought preliminary injunction against several Minnesota campaign-finance laws, bringing facial and as-applied challenges. Under Minnesota's laws, an association collecting or expending dues or voluntary contributions "to influence the nomination or election of a candidate or to promote or defeat a ballot question" had to establish a "political fund" if it spent "more than $100 on such speech in a given year." ***MCCL***, 692 F.3d at 868, 871 (citation and internal quotation marks omitted). Minnesota's disclosure law required a political fund to:

> (1) "create and register its own independent expenditure political fund";
>
> (2) "elect or appoint a treasurer and ensure the contents of the fund are not commingled with other funds";
>
> (3) file "ongoing reports";

(4) "file a statement of inactivity";

(5) continue the reporting requirements until dissolution;

(6) "keep an account of contributions . . . exceeding $20," "keep account of the date and amount of . . . expenditures," and "maintain these records . . . for four years from the date of filing"; and

(7) "settle . . . debts, dispose of all assets in excess of $100 . . . and file a termination report."

***Id.*** at 868-71. Minnesota's law imposed "virtually identical regulatory burdens upon political funds as it d[id] [PACs]." ***Id.*** at 872. The *MCCL* court held that "the collective burdens associated with Minnesota's independent expenditure law chill political speech." ***Id.*** at 874. This court reversed the district court's denial of a preliminary injunction "to the extent [the statute] require[d] ongoing reporting requirements from associations not otherwise qualifying as PACs under Minnesota law," and expressed "no opinion as to whether any of the other obligations . . . would . . . survive exacting scrutiny." ***Id.*** at 878 (footnote omitted).

Iowa's disclosure law imposes fewer requirements, and its threshold amount for regulation ($750) is higher than Minnesota's amount ($100). Nonetheless, as explained in *MCCL*, the filing, ongoing reporting, and termination obligations are burdensome, and "discourage[] [groups], particularly small [ones] with limited resources, from engaging in protected political speech." *See* ***id.*** at 874. Such groups (and individuals) face the "particularly difficult choice" of complying with "cumbersome ongoing regulatory burdens or sacrific[ing] protected core First Amendment activity." ***Id.***

"Generally, '[l]aws that burden political speech are subject to strict scrutiny . . . .'" ***Id.*** (citation omitted), *quoting* ***Citizens United***, 558 U.S. at 340 (internal

quotation marks omitted). But disclosure laws are subject to exacting scrutiny, because they "impose no ceiling on campaign-related activities and do not prevent anyone from speaking." ***Citizens United***, 558 U.S. at 366 (internal citations and quotation marks omitted); *see* ***id.*** at 319 ("The Government may regulate corporate political speech through disclaimer and disclosure requirements, but it may not suppress that speech altogether."); *cf.* ***MCCL***, 692 F.3d at 874-75 (questioning whether exacting scrutiny should always apply solely because of the "'disclosure' label," but applying exacting scrutiny to the disclosure laws at issue). Exacting scrutiny "requires a 'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest." ***MCCL***, 692 F.3d at 875, *quoting* ***Citizens United***, 558 U.S. at 366-67 (internal quotation marks omitted); *cf.* ***Citizens United***, 558 U.S. at 369 ("[D]isclosure is a *less* restrictive alternative to more comprehensive regulations of speech." (emphasis added) (citation omitted)). *But cf.* ***United States v. Alvarez***, 132 S. Ct. 2537, 2551 (2012) (plurality opinion) ("[W]hen the Government seeks to regulate protected speech, the restriction must be the 'least restrictive means among available, effective alternatives,'" *quoting* ***Ashcroft v. Am. Civil Liberties Union***, 542 U.S. 656, 666 (2004)). "To withstand this scrutiny, the strength of the governmental interest must reflect the seriousness of the actual burden on First Amendment rights." ***Reed***, 130 S. Ct. at 2818 (citation and internal quotation marks omitted).

The circuit courts disagree whether exacting scrutiny requires narrow tailoring in the disclosure context. *Compare* ***North Carolina Right to Life Comm. Fund for Indep. Political Expenditures v. Leake***, 524 F.3d 427, 439 (4th Cir. 2008) (holding narrow tailoring does not apply), *with* ***Citizens for Responsible Gov't State PAC (CRG) v. Davidson***, 236 F.3d 1174, 1197 (10th Cir. 2000) (applying narrow tailoring). The *MCCL* court noted parenthetically that the Supreme Court has stated "a law will withstand exacting scrutiny 'only if it is narrowly tailored to serve an overriding state interest.'" ***MCCL***, 692 F.3d at 876, *quoting* ***McIntyre v. Ohio Election Comm'n***, 514 U.S. 334, 347 (1995).

The disagreement stems from the Supreme Court's discussion and application of "exacting scrutiny" in the campaign-finance context. In *Buckley*, the Court applied "exacting scrutiny" to *both* expenditure limitations and disclosure requirements. *See* ***Buckley***, 424 U.S. at 44, 64. In *First National Bank of Boston v. Bellotti*, 435 U.S. 765 (1978), the Court applied "exacting scrutiny" to a statute's complete prohibition of political contributions or expenditures by "banks and business corporations." ***Bellotti***, 435 U.S. at 767-68, 786. As late as *McIntyre* and *Austin v. Michigan Chamber of Commerce*, 494 U.S. 652 (1990), *overruled by* ***Citizens United***, 558 U.S. 310, the Court still applied "exacting scrutiny" not only to laws regulating disclosure, but also to laws prohibiting or restricting political spending. *See* ***McIntyre***, 514 U.S. at 347 (explaining that a law required narrow tailoring under "exacting scrutiny" because it burdened "core political speech" by requiring politically oriented leaflets to disclose who was responsible for the publications, *citing* ***Bellotti***, 435 U.S. at 786); ***Austin***, 494 U.S. at 702-03 (applying "exacting First Amendment scrutiny" to a law restricting political spending); *see also* ***Day v. Holahan***, 34 F.3d 1356, 1361 (8th Cir. 1994) ("We are bound 'to apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content,'" *quoting* ***Turner Broad. Sys., Inc. v. F.C.C.***, 512 U.S. 622, 642 (1994)). The *McIntyre* Court equated "exacting scrutiny" with "strict scrutiny." *See* ***McIntyre***, 514 U.S. at 346 & n.10.

In *Citizens United*, the Court applied "strict scrutiny" to "[l]aws that burden political speech," requiring "the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." ***Citizens United***, 558 U.S. at 340 (citation and internal quotation marks omitted). But it applied "exacting scrutiny" – requiring a "'substantial relation' between the disclosure requirement and a 'sufficiently important' governmental interest" – to "[d]isclaimer and disclosure requirements." ***Id.*** at 366-67, *quoting* ***Buckley***, 424 U.S. at 64, 66, *and* ***McConnell v. Fed. Election Comm'n***, 540 U.S. 93, 201, 231-32 (2003), *overruled by* ***Citizens United***, 558 U.S. 310. The Court has since affirmed this distinction. *See*

***Reed***, 130 S. Ct. at 2818. Disclosure requirements that "impose no ceiling on campaign-related activities and do not prevent anyone from speaking" are therefore subject to exacting scrutiny, not requiring a governmental interest that is narrowly tailored. *See* ***Citizens United***, 558 U.S. at 366 (citation and internal citation omitted).

Iowa advances an "informational interest" to justify the disclosure requirements. "[T]he public has an interest in knowing who is speaking about a candidate shortly before an election." ***Id.*** at 369. By "provid[ing] the electorate with information about the sources of election-related spending," disclosure allows the public to "make informed choices in the political marketplace." ***Id.*** at 367 (citations and internal quotation marks omitted). This "informational interest alone" can be sufficiently important to justify disclosure requirements.[1] ***Id.*** at 369-71 (upholding a federal disclosure law based on an informational interest); *see, e.g.*, ***Ctr. for Individual Freedom***, 697 F.3d at 477-78 (upholding a state disclosure law based on an informational interest).

IRTL argues that, because the requirements impose "PAC-style" burdens on groups lacking *Buckley*'s major purpose, no interest can justify this imposition. Put differently, IRTL asserts that a state may impose PAC status or PAC-like burdens only on groups whose major purpose is express advocacy.

The Courts of Appeals that have addressed the issue are split on whether state campaign-finance disclosure laws can impose PAC status or burdens on groups lacking *Buckley*'s major purpose. *See* ***MCCL***, 692 F.3d at 872 (noting the circuit

---

[1]Iowa's disclosure law covers both express advocacy and issue advocacy. *See* **Iowa Code § 68A.404(1)**. Disclosure requirements need not "be limited to speech that is the functional equivalent of express advocacy." ***Citizens United***, 558 U.S. at 369; *see, e.g.*, ***Ctr. for Individual Freedom***, 697 F.3d at 484 & n.17 (upholding a state disclosure law covering issue advocacy and listing other circuits that have done so).

split); *see, e.g.*, ***Ctr. for Individual Freedom***, 697 F.3d at 487 & n.23 (same). This court has not directly addressed the issue. But in *MCCL*, Minnesota's disclosure law "extended the reach of PAC-like regulation" too far, because the law imposed PAC burdens on "*all* associations, *regardless of the association's purpose*." ***MCCL***, 692 F.3d at 872, 875 n.10 (first emphasis in original) (second emphasis added); *see* ***id.*** at 874 ("[Choosing between] comply[ing] with cumbersome ongoing regulatory burdens or sacrific[ing] protected core First Amendment activity" "is a particularly difficult choice for smaller businesses and associations for whom political speech is not a major purpose nor a frequent activity."); ***id.*** at 877 ("Minnesota has not stated any plausible reason why *continued* reporting from nearly all associations, regardless of the association's major purpose, is necessary to accomplish [its stated] interests." (emphasis in original)). *But cf.* ***Ctr. for Individual Freedom***, 697 F.3d at 486-91 (refusing to apply the major-purpose test to a state law, and noting that application could "'yield perverse results'" where a "'small group with [*Buckley*'s] major purpose . . . that spends [$3,000] for ads could be required to register' as a political committee, while a 'mega-group [lacking *Buckley*'s major purpose] that spends $1,500,000 to defeat the same candidate . . . would not have to register'" (second alteration in original), *quoting* ***Nat'l Organization for Marriage (NOM) v. McKee***, 649 F.3d 34, 59 (1st Cir. 2011)). IRTL's major purpose is therefore an important consideration for determining whether Iowa may impose a particular requirement on it.

IRTL essentially argues that any disclosure requirement other than "one-time, event-driven reporting" is likely a PAC-style burden, invalid as applied to groups lacking *Buckley*'s major purpose. *See* ***MCCL***, 692 F.3d at 875 n.9 (noting that the federal disclosure laws reviewed in *Citizens United* involved "event-driven reporting . . . [that] ended as soon as the report was filed" and required filing a "one-time disclosure only when a substantial amount of money was spent"). In other words, IRTL claims that a non-PAC can be required to disclose information about an independent expenditure only when it actually makes that expenditure.

The Supreme Court has noted a number of "onerous" federal requirements imposed on PACs. *See* ***Citizens United***, 558 U.S. at 335-39. But it has not held that each of these burdens may be applied only to PACs. True, a single requirement or combination of requirements may be so burdensome that it cannot be applied to a group regardless of its purpose. But simply because a requirement applies to a PAC does not mean applying it to a non-PAC is prohibited. The relevant inquiry is whether the disclosure requirement bears a substantial relation to a sufficiently important governmental interest.[2] *Cf.* ***NOM***, 649 F.3d at 56 ("It is not the designation as a PAC but rather the obligations that attend PAC designation that matter for purposes of First Amendment review.").

1.

An independent expenditure committee must file an "independent expenditure statement" and an "initial report" within 48 hours of making an independent expenditure over $750, or within 48 hours "of disseminating the communication to its intended audience, whichever is earlier." **Iowa Code §§ 68A.404(3)**, **68A.404(4)(a)**; **Iowa Admin. Code rs. 351-4.9(15)**, **351-4.27(4)**. IRTL argues that two of the independent expenditure statement's requirements – (a) "registration" and (b) 48-hour initial reporting – are PAC-like burdens that unconstitutionally infringe its ability to speak.

A person who makes an independent expenditure uses Form Ind-Exp-O – a one-page document – to electronically file both the independent expenditure

[2]Because IRTL does not raise – and this court does not address – a facial or overbreadth challenge to these disclosure requirements, this court need not consider the constitutionality of Iowa's disclosure laws, *see* **Iowa Code §§ 68A.404(3)**, **68A.404(4)(a)**, administrative rules, *see* **Iowa Admin. Code rs. 351-4.1(1)(*d*)**, **351-4.9(15)**, **351-4.27(4)**, or forms, as applied to individuals. *See* ***Brockett***, 472 U.S. at 502.

statement and the initial report. *See* **Iowa Admin. Code rs. 351-4.9(15), 351-4.27(2)**. The "registration" portion of the form requires the name and contact information of the organization and an individual within the organization. The rest of the form requires contact information for the funding source of the independent expenditure (and for any beneficiary of the expenditure), and information about the expenditure itself, including the date and amount, how the message is communicated, and the position advocated.

a.

According to IRTL, the independent expenditure statement requires it to "register," treating it like a "campaign-related" group, or PAC. Neither the Supreme Court nor this court expressly limits a registration requirement to PACs. *See* ***Citizens United***, 558 U.S. at 369 (upholding a registration requirement for lobbyists based on an informational interest); *cf.* ***id.*** at 337-38 (including "fil[ing] an organization statement and report[ing] changes to this information within 10 days" in a list of requirements that make a PAC "burdensome"); ***MCCL***, 692 F.3d at 871 ("The collective burdens accompanying the creation and maintenance of a political fund—appointing a treasurer who becomes subject to civil and criminal penalties, segregating funds, maintaining detailed records, and registering and filing ongoing reports with the Board—are substantial." (internal citation omitted)). Even for "one-time, event-driven" reporting – which IRTL trumpets as a valid form of disclosure as applied to non-PACs – basic contact information about the entity making the expenditure is necessary to further "the public . . . interest in knowing who is speaking about a candidate." *See* ***Citizens United***, 558 U.S. at 369; *see also* **2 U.S.C. § 434(c)** (requiring a non-PAC making independent expenditures over $250 to disclose its name and address). Nonetheless, IRTL asserts that the *MCCL* court held a registration requirement too burdensome for non-PACs. This court did not do so. Rather, it "reverse[d] the district court's denial of . . . a preliminary injunction to the extent [Minnesota's law] require[d] ongoing reporting requirements," but

"express[ed] no opinion as to whether any of the other obligations . . . , by themselves or collectively, survive exacting scrutiny." ***MCCL***, 692 F.3d at 877.

Here, the contact information in the registration is like that required for a one-time, event-driven report. Requiring the name and address of the person making the independent expenditure provides "transparency [that] enables the electorate to make informed decisions and give proper weight to different speakers and messages." ***Citizens United***, 558 U.S. at 371. Unlike "cumbersome ongoing regulatory burdens," which impose the "particularly difficult choice" either to "comply . . . or sacrifice protected core First Amendment activity," ***MCCL***, 692 F.3d at 874, the basic information Form Ind-Exp-O requires is not overly burdensome. Only when a person makes an independent expenditure is the requirement triggered. *See* **Iowa Code § 68A.404(3)**.

IRTL claims that *any* registration requirement for non-PACs is unconstitutional. But a "registration" label is not what matters. This court need not consider whether *all* forms of a registration requirement would be constitutional as applied to non-PACs. Here, the limited contact information Form Ind-Exp-O requires – whether labeled as "registration" or "one-time, event-driven" reporting – bears a substantial relation to a sufficiently important informational interest. Thus, the first two sentences of Iowa Code subsection 68A.404(3)[3] and the "registration" portion of Form Ind-Exp-O are constitutional as applied to IRTL and other groups whose major purpose is not nominating or electing candidates.

---

[3]"A person, other than a committee registered under this chapter, that makes one or more independent expenditures shall file an independent expenditure statement. All statements and reports required by this section shall be filed in an electronic format as prescribed by rule." **Iowa Code § 68A.404(3)**.

b.

IRTL contends that requiring an "initial report," *see* ***id.*** **§ 68A.404(3)(a)**, and requiring it to file the report within 48 hours, *see* ***id.*** **§ 68A.404(3)**, **68A.404(4)(a)**, is unconstitutional. According to IRTL, the initial report must include all information listed in Iowa Code section 68A.402A. Iowa Code subsection 68A.404(3)(a) states that "the person filing the independent expenditure statement shall file reports under sections 68A.402 and 68A.402A." ***Id.*** **§ 68A.404(3)(a)**. The next sentence reads, "An initial report shall be filed at the same time as the independent expenditure statement." ***Id.*** Iowa claims, "Even though the Code requires a 'statement' and a 'report,' the Board 'has combined both requirements into one filing,'" citing Iowa Administrative Code rule 351-4.27(2). That rule states, "Form Ind-Exp-O shall be filed by a person" and "shall be in a format that will enable a person . . . making an independent expenditure to comply with all of the reporting requirements in 2009 Iowa Code Supplement section 68A.404 . . . ." **Iowa Admin. Code r. 351-4.27(2)**. Iowa requires the initial report to contain only the information in Form Ind-Exp-O, not the more extensive information Iowa Code section 68A.402A requires.

Like registration, the information in the "initial report" on Form Ind-Exp-O is not overly burdensome. This information – the name and address of the funding source for, and beneficiary of, the independent expenditure, and brief details of the expenditure itself – is similar to a one-time, event-driven report. *See* ***CRG***, 236 F.3d at 1197 (finding "no constitutional problems with the content requirements of Colorado's public reporting scheme," which includes "(1) the amount of the expenditure, (2) a 'detailed description' of the use of the expenditure, and (3) the name of the candidate whom the expenditure is intended to support or oppose"); *see also* **2 U.S.C. § 434(c)** (listing the federal reporting requirements when a "person (other than a political committee)" makes an independent expenditure over $250). A non-PAC files Form Ind-Exp-O after "making an independent expenditure exceeding $750." **Iowa Admin. Code r. 351-4.27(4)**. "[R]equiring reporting

whenever money is spent" is a constitutional way to "accomplish . . . disclosure-related interests."[4] ***MCCL***, 692 F.3d at 876-77.

IRTL asserts that the "burden of a 48-hour-reporting requirement is so great that the government's interest cannot justify it." It cites *CRG*, where the Tenth Circuit held a 24-hour notice requirement "a far cry from being narrowly tailored," because "[n]one of the State's compelling interests . . . would be at all compromised by a more workable deadline." ***CRG***, 236 F.3d at 1197. IRTL also relies on a district court case, where the court found no "justification for [a] regulation's . . . requirement that expenditures in excess of $250 per candidate must be reported within twenty-four hours *whenever they are made*." *See* ***NOM v. McKee***, 723 F. Supp. 2d 245, 266 (D. Me. 2010) (emphasis in original) (footnote omitted), *aff'd in part, rev'd in part on other grounds*, 649 F.3d 34. IRTL argues that instead the law could, constitutionally, require filing the report at the next deadline for the election to which the organization directed the expenditure.

In *Citizens United*, the Court – applying exacting scrutiny – upheld a federal law requiring disclosure "within 24 hours" when a person spends over $10,000 on

---

[4]That Iowa refers to the filing requirement as an "initial" report does not affect the analysis. Because the current filing requirement under the administrative rules allows an independent expenditure committee to file both the "independent expenditure statement" and the "initial report" on the same Form Ind-Exp-O, *see* **Iowa Admin. Code rs. 351-4.9(15), 351-4.27(2)**, the initial reporting requirement is constitutional. This court does not hold that *any* form of initial reporting requirement is constitutional as applied to IRTL and other non-PACs.

"electioneering communications,"[5] *see* **2 U.S.C. § 434(f)(1)**. ***Citizens United***, 558 U.S. at 366-71. "With the advent of the Internet, prompt disclosure of expenditures can provide shareholders and citizens with the information needed to hold corporations and elected officials accountable for their positions and supporters." ***Id.*** at 370. Although the Court did not directly address the 24-hour requirement, it did explain that the disclosure law containing the deadline "permits citizens and shareholders to react to the speech of corporate entities in a proper way." ***Id.*** at 371. "This transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages." ***Id.***

Here, the 48-hour reporting requirement serves a substantial informational interest. True, requiring a report "shortly before an election," rather than shortly after making an expenditure, would fulfill the public's interest in "knowing who is speaking about a candidate." *See* ***id.*** at 369. But narrow tailoring is not required, and the 48-hour deadline makes disclosure "more effective" because it is "rapid and informative," more quickly "'provid[ing] the electorate with information' about the sources of election-related spending." *See* ***id.*** at 367-70 (alteration in original), *quoting* ***Buckley***, 424 U.S. at 66. With modern technology, the burden of completing the short, electronic form within two days of making a $750 expenditure is not onerous. *See* ***SpeechNow.org v. Fed. Election Comm'n***, 599 F.3d 686, 697 (D.C. Cir. 2010) (upholding a federal requirement that "those . . . not organized as political committees" report "within 24 hours expenditures of $1000 or more made in the twenty days before an election, and report[] within 48 hours any expenditures . . . of $10,000 or more made at any other time"); ***Leake***, 524 F.3d at 433, 439 (upholding a state law that required entities making independent expenditures over $5,000 to file

[5]"The term 'electioneering communication' means any broadcast, cable, or satellite communication which . . . refers to a clearly identified candidate for federal office," fulfills certain timing requirements, and, if for "a candidate for an office other than President or Vice President, is targeted to the relevant electorate." **2 U.S.C. § 434(f)(3)**.

a report "within twenty-four hours"); *see also* ***McConnell***, 540 U.S. at 195-96 (upholding a similar federal disclosure requirement); *cf.* ***MCCL***, 692 F.3d at 868 (holding as overly burdensome ongoing "organizational, record-keeping, and reporting requirements"). Requiring "prompt disclosure" within 48 hours bears a substantial relation to Iowa's sufficiently important interest in keeping the pubic informed. The second sentence of Iowa Code subsection 68A.404(3)(a),[6] the entirety of Iowa Code subsection 68A.404(4)(a), the first and third sentences of Iowa Administrative Code rule 351-4.9(15),[7] and the initial reporting portion of Form Ind-Exp-O are constitutional as applied to IRTL and other groups whose major purpose is not nominating or electing candidates.

2.

After filing the initial report, an independent expenditure committee must file "[s]ubsequent reports . . . according to the same schedule as the office or election to which the independent expenditure was directed," up to four times during an election year. **Iowa Code § 68A.404(3)(a)**. "The committee shall . . . continue to file reports . . . until the committee files a notice of dissolution . . . ." **Iowa Admin. Code r. 351-4.9(15)**. IRTL contends these requirements are similar to the ongoing reporting requirements preliminarily enjoined in *MCCL*. *See* ***MCCL***, 692 F.3d at 877. This court agrees.

---

[6]"An initial report shall be filed at the same time as the independent expenditure statement." **Iowa Code § 68A.404(3)(a)**.

[7]"An independent expenditure committee that is required to file campaign disclosure reports pursuant to 2009 Iowa Code Supplement section 68A.404(3) as amended by 2010 Iowa Acts, Senate File 2354, section 3, shall file an initial report at the same time as the committee files its original independent expenditure statement." **Iowa Admin. Code r. 351-4.9(15)** (first sentence). "Form Ind-Exp-O shall serve as a campaign disclosure report for an independent expenditure committee." ***Id.*** (third sentence).

In *MCCL*, Minnesota's statute required "political funds to file five reports during a general election year, even if the political fund ha[d] been inactive during that period." ***Id.*** at 873 (citation omitted). Independent expenditures of $100 triggered the reporting requirements, which "apparently end[ed] only if the association dissolve[d] the political fund." ***Id.*** (citations omitted). An association thus maintained the right to speak only by filing the ongoing reports. ***Id.***

This court explained that complying with "cumbersome ongoing regulatory burdens" could be "particularly difficult . . . for smaller businesses and associations for whom political speech is not a major purpose." ***Id.*** at 874. The ongoing reporting – "untethered from continued speech" – did "not match any sufficiently important disclosure interest." ***Id.*** at 876-77 ("Minnesota has not stated any plausible reason why *continued* reporting from nearly all associations, regardless of the association's major purpose, is necessary to accomplish these interests." (emphasis in original) (citation omitted)). "Minnesota [could have] accomplish[ed] any disclosure-related interests . . . through less problematic measures, such as [one-time, event-driven reporting]." ***Id.*** at 876 (alteration and internal citation omitted). The ongoing reporting requirements were "likely unconstitutional." ***Id.*** at 877.

Under Iowa's law, the subsequent reports require disclosing: (1) the "amount of cash on hand at the beginning of the reporting period"; (2) the "name and mailing address of each person who has made . . . contributions of money" or "in-kind contributions to the committee" above $25, in many instances; (3) the "total amount of contributions made to the committee during the reporting period"; (4) loans made; (5) the "name and mailing address of each person to whom disbursements or loan repayments have been made" using contributions received, and the "amount, purpose, and date of each disbursement"; (6) disbursements made to or by a consultant, "disclosing the name and address of the recipient, amount, purpose, and date"; (7) the "amount and nature of debts and obligations owed" in excess of specified amounts; and (8) "[o]ther pertinent information required by th[e] chapter." **Iowa Code §**

**68A.402A(1)**. As in *MCCL*, these ongoing reporting requirements are "potentially perpetual regardless of whether the [person] ever again makes an independent expenditure." ***MCCL***, 692 F.3d at 871-73 ("[A person] must continue to comply with these burdensome regulations even after [he or she] stops speaking."). By conditioning the right to speak on "cumbersome ongoing regulatory burdens," regardless of its major purpose, Iowa's disclosure law "discourages [non-PACs], particularly small [ones] with limited resources, from engaging in protected political speech." ***Id.*** at 873-74.

Iowa counters that in *Leake*, the Fourth Circuit upheld a requirement that non-PACs file "eight reports . . . during the two-and-a-half month period preceding the election." ***Leake***, 524 F.3d at 439-40. But the reporting requirement there was not ongoing. In *Alaska Right To Life Comm. v. Miles*, 441 F.3d 773 (9th Cir. 2006), also cited by Iowa, the Ninth Circuit upheld an ongoing reporting requirement under various state interests, including an informational interest. *See* ***Miles***, 441 F.3d at 790-92. *Miles* conflicts with this court's holding in *MCCL* (and predates *Citizens United*). *See* ***MCCL***, 692 F.3d at 876-77 ("Minnesota has not advanced any relevant correlation between its identified interests and ongoing reporting requirements.").

Iowa attempts to distinguish the ongoing reporting requirements in *MCCL* by arguing that Minnesota's law imposed "virtually identical regulatory burdens" on PACs and non-PACs. *See* ***id.*** at 872. Though this court found the "equality of burdens . . . meaningful," this factor was not necessary to deem the requirements unconstitutional. *See* ***id.*** at 872-74, 876-77. Regardless, Iowa's law does require PACs and non-PACs to file "virtually identical" ongoing reports, because "[e]ach report filed under section 68A.402" must comply with Iowa Code section 68A.402A. *See* **Iowa Code §§ 68A.402A**; ***id.*** **§ 68A.402** ("Each committee shall file with the board reports disclosing information required under this section . . . ."); ***id.*** **§ 68A.404(3)(a)** ("[T]he person filing the independent expenditure statement shall file reports under sections 68A.402 and 68A.402A.").

Requiring a group to file perpetual, ongoing reports "regardless of [its] purpose," and regardless of whether it ever makes more than a single independent expenditure, is "no more than tenuously related to" Iowa's informational interest. *See* ***MCCL***, 692 F.3d at 876-77 (citations and internal quotation marks omitted). Though narrow tailoring is not required, having independent expenditure committees file a one-time report "whenever money is spent" – similar to the "initial report" – would be "less problematic," and allow Iowa to achieve its interest in helping the public make informed choices in the political marketplace. *See* ***id.*** (citation and internal quotation marks omitted). IRTL does not explain how ongoing reporting impinges its associational rights. But it does show how it hinders its free speech rights. Iowa fails to advance a sufficiently important governmental interest that bears a substantial relation to the ongoing reporting requirements as applied to IRTL and other non-PAC groups. Thus, the first and third sentences of Iowa Code subsection 68A.404(3)(a)[10] and the second sentence of Iowa Administrative Code rule 351-4.9(15)[11] are unconstitutional as applied to IRTL and other groups whose major purpose is not nominating or electing candidates.

---

[10] "Subject to paragraph 'b', the person filing the independent expenditure statement shall file reports under sections 68A.402 and 68A.402A." **Iowa Code § 68A.404(3)(a)** (first sentence). (Subsection b explains to whom the section does not apply. *See* ***id.*** **§ 68A.404(3)(b)**.) "Subsequent reports shall be filed according to the same schedule as the office or election to which the independent expenditure was directed." ***Id.*** **§ 68A.404(3)(a)** (third sentence).

[11] "The committee shall then continue to file reports according to the same schedule as the office or election to which the independent expenditure was directed until the committee files a notice of dissolution pursuant to Iowa Code section 68A.402B(3) as amended by 2010 Iowa Acts, Senate File 2354, section 2." **Iowa Admin. Code r. 351-4.9(15)**.

3.

An independent expenditure committee must file a "supplemental report" if, after October 19, but before the election in an election year, it "either [(1)] raises or [(2)] expends more than [$1,000]." *See* **Iowa Code §§ 68A.402(2)(a)-(b), 68A.404(3)(a)(1)**. *MCCL* again provides the controlling analysis.

Under the first supplemental reporting requirement, after a group makes a single independent expenditure, it must continually disclose funds it raises over $1,000 — regardless of the group's purpose, and regardless of whether it ever uses those funds to make an independent expenditure. *See* ***MCCL***, 692 F.3d at 873. Non-PACs must already report expenditures over $750, and the sources of those funds, in the independent expenditure statement – tied to an *actual* expenditure – making both supplemental reporting requirements redundant. *See* **Iowa Code § 68A.404(3)**. Because the obligations "continue until the [independent expenditure committee] is dissolved," to "escape these ongoing burdens, the [group] must file a termination statement." ***MCCL***, 692 F.3d at 869, 873. Iowa's supplemental reporting requirements thus extend the ongoing reporting requirements – "untethered from continued speech" – that "hinder[] [groups] from participating in the political debate and limit[] their access to the citizenry and the government." *See* ***id.*** at 874, 876.

More troubling, each supplemental report appears to require compliance with the onerous filing requirements in section 68A.402A. *See* ***id.*** **§ 68A.404(3)(a)** (stating that reports "shall [be] file[d] . . . under sections 68A.402 and 68A.402A"). "[U]nless an ordinance is readily susceptible" to "a limiting construction that removes the threat to constitutionally protected speech," this court "cannot . . . suppl[y] . . . such an interpretation, because federal courts lack jurisdiction authoritatively to construe state legislation." ***Ways v. City of Lincoln, Neb.***, 274 F.3d 514, 519 (8th Cir. 2001) (citation and internal citation and quotation marks omitted); *see* ***Planned Parenthood of Mid-Missouri & E. Kansas, Inc. v. Dempsey***, 167 F.3d 458, 461 (8th

Cir. 1999) ("We interpret statutes to avoid serious constitutional problems, so long as the statutory language is fairly susceptible to a constitutional construction."). Neither Iowa's disclosure laws, nor its administrative rules, indicate that a supplemental report requires anything less than full compliance with the same filing obligations demanded of other "subsequent" reports. *See* **Iowa Code § 68A.404(3)(a)**. Iowa does not explain how requiring additional, redundant, and more burdensome reports fulfills a sufficiently important informational interest not already advanced by the independent expenditure statement. The perpetual supplemental reporting requirements discourage groups from participating in the "open marketplace of ideas protected by the First Amendment." *See* ***Citizens United***, 558 U.S. at 354 (citation and internal quotation marks omitted); *see also* ***MCCL***, 692 F.3d at 873 ("[A]n association is compelled to decide whether exercising its constitutional right is worth the time and expense of entering a long-term morass of regulatory red tape."). Failing exacting scrutiny, Iowa Code subsection 68A.404(3)(a)(1)[12] is unconstitutional as applied to IRTL and other groups whose major purpose is not nominating or electing candidates.

4.

When an independent expenditure committee "determines [it] will no longer make an independent expenditure, [it] shall notify the board within thirty days following such determination by filing a termination report," using Form DR-3. **Iowa Code § 68A.402B(3)**; *see* **Form DR-3**. Form DR-3 requires a person's name, contact information, and dated signature. IRTL argues that the termination requirement violates its First Amendment rights because, like in *MCCL*, a group's "constitutional

---

[12]"A supplemental report shall be filed on the same dates as in section 68A.402, subsection 2, paragraph 'b', if the person making the independent expenditure either raises or expends more than one thousand dollars." **Iowa Code § 68A.404(3)(a)(1)**.

right to speak through independent expenditures dissolves" when it files the termination report. *See* ***MCCL***, 692 F.3d at 873.

As an initial matter, the parties dispute whether an independent expenditure committee must "dissolve" before filing the termination report. In *MCCL*, before termination, associations had to dissolve by settling all debts, "dispos[ing] of all assets in excess of $100," and filing a termination report "disclosing the same information as required in periodic reports." ***Id.*** at 869. Here, Form DR-3 is entitled a "Statement of Dissolution," and lists a number of dissolution requirements for "committees." The relevant code provision defines "committee" to "include[] a political committee and a candidate's committee," but does not mention an independent expenditure committee. *See* **Iowa Code § 68A.102(8)**. That term appears only in the administrative rules, which also exclude it from the definition of "committee." *See* **Iowa Admin. Code r. 351-4.1(1)(*a*), (*d*)**. Under section 68A.402B, only a "committee" must file a "dissolution report" or "statement of dissolution." *See* **Iowa Code § 68A.402B(1)-(2)**. The administrative rule defining "independent expenditure committee" refers to filing a "notice of dissolution," but cites subsection 68A.402B(3), which states that an "independent expenditure committee" need only file a "termination report." ***Id.*** **§ 68A.402B(3)**; **Iowa Admin. Code r. 351-4.9(15)**. (Form DR-3 appears designed primarily for PACs and "candidate's committees," though it doubles confusingly as a "termination report." *See* **Form DR-3** (indicating who should sign the form for a candidate's committee and for a PAC, but not stating who should sign for an independent expenditure committee).) Unlike in *MCCL*, the only termination requirement for an independent expenditure committee is filing the termination report.

The burden of completing the short, electronic termination report is negligible. The heavier burden is, as IRTL states in its brief, "choos[ing] between ongoing reporting and giving up the constitutional speech right." The termination requirement

is thus part and parcel of the ongoing reporting requirements. "To speak again, the [group] must initiate the bureaucratic process again." ***MCCL***, 692 F.3d at 873.

In *MCCL*, regaining the right to speak entailed a host of cumbersome obligations. *See* ***id.*** at 868-69. Here, a group need complete only the independent expenditure statement and the initial report by filing Form Ind-Exp-O. Nonetheless, the termination requirement interferes with the "constitutionally protected marketplace of ideas," because it forces a group to decide whether it will give up its right to speak. *See* ***id.*** at 873-74. To speak again, it must decide whether renewing the ongoing reporting cycle is worth the effort. *See* ***id.***, *citing* ***MCFL**,* 479 U.S. at 255 (plurality opinion) ("Faced with the need to assume a more sophisticated organizational form, to adopt specific accounting procedures, to file periodic detailed reports . . . it would not be surprising if at least some groups decided that the contemplated political activity was simply not worth it.").

Iowa advances an informational to support the termination requirement. This interest is tenuous at best. The termination report provides no disclosure to the public about actual contributions or expenditures.

Iowa also advances a "corporate governance" interest. But it offers no explanation how filing a termination report substantially relates to "ensuring that corporate entities . . . operate in a manner that honors the privileges given to the corporate form." It cites *Reed* for the proposition that States retain "significant flexibility in implementing their own voting systems." *See* ***Reed***, 130 S. Ct. at 2818 ("To the extent a regulation concerns the legal effect of a particular activity in that process, the government will be afforded substantial latitude to enforce that regulation."). In *Reed*, the Supreme Court held the state's interest in "preserving the integrity of the electoral process by combating fraud, detecting invalid signatures, and fostering government transparency and accountability" justified requiring disclosure of a referendum petitioner's identity. ***Id.*** at 2815, 2819. Voting systems and

campaign finance both generally involve the "electoral process." *See **id.*** at 2819. But *Reed* is otherwise inapposite: it does not address a corporate-governance interest, and Iowa does not claim that its corporate-governance interest will preserve the integrity of the electoral process.

A corporate-governance interest in protecting "corporate shareholders" is "traditionally within the province of state law." *See* ***Bellotti***, 435 U.S. at 792. However, in *Bellotti*, considering a state statute restricting campaign contributions and expenditures, the Supreme Court explained that "shareholders normally are presumed competent to protect their own interests" through "the procedures of corporate democracy." ***Id.*** at 794-95. The Court concluded, "Assuming, *arguendo*, that protection of shareholders is a 'compelling' interest under the circumstances of this case, we find 'no substantially relevant correlation between the governmental interest asserted and the State's effort' to prohibit appellants from speaking." ***Id.*** at 795, *quoting* ***Shelton v. Tucker***, 364 U.S. 479, 485 (1960). Even assuming Iowa has a sufficiently important governmental interest in protecting corporate shareholders in the disclosure context, *but cf.* ***Citizens United***, 558 U.S. at 364 ("The First Amendment does not permit Congress to make . . . categorical distinctions based on the corporate identity of the speaker . . . ."), any interest in protecting this group is irrelevant as applied to IRTL, because it has no shareholders.

Iowa fails to advance a sufficiently important governmental interest substantially related to the termination requirement. Iowa Code subsection 68A.402B(3) and Form DR-3 are unconstitutional as applied to IRTL and groups whose major purpose is not nominating or electing candidates.

C.

In Count 3, IRTL challenges Iowa's ban on direct corporate contributions to a candidate, a candidate's committee, or a political committee, as unconstitutional

under the First and Fourteenth Amendments, facially and as applied. *See* **Iowa Code § 68A.503**. The ban also includes insurance companies, savings associations, banks, and credit unions. ***Id.*** **§ 68A.503(1)**. The district court upheld the ban.

1.

Under the First Amendment, review of "restrictions on political contributions . . . [is] relatively complaisant . . . , because contributions lie closer to the edges than to the core of political expression." ***MCCL***, 692 F.3d at 878, *quoting* ***Fed. Election Comm'n v. Beaumont***, 539 U.S. 146, 161 (2003) (internal quotation marks omitted). "Put simply, 'restrictions on contributions require less compelling justification than restrictions on independent spending.'" ***Id.***, *quoting* ***Beaumont***, 539 U.S. at 158-59. A contribution limit need satisfy only "the lesser demand of being closely drawn to match a sufficiently important interest." ***Id.***, *quoting* ***Beaumont***, 539 U.S. at 162 (internal quotation marks omitted).

Iowa advances an interest in preventing quid pro quo corruption. *See* ***SpeechNow.org***, 599 F.3d at 695, *quoting* ***Citizens United***, 558 U.S. at 359. IRTL counters that an "anti-corruption" interest justifies only a "limit," not an outright ban, on contributions. *See, e.g.*, ***Buckley***, 424 U.S. at 26. In *Beaumont*, however, the Court "upheld a federal law banning direct corporate campaign contributions." ***MCCL***, 692 F.3d at 879, *citing* ***Beaumont***, 539 U.S. at 149, 162-63.

IRTL attacks *Beaumont* as being on "shaky ground" after *Citizens United*. *See* ***Citizens United***, 558 U.S. at 359 (neither endorsing nor condemning the distinction between independent expenditures and contributions, because the Court was not asked to "reconsider whether contribution limits should be subjected to rigorous First Amendment scrutiny"); ***MCCL***, 692 F.3d at 879 n.12 ("*Citizens United*'s outright rejection of the government's anti-distortion rationale, as well as the Court's admonition that the state cannot exact as the price of state-conferred corporate

advantages the forfeiture of First Amendment rights, casts doubt on *Beaumont*, leaving its precedential value on shaky ground." (alteration, citations, and internal citations and quotation marks omitted)). Nonetheless, "[i]n light of *Beaumont*," the *MCCL* court upheld a contribution ban under the First Amendment. ***MCCL***, 692 F.3d at 879.

*Beaumont* and *MCCL* dictate the outcome here. This court "leav[es] to th[e] [Supreme] Court the prerogative of overruling its own decisions." ***Id.***, *quoting* ***Agostini v. Felton***, 521 U.S. 203, 237 (1997) (internal quotation marks omitted). Iowa's contribution ban is constitutional both facially and as applied to IRTL.

2.

IRTL claims the corporate-contribution ban violates its right to equal protection under the Fourteenth Amendment, arguing the ban (a) is content based, and (b) differentiates between similarly situated speakers — corporations and labor unions. "[S]tatutory classifications impinging upon [the fundamental right to engage in political expression] must be narrowly tailored to serve a compelling governmental interest." ***Id.*** at 879-80 (second alteration in original), *quoting* ***Austin***, 494 U.S. at 666 (internal quotation marks omitted).

a.

The district court found the contribution ban content neutral. This court agrees. "The principal inquiry in determining content neutrality is whether the government has adopted a regulation of speech because of disagreement with the message the speech conveys." ***Fraternal Order of Police, N.D. State Lodge v. Stenehjem***, 431 F.3d 591, 596 (8th Cir. 2005), *citing* ***Ward v. Rock Against Racism****,* 491 U.S. 781, 791 (1989). "A regulation that serves purposes unrelated to the content of expression is deemed neutral . . . ." ***Id.***, *quoting* ***Ward***, 491 U.S. at 781 (internal quotation marks



Appellate Case: 12-1605 Page: 37 Date Filed: 06/13/2013 Entry ID: 4044836

omitted); *see* ***Turner Broad. Sys., Inc. v. F.C.C.***, 512 U.S. 622, 643 (1994) ("[L]aws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." (citations omitted)).

*Missouri ex rel. Nixon v. American Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003), is instructive. There, this court ruled that a law banning unsolicited fax advertisements was content neutral. ***Nixon***, 323 F.3d at 659-60. The ban was "neither intended to protect the public from the content of the speech nor to implement policy unrelated to the delivery of the message itself." ***Id.*** "Congress was not concerned with the effect of the content of the advertisements, but rather with the effect of the act of communicating." ***Id.*** (distinguishing *Thompson v. Western States Medical Center*, 535 U.S. 357, 373 (2002), because the "legislation there banned dissemination of truthful commercial information . . . to 'prevent members of the public from making bad decisions with the information'"). "[T]he harm posited . . . [wa]s as much a function of simple receipt of targeted solicitations . . . as it [wa]s a function of the letters' contents." ***Id.*** at 660, *quoting* ***Fla. Bar v. Went For It, Inc.***, 515 U.S. 618, 631 (1995) (internal quotation marks omitted). Also, the law did not impose a complete ban, but left open other means for advertisers to communicate their messages. ***Id.***

Here, the contribution ban serves the purpose of preventing quid pro quo corruption or the appearance of such corruption. *See* ***Beaumont***, 539 U.S. at 155-56. A contribution essentially conveys the message, "I support candidate X." Like the law in *Nixon*, the ban addresses Iowa's concern not with the message content, but rather with the corrupting effect that the act of communicating through contributions may have on recipients of those contributions. *Cf.* ***Bartnicki v. Vopper***, 532 U.S. 514, 526 (2001) ("[T]he communications at issue are singled out . . . by virtue of the source, rather than the subject matter."). The ban is also not complete — entities may contribute through PACs. *See* **Iowa Code § 68A.503**. Moreover, in the First Amendment context, the *Beaumont* Court applied "closely drawn," rather than strict,

scrutiny to the contribution ban. *See* ***Beaumont***, 539 U.S. at 162. Had the law been content based, strict scrutiny would have applied. *See* ***Turner***, 512 U.S. at 635-36 (explaining strict scrutiny applies to content-based regulation). The contribution ban is content neutral.

b.

IRTL argues the contribution ban violates its right to equal protection because Iowa imposes the ban on corporations (and other groups) but not labor unions. *Cf.* ***Dallman v. Ritter***, 225 P.3d 610, 634-35 (Colo. 2010) (holding a state law allowing corporations to contribute to candidates but forbidding labor unions from doing so violated the Fourteenth Amendment Equal Protection Clause). The Supreme Court did reject "the so-called anti-distortion rationale relied upon in *Austin*" to uphold a contribution ban against a Fourteenth Amendment challenge. *See* ***MCCL***, 692 F.3d at 880, *citing* ***Citizens United***, 558 U.S. at 347-57. But the Court "did not explicitly overrule [*Austin*'s] equal protection analysis." ***Id.*** at 879. "[I]f precedent of th[e] [Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls . . . ." ***Id.***, *quoting* ***Agostini***, 521 U.S. at 237 (internal quotation marks omitted). The contribution ban does not violate the Fourteenth Amendment.[13]

D.

In Count 4, IRTL challenges Iowa's requirements that an entity's board of directors authorize independent expenditures, and that an officer of the corporation

---

[13] To be clear, this court is not deciding whether corporations and labor unions are similarly situated, or whether Iowa's interest in preventing quid pro quo corruption justifies the contribution ban. It simply follows the still-controlling precedent of the Supreme Court. *See* ***Austin***, 494 U.S. at 666-68.

certify such authorization, as unconstitutional under the First and Fourteenth Amendments, facially and as applied. The district court found IRTL lacked standing to bring its First Amendment challenge and part of its Fourteenth Amendment challenge, and upheld the requirements under the Equal Protection Clause.

The board-authorization provisions provide:

> a. An entity, other than an individual or individuals, shall not make an independent expenditure or disburse funds from its treasury to pay for, in whole or in part, an independent expenditure made by another person without the authorization of a majority of the entity's board of directors, executive council, or similar organizational leadership body of the use of treasury funds for an independent expenditure involving a candidate or ballot issue committee. Such authorization must occur in the same calendar year in which the independent expenditure is incurred.
>
> b. Such authorization shall expressly provide whether the board of directors, executive council, or similar organizational leadership body authorizes one or more independent expenditures that expressly advocate the nomination or election of a candidate or passage of a ballot issue or authorizes one or more independent expenditures that expressly advocate the defeat of a candidate or ballot issue.

**Iowa Code § 68A.404(2)(a)-(b)**.

The certification provision states that an independent expenditure statement must contain:

> A certification by an officer of the corporation that the board of directors, executive council, or similar organizational leadership body expressly authorized the independent expenditure or use of treasury funds for the independent expenditure by resolution or other affirmative action within the calendar year when the independent expenditure was incurred.

***Id.* § 68A.404(5)(g)**. Form Ind-Exp-O has a "Statement of Certification" that provides, in relevant part, "If the organization making the expenditure is a corporation, I affirm that the board of directors, executive council, or similar organizational leadership body expressly authorized funds for the independent expenditure by resolution or other affirmative action within the calendar year when the independent expenditure was incurred."

1.

The district court found IRTL alleged no more than being "subjective[ly] chill[ed]" from exercising its First Amendment rights. *See* ***Eckles v. City of Corydon***, 341 F.3d 762, 767 (8th Cir. 2003) (holding that to convey standing, there "must be a claim of specific present objective harm or a threat of specific future harm" (citation and internal quotation marks omitted)). "Where a plaintiff alleges an intention to engage in a course of conduct that is clearly proscribed by statute," however, "courts have found standing to challenge the statute, even absent a specific threat of enforcement." ***Gray v. City of Valley Park, Mo.***, 567 F.3d 976, 986 (8th Cir. 2009), *citing* ***Russell v. Burris***, 146 F.3d 563, 566-67 (8th Cir. 1998) (holding the plaintiffs lacked standing to challenge a campaign-finance law, because they "indicated neither that they would contribute to a specific independent expenditure committee nor that, but for the limitations of [the law], they would form an independent expenditure committee"). Merely alleging a desire to engage in the proscribed activity is sufficient to confer standing. *See, e.g.*, ***Arkansas Right to Life State Political Action Comm. v. Butler***, 146 F.3d 558, 560 (8th Cir. 1998) (holding the plaintiffs had standing because they "allege[d] in their verified complaint that they 'would like to make contributions'" in violation of the statute); *see also* ***Minnesota Citizens Concerned for Life v. Fed. Election Comm'n***, 113 F.3d 129, 131 (8th Cir. 1997) ("When government action or inaction is challenged by a party who is a target or object of that action, . . . there is ordinarily little question that the action or inaction

has caused him injury, and that a judgment preventing or requiring the action will redress it." (citation and internal quotation marks omitted)).

IRTL alleges in its complaint that it "wishes to decide when and how to make its independent expenditures in the manner it deems appropriate," and "objects to Iowa's statute that prevents a corporation form making independent expenditures unless its board of directors specifically approves them." By alleging "a specific intent to pursue conduct in violation of the challenged statute," IRTL has demonstrated standing to pursue its First Amendment challenge. *See* ***Arkansas Right to Life***, 146 F.3d at 560.

IRTL urges this court to decide the merits. Because the district court did not do so, this court remands for that court to consider IRTL's First Amendment claim in the first instance. *See* ***King Cole Foods, Inc. v. SuperValu, Inc.***, 707 F.3d 917, 925 (8th Cir. 2013).

2.

IRTL claims the board-authorization and certification requirements violate its right to equal protection under the Fourteenth Amendment for the same reasons it argued the contribution ban was unconstitutional — the requirements (a) are content based and (b) differentiate between similarly situated speakers.

a.

The district court denied IRTL standing to raise its Fourteenth Amendment challenge "to the extent that [its] Fourteenth Amendment claim duplicates its First Amendment claim." Thus, the court did not consider IRTL's argument that the requirements are content-based restrictions that violate its right to equal protection. Because IRTL has standing to raise its First Amendment claim, this court remands to

the district court to consider this Fourteenth Amendment argument in the first instance.

b.

According to IRTL, the board-authorization requirement "singles out" corporations for disparate treatment, in violation of the Equal Protection Clause. But the requirement applies to all "entit[ies], other than an individual or individuals." *See* **Iowa Code § 68A.404(2)(a)**. IRTL points out that the law does not define "entity." It asserts that had the provision meant to include groups other than corporations, the legislature would have used the term "person," as it does in other sections. *See, e.g.*, ***id.*** **§§ 68A.404(3)**, **(6)**, **(7)**. IRTL also contends that the "statutory scheme" shows the provision targets corporations.

The plain statutory language defeats IRTL's assertion. *See* ***O'Neal v. State Farm Fire & Cas. Co.***, 630 F.3d 1075, 1077 (8th Cir. 2011). It concedes that the ordinary meaning of "entity" "include[s] more than corporations alone." *See* **Black's Law Dictionary** (8th ed. 2004) (defining "entity" as an "organization (such as a business or a governmental unit) that has a legal identity apart from its members"). Contrary to IRTL's contention, the "statutory scheme" demonstrates that the legislature knew how to target specific entities. *See, e.g.*, **Iowa Code § 68A.503(1)** (applying to corporations, insurance companies, savings associations, banks, and credit unions). Because IRTL fails to show that the board-authorization requirement treats corporations differently from other entities, Iowa Code subsections 68A.404(2)(a) and (b) are constitutional under the Equal Protection Clause, insofar as they do not differentiate between similarly situated speakers.

Unlike the board-authorization requirement, the certification requirement specifically targets corporations, requiring "certification by an officer *of the corporation*." ***Id.*** **§ 68A.404(5)(g)** (emphasis added). Likewise, Form Ind-Exp-O's

Statement of Certification requires certification only if "the organization making the expenditure is a corporation." Iowa claims that IRTL fails to show that the requirement "intentionally treat[s] [it] differently from others similarly situated." *See* ***Village of Willowbrook v. Olech***, 528 U.S. 562, 564 (2000); *cf.* ***Plyler v. Doe***, 457 U.S. 202, 216 (1982) ("The Equal Protection Clause directs that all persons similarly circumstanced shall be treated alike." (citation and internal quotation marks omitted)). But where a classification "impinge[s] upon the exercise of a 'fundamental right,'" it is "presumptively invidious." ***Plyler***, 457 U.S. at 216-17 (footnote omitted). The burden is then on "the State to demonstrate that its classification has been [narrowly] tailored to serve a compelling governmental interest." ***Id.*** at 217; *see* ***MCCL***, 692 F.3d at 879-80.

Engaging in political expression through independent expenditure is a fundamental right. ***MCCL***, 692 F.3d at 879-80. Iowa must advance a compelling interest for the certification requirement, and then demonstrate that the requirement is narrowly tailored to serve that interest. Iowa argues correctly that the board-authorization requirement does not single out corporations. But Iowa ignores the singular scope of the certification requirement. Nor does it advance any interest, compelling or otherwise, to justify singling out corporations. The certification requirement is unconstitutional under the Fourteenth Amendment.

Because the law is unconstitutional on its face, this court must determine whether the invalid portions can be severed. *See* ***Neighborhood Enters., Inc. v. City of St. Louis***, 644 F.3d 728, 738 (8th Cir. 2011). Striking the offending language, the provision reads:

> A certification by an officer ~~of the corporation~~ that the board of directors, executive council, or similar organizational leadership body expressly authorized the independent expenditure or use of treasury funds for the independent expenditure by resolution or other affirmative

> action within the calendar year when the independent expenditure was incurred.

**Iowa Code § 68A.404(5)(g)**. Striking the offending language from Form Ind-Exp-O provides:

> ~~If the organization making the expenditure is a corporation,~~ I affirm that the board of directors, executive council, or similar organizational leadership body expressly authorized funds for the independent expenditure by resolution or other affirmative action within the calendar year when the independent expenditure was incurred.

"The District Court did not consider the severability issue because it held that each of the challenged provisions was constitutional." ***Neighborhood Enters.***, 644 F.3d at 738 (citation and internal quotation marks omitted). This court therefore remands to the district court to determine whether the law can stand without the unconstitutional portions. ***Id.*** (citation and internal quotation marks omitted) (remanding "to the District Court to consider the severability issue in the first instance").

III.

To summarize:

Count 1. IRTL lacks standing to challenge the definitions under Iowa Code subsections 68A.102(18) and 68A.402(9).

Count 2. The first two sentences of Iowa Code subsection 68A.404(3), the second sentence of subsection 68A.404(3)(a), the entirety of subsection 68A.404(4)(a), the first and third sentences of Iowa Administrative Code rule 351-4.9(15), and Form Ind-Exp-O

(except as noted in Part II.D.2.b) are constitutional as applied to IRTL and groups whose major purpose is not nominating or electing candidates. The first and third sentences of subsection 68A.404(3)(a), the second sentence of Iowa Administrative Code rule 351-4.9(15), the entirety of subsections 68A.404(3)(a)(1) and 68A.402B(3), and Form DR-3 are unconstitutional as applied to IRTL and groups whose major purpose is not nominating or electing candidates.

Count 3. Iowa Code section 68A.503 is constitutional under the First and Fourteenth Amendments.

Count 4. IRTL has standing to challenge under the First Amendment Iowa Code subsections 68A.404(2)(a)-(b) and 68A.404(5)(g). IRTL has standing to challenge under the Fourteenth Amendment whether subsections 68A.404(2)(a)-(b) and 68A.404(5)(g) impose content-based restrictions that violate its right to equal protection. Subsections 68A.404(2)(a)-(b) are constitutional under the Equal Protection Clause, insofar as they do not differentiate between similarly situated speakers. The clause "of the corporation" in Iowa Code subsection 68A.404(5)(g) and the clause "if the organization making the expenditure is a corporation" in Form Ind-Exp-O are unconstitutional under the Fourteenth Amendment. On remand, the district court shall consider severability.

* * * * * * *

The judgment of the district court is affirmed in part, reversed in part, and the case remanded.

MELLOY, Circuit Judge, concurring.

I concur in the court's opinion in its entirety. However, I write separately to indicate that for the reasons discussed in my dissenting opinion in Minnesota Citizens Concerned for Life, Inc. v. Swanson, 692 F.3d 864 (8th Cir. 2012) (en banc), I would find the sections of the Iowa statute and related administrative rules discussed in sections B.2 and B.3 to be constitutional. However, I also recognize that the en banc court found similar provisions to be unconstitutional in Minnesota Citizens Concerned for Life. This panel is obligated to follow the precedent established by the en banc court and, therefore, I concur in the opinion in its entirety.

______________________________